1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

3

4

Ian Simmers,

    Case No. 2:21 CV 100

            Plaintiff,

5

6

            v.

7

King County, the City of Bothell, Det.
Edward J. Hopkins, Sgt. Clement Rusk, Det.
Rebecca Miner, Det. John McSwain,

8

Detective Pat Raftus, Detective Ken Baxter,
Chief Mark Ericks, Det. Sgt. David

9

Schlaegel, and Maj. Jackson Beard, Unknown
Officers of the City of Bothell Police

10

Department, and Unknown Sheriff Deputies
of King County,

11

12

            Defendants.

13    Plaintiff IAN SIMMERS, by his undersigned attorneys, hereby complains against

14    Defendants KING COUNTY, THE CITY OF BOTHELL, DET. EDWARD J. HOPKINS,

15    SGT. CLEMENT RUSK, DET. REBECCA MINER, DET. JOHN MCSWAIN,

16    DETECTIVE PAT RAFTUS, DETECTIVE KEN BAXTER, CHIEF MARK ERICKS,

17    DET. SGT. DAVID SCHLAEGEL, AND MAJ. JACKSON BEARD, UNKOWN

18    OFFFICERS OF THE CITY OF BOTHELL POLICE DEPARTMENT, AND

19    UNKNOWN SHERIFF DEPUTIES OF KING COUNTY, and states as follows:

20

**COMPLAINT**

21    1.    Ian Simmers was wrongfully convicted of the 1995 murder of Rodney

22    Gochanaur, a crime he did not commit. At the time he was arrested and then prosecuted, Ian

23    was just 16 years old.

24    2.    Although no evidence linked Ian to the murder, officers of the Bothell Police

25    Department and King County Sheriff's Department zeroed in on Ian as a suspect. They held

26    him in custody for nearly ten hours and deprived him of sleep while interrogating him

27    repeatedly throughout the night. The officers used manipulative and coercive interrogation

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

tactics and fed Ian details about the crime in an effort to force and fabricate a confession that they knew was false.

3.      Ian eventually succumbed repeated the officers' efforts in a false confession to the Gochanaur murder. But this confession proved problematic for the Defendants because no forensic evidence whatsoever tied Ian to the crime and no witnesses identified him as the culprit. And despite the officers' best efforts, the false confession contained errors and inconsistencies that illustrated the obvious unreliability of the purported confession.

4.      In an effort to shore up the flaws in the fabricated confession, the Defendants suppressed exculpatory evidence and generated further fabricated evidence.

5.      At trial, the prosecution relied exclusively on fabricated evidence to secure Ian's wrongful conviction and succeeded in prosecuting Ian as an adult, resulting in him being sentenced to nearly 50 years in prison.

6.      After DNA testing on the murder weapon exonerated Ian, the conviction was overturned and the charges were dismissed in 2019. All told, Ian spent ages 16 to nearly 40 imprisoned due to Defendants' misconduct.

7.      Although he can never recover the enormous swath of his life lost to this conviction or fully repair the incalculable harm he suffered, Ian brings this lawsuit to vindicate the violations of his rights under the United States Constitution and Washington state law that caused him to be wrongfully imprisoned for over two decades.

## Jurisdiction and Venue

8.      This action is brought under the United States Constitution and pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Constitution. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

9.      Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein occurred here, and most parties live here or are affiliated with this judicial district.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

**The Parties**

10.     The Plaintiff, Ian Simmers, spent nearly 23 years in prison after being convicted of a murder he did not commit. He lives with his mother in the District, and he is in the process of rebuilding his life after more than two decades of wrongful incarceration.

11.     Defendants Edward J. Hopkins, David Schlaegel, and Rebecca Miner were officers with the Bothell Police Department at all times relevant to their involvement with the events alleged in this Complaint (the "Bothell PD Officers"). They are sued in their individual capacity.

12.     Defendant Mark Ericks was the Chief of Police for the Bothell Police Department at all times relevant to their involvement with the events alleged in this Complaint. He is sued in his individual capacity. 4 currently unknown were supervisors in the Bothell Police Department who were responsible for overseeing the Gochanaur homicide investigation and in that capacity directed, reviewed, approved, and ratified decisions of the Bothell PD Officers.

13.     Defendant Unknown Officers of the City of Bothell participated in the misconduct alleged in this complaint and/or were supervisors that oversaw and approved the misconduct committed the Bothell PD Officers.

14.     Defendants Clement Rusk and John McSwain were detective sergeants with the King County Police, now called the King County Sheriff's Department (the "County Officers"), at all times relevant to their involvement with the events alleged in this Complaint. They are sued in their individual capacity.

15.     Defendant Jackson Beard was a Major in the King County Police, now called the King County Sheriff's Department. He is sued in his individual capacity.

16.     At all times relevant to this complaint, Defendant Beard and others currently unknown were supervisors in the King County Sheriff's Department, then called the King County Police, who were responsible for overseeing the Gochanaur homicide investigation and in that capacity directed, reviewed, approved, and ratified decisions of the County Officers.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

17.    Defendant Unknown Sheriff's Deputies of King County, then called King County Police Officers, participated in the misconduct alleged in this complaint and/or were supervisors that oversaw and approved the misconduct committed by the County Officers.

18.    The Bothell PD Officers and the County Officers are referred to collectively as the "Police Officer Defendants" in this complaint and the phrase "Individual Defendants" included the Police Officer Defendants and all other individuals named in this complaint. The phrases "Police Officer Defendants" and "Individual Defendants" do not include the City of Bothell or King County.

19.    Each and every individual Defendant, known and unknown, acted under color of law and within the scope of their employment at all times relevant to this lawsuit. Each of the individual Defendants is sued in their individual capacity unless otherwise noted.

20.    Defendants the City of Bothell and King County are Washington municipal corporations. The City of Bothell and King County are or were the employer of each individually named Defendant. The City of Bothell and King County are responsible for indemnifying judgments against the Individual Defendants who they respectively employ. The City of Bothell and King County are liable for the torts the Police Officer Defendants they employ committed pursuant to the doctrine of *respondeat superior*. Both the City of Bothell and King County are also liable, under state law, for their negligence in the operation and maintenance of, respectively, the Bothell Police Department and King County Sheriff's Department in that they have a duty to prevent the violation of citizens' rights and to take affirmative steps to ensure that preventable harm can be avoided. Finally, both the City of Bothell and King County are respectively liable for violations of Plaintiff's rights caused by their own unconstitutional policies and customs, including actions of Individual Defendants Defendants and/or the actions of Individual Defendants they employ undertaken pursuant to those policies and customs during the Gochanaur murder investigation.

### The Rodney Gochanaur Murder and Initial Investigation

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

21.     Hikers discovered the body of 35-year-old Rodney Gochanaur on Saturday, March 11, 1995 near a portion of the Burke-Gillman trail near Bothell, Washington.

22.     The Bothell Police Department the first investigated the murder, and multiple officers responded to the scene, including Defendants Schlaegel, Hopkins, Miner, and Ericks.

23.     Gochanaur had suffered multiple wounds, including a number of stab wounds to his back and a large cut to his face.

24.     Gochanaur had obviously struggled with his attacker before succumbing to the wounds.  The victim had defensive wounds on his hands and had been fatally stabbed in the back of his torso.  The scene was messy, including blood left on trees and other places in the area.

25.     Police also located physical evidence nearby, including the victim's glasses and the murder weapon, a kitchen knife.

26.     Despite the obvious importance of information from the scene where the victim was found, the Bothell PD Officers refused to document the actual scene or take pictures of the victim or immediate area surrounding him.

27.     The initial investigating officers (including Defendants Hopkins and Miner) also learned information about Gochanaur's activities, including that he lived in Bothell with a family member, that he had been drinking with a woman, Hope Fleischacker, in Woodinville the evening before his body was found, and that he owed money to several individuals.

28.     These Defendants' initial investigation into the Gochanaur murder turned up multiple suspects who warranted further investigation, including individuals with motives to attack Gochanaur such as Hope's ex-boyfriend and the people to whom Gochanaur owed money.

29.     But the investigating officers, including Defendants Hopkins, Schlaegel, and Miner, never conducted adequate follow-up on those leads.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

**The Defendants Coerce Ian to Falsely Confess**

30.     Instead, the Bothell PD Officers decided to abandon their honest investigative work and focus all of their attention on securing the wrongful conviction of Plaintiff, a juvenile who had nothing to do with the murder.

31.     To do so, the Bothell PD Officers agreed to seek the prosecution of Plaintiff with officers from the King County Sheriff's Office, Defendants Detective John McSwain, Detective Pat Raftus, Detective Ken Baxter, and Sergeant Clement Rusk (*i.e.*, County Officers).

32.     Along the way, upon information and belief, Defendants Ericks and Beard, along with other supervisors in for the County and for the City, respectively, approved of the work done by the police officer defendants.

33.     After the involvement of the County Officers, the investigation of the Gochanaur murder was conducted jointly by the City of Bothell and King County, via the Bothell Police Department and King County Police (now the King County Sheriff's Department).

34.     A few days after the murder, King County Sheriff's Officers arrested Plaintiff and another juvenile, Jon Wyatt, for alleged—and clearly juvenile—crimes like shooting flare guns by Lake Washington.

35.     These property crimes were completely unrelated to the Gochanaur murder.

36.     With the Bothell PD Officers, the County Officers, and ultimately the Individual Defendants, decided that Plaintiff was going to take the fall for the Gochanaur homicide. They agreed among themselves to seek Plaintiff's conviction for this crime, and to violate his constitutional rights along the way.

37.     To begin, the Police Officer Defendants decided to interrogate Plaintiff and Wyatt without providing them with access to attorneys or their parents, despite the fact that they were both juveniles—Plaintiff was 16 years old and Wyatt was just 14.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

38.    The Police Officer Defendants began with Wyatt and told him about the Gochanaur homicide, even though they had absolutely no reason to believe that he or Plaintiff had anything to do with the crime.

39.    Wyatt also did not know anything about the Gochanaur homicide.

40.    Nonetheless, the Police Officer Defendants began to threaten, pressure, and cajole Wyatt in an effort to get him to falsely state that Plaintiff had something to do with the crime.

41.    Among other things, the Police Officer Defendants used tactics that would be unfit for an adult against Wyatt, including depriving him of access to an attorney after his father had specifically requested one, continuing to badger and harass Wyatt about invocating his right to counsel, and using guilt-presumptive questioning designed to convince Wyatt to say what they wanted him to say, rather than be silent or tell them the truth that he and Plaintiff had nothing to do with the murder.

42.    In addition, the Police Officer Defendants also made Wyatt a false promise of leniency that was also a coercive threat—to falsely implicate Simmers in the homicide in order to avoid punishment and prosecution himself.

43.    The Police Officer Defendants knew these tactics were unlawful and coercive, and likely to yield false information, but continued to use them anyway.

44.    To attempt to coerce and fabricate a false statement they would attribute to Wyatt, the Police Officer Defendants revealed information about the crime to Wyatt and suggested that he could avoid punishment if he went along with their story that Simmers stabbed the victim.

45.    The Police Officer Defendants knew this story was false, that Wyatt was in obvious distress, and that he had told them Simmers and himself were innocent of the murder. But they would not relent and attempted to convince a vulnerable child that he was actually there, but just could not remember it.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

46.     Along the way, the Police Officer Defendants wrote false notes and other reports indicating things that Wyatt never said and that were untrue, including as it relates to his invocation of his right to counsel and silence, and about Plaintiff's innocence.

47.     The Police Officer Defendants' actions were egregious and flagrant. For example, Wyatt's own attorney arrived at the station and invoked Wyatt's right to silence. Nonetheless, Defendants decided to attempt to interrogate and question Wyatt throughout the night.

48.     Turning to Plaintiff, the Bothell PD Officers and County Officers conferred about how to approach him. They agreed that they would, together, interrogate Simmers in a similar way that they had mistreated Wyatt—including by making threats, false promises, and by trampling on his constitutional rights—in an attempt to elicit a false confession from Simmers.

49.     Before Ian was arrested, he knew nothing of the Gochanaur murder. He did not know any of the facts about when the crime occurred, how it occurred, or who was actually involved.

50.     Ian truthfully told the officers that he had nothing to do with the Gochanaur murder.

51.     The Police Officer Defendants later falsely claimed that Ian had knowledge of the crime, including details only the true perpetrator would know and that had not been publicly released. These claims were false. In reality, the Police Officer Defendants had supplied these details to Ian during the course of a lengthy interrogation and as part of their agreement to pin the crime on Ian before Ian said anything related to the murder, and despite his innocence.

52.     When the Police Officer Defendants began questioning him about the murder, Ian expressly invoked his right to silence.

53.     The Defendant Officers unlawfully disregarded this invocation of Ian's right to silence and continued to question him.

COMPLAINT- 8
2:21-cv-100

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

54.     After Ian was placed in a holding cell where he tried to sleep, and despite the fact that Ian had invoked his rights, the officers repeatedly woke Ian to question him about the Gochanaur murder. They would briefly relent when he refused, only to return later throughout the night evening and begin questioning him again.

55.     In so doing, the Police Officer Defendants used the same sorts of lies, promises, and threats they had used with Wyatt, including trying to convince Ian that if he confessed he would receive a lesser punishment. They did so by trying to supply a "self-defense" motive to the crime that would make him look sympathetic when being sentenced, and, conversely, by suggesting that if he did not confess he would be treated more harshly.

56.     The Police Officer Defendants also falsely claimed that Wyatt had implicated Simmers in the murder—a coercive false evidence ploy designed to overcome Ian's will and convince him to confess.

57.     This process repeated throughout the night, preventing a young, exhausted teenager from sleeping, even though the officers knew he did not want to speak with them and had invoked his constitutional rights.

58.     Ian's mother was also not permitted to intervene or see her son, even though Plaintiff had asked to speak with his mother.

59.     Rather than take care to ensure that, as a juvenile, Ian's constitutional rights were given special care, the Defendant Officers disregarded Ian's rights in a manner that would have been coercive even if he were an adult.

60.     The Defendant Officers made it clear to Ian that he was not free to remain silent or to consult an attorney, but effectively had no choice but to speak with them in the middle of the night and while he was in their custody.

61.     Mentally exhausted and left with little other choice, Defendants Rusk and Hopkins led the interrogation of Ian throughout the night in an effort to secure a confession.

62.     At the time, the Defendants Rusk and Hopkins knew that Ian's judgment was impaired; that he was exhausted; and that he was a juvenile, making him a vulnerable target.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

63.     Defendants Rusk and Hopkins also knew that repeatedly waking Ian throughout the night would prevent him from getting rest and ensure that he would understand that he was in their control and would have to speak with him regardless of whether he wanted to, and regardless of whether they advised him of his *Miranda* rights.

64.     Ian had already been in custody between nine and ten hours when the Police Officer Defendants homed in on their most aggressive questioning, and broke Ian's will through myriad tactics that were unlawful, abusive, and coercive.

65.     Defendants Rusk and Hopkins, and possibly other Individual Defendants, used a variety of coercive interrogation tactics designed to procure a confession, including aggressive confrontation, false evidence ploys, and minimization themes. For example, the Defendant Officers convinced Ian to adopt a story that Gochanaur was the initial aggressor in order to minimize the severity of this crime.

66.     As a tired and vulnerable 16-year-old boy, Ian was particularly susceptible to the Defendants' coercive tactics, and the Police Officer Defendants knew as much.

67.     Although Defendants Rusk and Hopkins had no evidence tying Ian to the crime, and the interrogation revealed that he knew nothing about the murder, they persisted in their efforts to coerce a false confession from an innocent suspect.

68.     The overnight questioning, initial investigation, and information from Wyatt made it clear that Ian had nothing to do with the crime and was innocent. For example, Ian could not even correctly guess what *day* the crime had occurred. When he guessed incorrectly about details of the crime (because he did not know them), he was coached and coaxed about how the crime occurred, including about the location of the body, the murder weapon and other non-public details of the crime.

69.     Eventually, after some hours of prolonged questioning that followed the myriad tactics described above, and where the Police Officer Defendants repeatedly supplied Ian with information about the crime, how they wanted him to say he committed the crime, and other efforts of fabrication, the Police Officer Defendants broke Ian's will.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

70.     The Police Officer Defendants deliberately waited until Ian's will had been overcome to begin recording their questioning of him, and wherein he provided a version of the false "confession" the officers had concocted and that they knew was false.

**The Defendants Fabricate Evidence Relating to the "Confession"**

71.     The Defendant Officers fabricated inculpatory information within the inculpatory statement they taped Ian making.

72.     First, the Police Officer Defendants fabricated the confession by feeding Ian details about the crime that he could not have known.

73.     For example, the officers admitted to telling Ian that the murder weapon was a knife and that it had been thrown away at the scene. The officers also encouraged Ian to say that the killing had been in self-defense based on evidence that the victim had been accosting people before his death.

74.     Ian incorporated these and many other fed facts into the videotaped false confession.

75.     When Ian was unable to correctly guess the answers to the Defendant Officers' questions, they steered him toward answers that fit the evidence.

76.     For example, Ian's account of the order of the stab wounds was inconsistent with the physical evidence that the bent knife blade inflicted the final wound, so Detective Hopkins asked a leading question to steer him into a different story that fit the facts.

77.      It was obvious to Defendants Rusk and Hopkins, and all of the Police Officer Defendants, that Ian was innocent and that all of his statements implicating himself in the murder were false.

78.     For example, the officers heard Ian falsely claim to have committed thirteen murders as part of his involvement in a non-existent street gang—a claim they knew was untrue. They nonetheless continued to feed him information and coach him to generate false inculpatory statements, despite the fact that his answers plainly revealed that he did not know when or how the crime had actually occurred.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

79.     This process of rehearsing the confession during a lengthy, unrecorded interrogation eventually produced an inculpatory statement that the Defendants knew was false.

80.     The Police Officer Defendants reported non-public facts to Ian as a method to make it appear as if the "confession" was true and included facts "only the killer" knew, when they knew very well that the facts came from themselves, not the juvenile they were interrogating.

81.     The Police Officer Defendants did not record the overwhelming majority of their questioning and interactions with Ian, even though they had the means to do so.

82.     The Police Officer Defendants purposefully chose not to record the portions of the interrogation in which they coached and coerced Ian to make an inculpatory statement, and where they supplied him with non-public facts about the murder.

83.     Separately, and as with Wyatt, the Police Officer Defendants' notes and reports of the interrogation and "confession" were also fabricated. These notes and reports attribute to Ian things he did not say and they misleadingly fail to document important aspects of the interrogation, including their coercive tactics and their efforts to feed Ian information and coerce and coach him to change his story to fit the non-public facts they knew about the crime.

84.     Apart from the so-called "confession" itself, and other false reports about the interrogation, the Police Officer Defendants also fabricated evidence in an effort to keep Ian in custody despite being just 16-years old and obviously innocent of the murder. Defendant Schlaegel, for example, wrote in a statement objecting to Ian's release that he was "sociopathic" and that he "claims gang membership." Officer Schlaegel knew that Ian was not sociopathic and he knew that his claims of gang membership were obviously false.

85.     The Defendant Officers also fabricated evidence that Ian made an accurate drawing of the murder weapon. In reality, they collected doodles that Ian drew during the interrogation, identified one that most closely resembled the actual weapon, and falsely claimed that he had drawn it at the officers' request.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

86.     The recorded but false confession, in addition to the officers' other fabrications, caused his pretrial detention and would later be the primary evidence against him at trial.

87.     Before the Police Officer Defendants interrogated Wyatt and Simmers there was no probable cause to suspect Simmers of the Gochanaur murder.

88.     After the Police Officer Defendants interrogated Wyatt and Simmers there was still not probable cause to suspect Simmers of the Gochanaur murder, given that all of the "inculpatory" evidence was either coerced and/or fabricated by the Police Officer Defendants.

89.     The Police Officer Defendants relied upon their fabrications in seeking the detention and prosecution of Simmers and but-for their fabrications Simmers would not have been detained, prosecuted, or convicted for a murder he did not commit.

**Defendants Commit Additional Misconduct**

90.     Having successfully coerced and fabricated a confession, the Police Officer Defendants faced a problem: his confession contradicted the facts of the crime in crucial and obvious ways.

91.     For example, Ian's purported description of the knife used to commit the murder was entirely wrong and could not have been the murder weapon.

92.     In addition, Ian's purported description of how he supposedly stabbed the victim was physically impossible based on the manner in which the wounds had actually been inflicted.

93.     Critically, Ian could not even identify the correct day on which the murder occurred.

94.     With other Police Officer Defendants, Defendants Schlaegel and Hopkins led the effort to attempt to shore up the flaws in the coerced and false confession. They conspired to convince a man named Kevin Olsen to testify to a false story that Ian confessed to the crime while he and Ian were in custody at the King County Jail. Olsen's story was obviously false—it had been incentivized and created by the Police Officer Defendants.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

95.     Defendant Hopkins memorialized this new "evidence" in a fabricated police report designed to attempt explain away the mistakes in the false confession the police attributed to Ian, even though they were responsible for it entirely.

### The Defendants Suppress Exculpatory Evidence and Secure a Wrongful Conviction Pursuant to the Policies and Customs of the City of Bothell and King County

96.     Throughout their investigation and during Ian's wrongful imprisonment, the Defendants suppressed critical exculpatory evidence which, if disclosed to prosecutors or to defense counsel, would have exonerated Ian.

97.     Among other things, the Defendants suppressed evidence that they conspired or otherwise made an agreement with Kevin Olsen to give false testimony. The Defendants also suppressed evidence that they used coercive methods and fabricated other reports concerning Jon Wyatt in their efforts to get Wyatt to falsely implicate Ian in the Gochanaur murder.

98.     The Defendants did not have probable cause to detain or prosecute Ian for the murder of Rodney Gochanaur. All of the "evidence" that ostensibly supported probable cause was the result of coercion and fabrication.

99.     The Defendants' willful coercion, fabrication, and suppression achieved their intended purpose.

100.     Rather than being merely prosecuted for property crimes in juvenile court, Ian was subject to criminal prosecution as an adult. Then, after a jury trial in which the only evidence linking Ian to the crime was fabricated, Ian was convicted of first-degree murder and sentenced to more than 46 years in prison.

101.     The City of Bothell and King County approved of the actions of the Individual Defendants in the manner in which they interrogated Simmers and Wyatt, including through the review of supervising officers who approved Police Officer Defendants' reports, notes, actions, and investigative methods despite their obvious flaws.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

102.    The Police Officer Defendants interrogated Simmers as if he were an adult because that was part and parcel of the practices and customs of the department and, on information and belief, none of the Police Officer Defendants was ever disciplined, retrained, or sanctioned in any way for their actions against Simmers.

103.    In 1995, for example, it was well known, as a matter of law, that juveniles are far more vulnerable than adults and, as a result, that any interrogation of a juvenile must be done with the greatest care to ensure that their constitutional rights are not violated.

104.    It was likewise well known that juveniles are not permitted to be interrogated as adults and, as a result, that adequate procedural safeguards are needed to ensure that juvenile interrogations proceed with great caution and care.

105.    It was also well established long before 1995 that treating a juvenile as an adult in the course of an interrogation would amount to a callous disregard of the juvenile's constitutional rights.

106.    The City of Bothell and King County had an obligation and duty to ensure that its police officers heeded these basic constitutional admonishments, but failed to adopt them, as reflected in the interrogation of Simmers (and of Wyatt).

107.    In addition, the of City of Bothell and King County had an obligation to ensure that their officers, through proper training, practice, and supervision, interrogated juveniles in light of their obviously vulnerable characteristics.

108.    But, as reflected in the interrogations here, neither the City of Bothell or King County adopted adequate training and supervision or other methods of ensuring that their duty to citizens encountering the police were performed with due care.

109.    Both City of Bothell and King County failed to implement mechanisms that would have prevented the Police Officer Defendants' conduct that resulted in Plaintiff's damages, discussed below, including but not limited to providing minimally adequate supervision at an appropriate command level, adopting appropriate policies and rules, and enforcing constitutional and departmental guidelines (to the extent they did exist).

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

110.    As a result, inadequate training, supervision, rules, and practices of both the City of Bothell and of King County were either negligent and/or deliberately indifferent to the possibility of the harm caused by the Individual Defendants, permitted Plaintiff to be prosecuted on the basis of false and fabricated evidence, and proximately caused Simmers substantial injuries related to his wrongful conviction.

### Ian's DNA Exoneration and Release

111.    Ian served almost 23 years in prison as an innocent man. The physical, mental, emotional, and economic harm that he suffered is incalculable.

112.    In 2018, Ian filed a motion to vacate his conviction based in part on the results of newly performed DNA testing on the murder weapon and the victim's fingernail clippings. The DNA test results conclusively proved his innocence.

113.    The King County Prosecutor's office joined the motion to vacate the conviction, which was vacated in 2019. The charges were subsequently dismissed.

### Plaintiff's Damages

114.    The pain and suffering Ian has endured as a result of the Defendants' misconduct is immeasurable.

115.    Through the psychological and physical suffering that Defendants inflicted on Ian during his wrongful detention and coercive interrogation, he was forced to falsely implicate himself in a crime for which he knew he was innocent.

116.    Throughout his criminal prosecution, then sixteen-year-old Ian was made to fear that he would spend the rest of his life behind bars.

117.    When he was sentenced to more than 46 years in prison, Ian was torn apart from his family and friends and deprived of all the basic pleasures of human experience that all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

118.   Ian was robbed of the prime of his life, including the opportunity to pursue a career and build a family through his 20s and 30s. Instead, Ian spent more than two decades in prison for a crime he did not commit.

119.   In addition to causing Ian the severe trauma of wrongful imprisonment, loss of his liberty, and reputational harm, Defendants' misconduct continues to cause Plaintiff psychological pain and suffering, humiliation, fear, and despair.

120.   Ian, now a free person for the first time since he was sixteen years old, must attempt to make a life for himself outside of prison without the benefit of the foundational life experience which juveniles and young adults normally develop.

121.   Ian brings this lawsuit to vindicate the violations of his constitutional rights that caused his wrongful detention, prosecution, and incarceration.

**Count 1 – Federal Law**
**Fifth and Fourteenth Amendments**
**(Self-Incrimination, Right to Counsel)**

122.   Each paragraph of this Complaint is incorporated as if reinstated fully herein.

123.   As described more fully above, the Individual Defendants, individually, jointly, and in conspiracy with one another, acting under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of the rights secured by the Fifth and Fourteenth Amendments.

124.   As described more fully above, the Defendants conducted an unconstitutionally coercive interrogation of Plaintiff that caused Plaintiff to make involuntary statements implicating himself in the murder of Rodney Gochanaur.

125.   As described more fully above, the Police Officer Defendants violated clearly established law by psychologically coercing Plaintiff into giving a false confession.

126.   This coerced confession was used against Plaintiff in a criminal prosecution to detain, prosecute, imprison, and convict him for a murder he did not commit.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

127.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

128.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

129.    The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

**Count 2 – Federal Law**
**Fourteenth Amendment (Due Process)**

130.    Each paragraph of this Complaint is incorporated as if reinstated fully herein.

131.    As described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, acting under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fourteenth Amendment.

132.    As described more fully above, the Individual Defendants' unconstitutional interrogation of Plaintiff shocks the conscience and involved truly egregious and unreasonable actions by the Defendants, which caused Plaintiff to make involuntary statements implicating himself in the murder of Rodney Gochanaur.

133.    The false statements unconscionably obtained by the Police Officer Defendants were used against Plaintiff to his detriment in a criminal case. These statements were the only reason Plaintiff was prosecuted and convicted of the murder of Rodney Gochanaur.

134.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

135.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

136. The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

## Count 3 – Federal Law
### Sixth and Fourteenth Amendments (Due Process, Fair Trial)

137. Each paragraph of this Complaint is incorporated as if reinstated fully herein.

138. As described more fully above, the Individual Defendants, individually, jointly, and in conspiracy with one another, acting under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

139. As described more fully above, the individual Defendants fabricated evidence— including but not limited to falsifying reports about the interrogation and purported confession, conspiring to craft a false story by a jailhouse informant, and falsifying reports about the informant's involvement—and deliberately withheld exculpatory evidence. In doing so, the Defendants violated their clearly established duty to report all material exculpatory and impeachment information and their duty not to fabricate evidence against a criminal defendant.

140. Absent the Defendants' misconduct, the prosecution of Plaintiff could not and would not have proceeded, and Plaintiff would not have been convicted.

141. The Defendants' misconduct directly and proximately resulted in Plaintiff's unjust criminal conviction and incarceration, thereby denying him the constitutional right to a fair trial in violation of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

142. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

143. As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

144.    The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

### Count 4 – Federal Law
### Fourth Amendment (Detention Without Probable Cause)

145.    Each paragraph of this Complaint is incorporated as if reinstated fully herein.

146.    As described more fully above, the Individual Defendants, individually, jointly, and in conspiracy with one another, acting under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without probable cause for doing so and in spite of the fact they knew Plaintiff was innocent, in violation of his rights secured by the Fourth Amendment of the U.S. Constitution.

147.    In so doing, the Individual Defendants caused Plaintiff to be deprived of his liberty and detained without probable cause and improperly subjected to criminal judicial proceedings for which there was no probable cause. Plaintiff was deprived of his liberty, after the issuance of legal process based upon the Individual Defendants false and/or misleading affidavits, reports, and statements while awaiting trial and after his conviction.

148.    These judicial proceedings were instituted and continued maliciously, resulting in injury.

149.    In 2019, the prosecution terminated in Plaintiff's favor when Plaintiff successfully moved to vacate his conviction and the charges were dismissed.

150.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

151.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

753266a4718f6970

152.    The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

**Count 5 – Federal Law**
**Failure to Intervene**

153.    Each paragraph of this Complaint is incorporated as if reinstated fully herein.

154.    As described more fully above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Individual Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights even though they had the opportunity to do so.

155.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

156.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

157.    The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

**Count 6 – Federal Law**
**Conspiracy to Deprive Constitutional Rights**

158.    Each paragraph of this Complaint is incorporated as if reinstated fully herein.

159.    After the murder of Rodney Gochanaur, the Individual Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights against self-incrimination and to due process and a fair trial as described in previous paragraphs of this Complaint.

160.    In addition, before and after Plaintiff's conviction, the Individual Defendants further conspired to deprive Plaintiff of exculpatory information to which he was lawfully

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

entitled and which would have led to his not being charged, his acquittal, or his timelier exoneration.

161.    In this manner, the Individual Defendants conspired by concerted action to accomplish an unlawful purpose by unlawful means.

162.    In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above and was otherwise a willful participant in joint activity.

163.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

164.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

165.    The Individual Defendants' misconduct described in this count was undertaken, respectively, pursuant to the City of Bothell and King County's policies and practices, which are more fully described below.

### Count 7 – Federal Law
### Municipal Liability for Bothell and King County

166.    Each paragraph of this Complaint is incorporated as if reinstated fully herein.

167.    Plaintiff's injuries were caused by the policies and customs of King County and the City of Bothell, as well as by the actions of policy-making officials for King County and the City of Bothell.

168.    The actions of all the individual Defendants were undertaken pursuant to the policies and practices of the Bothell Police Department, King County Sheriff's Office, which were ratified by policymakers for the City of Bothell and King County with final policymaking authority, including Defendant Ericks and Defendant Beard and other Unknown Employees of each municipal entity.

169.    At all times relevant to the events described in this complaint and for a period of time before and after, the City of Bothell and King County failed to promulgate proper or

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

adequate rules, regulations, policies, and procedures governing: the conduct of interrogations and questioning of criminal suspects and witnesses by officers and agents of King County and the City of Bothell; the interrogation of juvenile suspects specifically; writing of police reports and taking of investigative notes; recording and documentation of confessions or other inculpatory statements; the disclosure of exculpatory information to prosecutors and defense attorneys; obtaining statements and testimony from witnesses; and the use of jailhouse informants and/or incentivized informants.

170.    The policies and practices also included the failure to adequately train, supervise, and discipline Defendants who engaged in the alleged constitutional violations as set forth in greater detail above.

171.    King County and the City of Bothell also failed to promulgate proper or adequate rules, regulations, policies, and procedures governing the interrogation of juveniles despite the obvious risk of constitutional violations and other harm resulting from the absence of such policies.

172.    Officers and agents of King County and the City of Bothell committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures.

173.    Had officers and agents of King County and the City of Bothell promulgated appropriate policies, the violations of Plaintiff's constitutional rights would have been prevented.

174.    In addition, as evident by the actions taken here, at all times relevant to the events described in this complaint and for a period of time before, the City of Bothell and King County had notice of a practice or custom by their officers and agents pursuant to which individuals suspected of criminal activity were interrogated in an abusive or coercive manner; were interrogated despite the failure to administer *Miranda* warnings or interrogated despite invocation of *Miranda* rights; and were coerced against their will to involuntarily implicate themselves in crimes they did not commit.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

175.     In addition, as evident by the actions taken here, at all times relevant to the events described in this complaint and for a period of time before, the City of Bothell and King County had notice of practices or customs by their officers and agents that included one or more of the following: (1) officers failed to record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses, including but not limited to jailhouse or incentivized informants; (3) officers fabricated false evidence implicated innocent individuals in criminal conduct; and (4) officers were permitted to pursue wrongful convictions through profoundly flawed investigations.

176.     Policymakers for the Bothell Police Department, King County Sheriff's Office, and King County Prosecutor's Office ratified the actions of the Defendants. Those policymakers knew about the violations of Plaintiff's constitutional rights and made a conscious, affirmative choice to ratify those constitutional violations by proceeding with Plaintiff's wrongful detention, prosecution, and conviction. But for this ratification of the Defendants' misconduct, Plaintiff would not have been wrongfully convicted, and his wrongful conviction was a natural and obvious consequence of the ratification.

177.     These practices and customs, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Bothell and King County directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses like those affecting Plaintiff.

178.     The above practices and customs, so well settled as to constitute de facto policies of the City of Bothell and King County, were able to exist and thrive, individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

179.     In addition, the misconduct described in this count was undertaken pursuant to the policies and practices of King County and the City of Bothell in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for King County and the City of Bothell, or were actually committed by persons with such final policymaking authority.

180.     As a direct and proximate result of the actions of the City and the County, Plaintiff's constitutional rights were violated and he suffered injuries and damages as set forth in this Complaint.

181.     The City of Bothell and King County are therefore liable for the misconduct committed by the individual Defendants.

### Count 8 – State Law
### Malicious Prosecution

182.     Each paragraph of this Complaint is incorporated as if reinstated fully herein.

183.     The Individual Defendants accused Plaintiff of criminal activity knowing those accusations were not supported by genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

184.     The Defendants caused Plaintiff to be improperly subjected to criminal judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

185.     The Defendants' statements alleging that Plaintiff was guilty of murder were made with knowledge that those statements were false. The Defendants also fabricated evidence in the form of falsified police reports documenting the circumstances of Plaintiff's confession and the jailhouse informant's false statements. The Defendants were aware, as described more fully above, that no true or reliable evidence implicated Plaintiff in the murder.

186.     In 2019, the prosecution terminated in Plaintiff's favor when Plaintiff's conviction was vacated and the charges were dismissed.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

187.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

188.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

### Count 9 – State Law
### Outrage

189.     Each paragraph of this Complaint is incorporated as if reinstated fully herein.

190.     The acts and conduct of the Defendants as set forth above were extreme and outrageous. As more fully described above, the Defendants' actions were rooted in an abuse of power and authority, and they were undertaken with intent to cause, or with reckless disregard for the probability that their conduct would cause, severe emotional distress to Plaintiff.

191.     The Defendants' conduct (including but not limited to their coercive interrogation of a juvenile, their willful suppression of evidence, and their fabrication of false statements, all in an effort to frame Plaintiff for a crime he did not commit) were so outrageous in character and extreme in degree that they went beyond all possible bounds of decency and are intolerable in a civilized community.

192.     Defendants undertook this extreme and outrageous conduct intentionally and/or with reckless disregard for Plaintiff's emotional well-being.

193.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.

### Count 10 – State Law
### Civil Conspiracy

194.     Each paragraph of this Complaint is incorporated as if reinstated fully herein.

195.     As described more fully above, the individual Defendants, acting in concert, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

LOEVY & LOEVY
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

196.     In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

197.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to Plaintiff's rights.

198.     As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

## Count 11 – State Law
## Respondeat Superior

199.     Each paragraph of this Complaint is incorporated as if reinstated fully herein.

200.     In committing the acts alleged in the preceding paragraphs, each of the individual Defendants were members of, and agents of, the City of Bothell and King County, acting at all relevant times within the scope of their employment and under color of law.

201.     Defendants City of Bothell and King County are liable as principals for all torts committed by their agents under Washington law as set forth in Counts 8, 9, and 10.

## Count 12 - State Law
## Negligence

202.     Each paragraph of this Complaint is incorporated as if reinstated fully herein.

203.     The City of Bothell and King County owed a duty to Plaintiff to exercise reasonable care to refrain from causing him foreseeable harm. This included a duty to ensure their officers refrain from directly causing harm to Plaintiff through affirmative acts of misfeasance. Specifically, the Defendants owed Plaintiff a duty not to coerce a false confession, procure false testimony, or fabricate evidence to use against him in criminal proceedings. The Defendants also had a duty to ensure that adequate training and supervision was taken to prevent harm from Plaintiff, particularly with respect to the interrogation of a juvenile suspect.

204.     The City of Bothell and King County breached their duty to Plaintiff by failing to adopt safeguards, by failing to adequately train and supervise their officers, and as otherwise described above.

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

205.   But for negligence of City of Bothell and King County, Plaintiff would not have been detained, charged, prosecuted, and wrongfully imprisoned for the murder of Rodney Gochanaur because no legitimate evidence tied Plaintiff to the crime.

206.   The City of Bothell and King County knew or reasonably should have known that the injuries Plaintiff suffered would result from the negligence described herein, which are obvious consequences that flow from un-regulated and misguided police work. Plaintiff's wrongful prosecution and incarceration were within the field the danger which the City of Bothell and King County should have anticipated.

207.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

**Count 13 – State Law**
**Indemnification**

208.   Each paragraph of this Complaint is incorporated as if reinstated fully herein.

209.   In committing the acts alleged in the preceding paragraphs, the Individual Defendants acted at all relevant times within the scope of their employment for the City of Bothell or King County, respectively.

210.   As a result, pursuant to state law, the City of Bothell and King Count must indemnify the Individual Defendants for any judgment against them.

WHEREFORE, Plaintiff IAN SIMMERS, respectfully requests this Court enter a judgment in his favor and against DEFENDANTS KING COUNTY, THE CITY OF BOTHELL, DET. EDWARD J. HOPKINS, SGT. CLEMENT RUSK, DET. REBECCA MINER, DET. JOHN MCSWAIN,  DETECTIVE PAT RAFTUS, DETECTIVE KEN BAXTER, CHIEF MARK ERICKS, DET. SGT. DAVID SCHLAEGEL, AND MAJ. JACKSON BEARD, UNKOWN OFFFICERS OF THE CITY OF BOTHELL POLICE DEPARTMENT, AND UNKNOWN SHERIFF DEPUTIES OF KING COUNTY, awarding compensatory damages, attorneys' fees and costs against each defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the individual defendants; that plaintiff be awarded injunctive relief on his claims against KING

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900

COUNTY and THE CITY OF BOTHELL, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff IAN SIMMERS hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**DATED**: January 25, 2021

Respectfully submitted,

**IAN SIMMERS**

By:  /s/David B. Owens
*One of Plaintiff's Attorneys*

David B. Owens (david@loevy.com)
LOEVY & LOEVY
100 S. King Street, Suite 100
Seattle, WA 98104
(312) 243-5900

John Hazinski*
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
*motion for admission *pro hac vice* forthcoming

**LOEVY & LOEVY**
100 S. KING STREET, STE 100
SEATTLE, WA 98104
TELEPHONE: (312) 243-5900