1

2

Hon. Richard A. Jones, District Judge
Hon. J. Richard Creatura, Magistrate Judge

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8

Ian Simmers,

9

          Plaintiff,

10

v.

11

King County, the City of Bothell, Det.
Edward J. Hopkins, Sgt. Clement Rusk, Det.
Rebecca Miner, Det. John McSwain Det.
Pat Raftus, Det. Ken Baxter, Chief Mark
Ericks, Det. Sgt. David Schlaegel, Maj.
Jackson Beard, Unknown Officers of the
City of Bothell Police Department, and
Unknown Sheriff's Deputies of King
County,

          Defendants.

Case No. 2:21 CV 100

**PLAINTIFF'S OMNIBUS RESPONSE
TO DEFENDANTS' MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

Note on motion calendar:
April 16, 2021

12

13

14

15

16

17

18

19

          Plaintiff Ian Simmers, through his undersigned attorneys, submits the following

20

omnibus response to the motions for judgment on the pleadings submitted by Defendant

21

King County (Dkt. 29); the City of Bothell Defendants (Dkt. 31); and individual King

22

County Defendants (Dkt. 32), stating as follows:

23

**Introduction**

24

          This case arises from Plaintiff's wrongful conviction for murder for which he served

25

more than two decades in prison before being exonerated by DNA evidence in 2019. He has

26

brought claims against the law-enforcement officials who engaged in the deliberate

27

misconduct that caused his unjust prosecution and incarceration, as well as the municipal

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 1
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

governments responsible for maintaining policies and customs that were the moving force behind his constitutional violations. The Complaint sets forth detailed factual allegations describing the nature and extent of the Defendants' wrongdoing, which included thoroughgoing coercion, fabrication, and evidence suppression that infected his state criminal proceedings and deprived him of his rights secured by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

Defendants' motions for judgment on the pleadings are procedurally improper, misstate the law, and misinterpret and contest Plaintiff's allegations. Far from meeting their burden to show that Defendants are entitled to dismissal on the face of the pleadings, the motions show exactly why this case cannot be resolved at the pleading stage. By asking this Court to look beyond the Complaint, consider nearly a thousand pages of extrinsic evidence, and conclusively resolve factual disputes in their favor, Defendants are seeking a fact-finder's verdict in the guise of a Rule 12 dismissal. The Court should not entertain Defendants' invitation to circumvent the Federal Rules in this fashion.

But even if Defendants' arguments did not rest on improper evidentiary disputes and factual challenges to Plaintiff's allegations, Defendants have not identified any basis to dismiss the Complaint. They raise a litany of a legal challenges to Plaintiff's claims, including arguments based on collateral and judicial estoppel that lack any grounding in the facts of this case or controlling precedent. Similarly, their arguments based on *Heck v. Humphrey*, 512 U.S. 477 (1994), Article III standing, statutes of limitations blatantly misconstrue Plaintiff's allegations and misapply case law. These legal arguments have no merit and should be rejected.

Defendants also contest the sufficiency of Plaintiff's allegations. But Plaintiff's 210-paragraph Complaint sets forth detailed allegations that amply allege that each of the Defendants is liable for the misconduct that caused Plaintiff's wrongful conviction. Reviewed under the appropriate standard, which requires accepting the truth of Plaintiff's allegations rather than entertaining Defendants' contrary factual contentions, Plaintiff's

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS FOR JUDGMENT ON THE PLEADINGS - 2
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Complaint states established claims for relief, and the Defendants' motions should therefore be denied.

## Background

The following factual summary is drawn from the allegations in Plaintiff's Complaint. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.").

Plaintiff brought this suit to vindicate the violations of his federal constitutional rights that caused him to be wrongly convicted and imprisoned for 23 years before DNA evidence finally proved his innocence. Compl., Dkt. 1 ¶¶1, 6–7. Plaintiff's wrongful conviction was the direct result of deliberate misconduct on the part of law enforcement officers employed by Defendants King County and the City of Bothell, who fabricated evidence and suppressed exculpatory evidence in an effort to secure his detention and conviction for a crime they knew he did not commit. *Id.* ¶¶2–5. But his wrongful conviction also resulted from the policies, practices, and customs of King County and the City of Bothell, as well as the actions of those entities' official policymakers. *Id.* ¶¶167–180.

## A.    The Gochanaur Murder & Defendants' Unlawful Interrogations

The crime for which Plaintiff was wrongly convicted was the 1995 murder of Rodney Gochanaur. *Id.* ¶1. Officers from the Bothell Police Department, including Defendants Hopkins, Schlaegel, Miner, and Rusk, participated in the initial investigation and uncovered potential suspects with motives for the murder. *Id.* ¶¶22, 27–28. But rather than conducting adequate follow-up on these leads to identify the real killer, these Defendants (working in conjunction with Defendants McSwain, Raftis, Baxter, and Rusk from the King County Police) decided to pin the crime on Plaintiff. *Id.* ¶¶29–31. Defendants Ericks and Beard, acting in their capacities as supervisors and policymakers within the Bothell Police Department and King County Police, respectively, condoned these actions. *Id.* ¶32.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 3
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

At the time of the Gochanaur murder, Plaintiff was just 16 years old. *Id.* ¶1. He was arrested several days after the murder on completely unrelated charges alongside another juvenile named Jon Wyatt. *Id.* ¶¶34–35. The Police Officer Defendants (*i.e.*, Schlaegel, Hopkins, Miner, McSwain, Raftis, Baxter, and Rusk) began interrogating Wyatt without his parents present. *Id.* ¶37. The Police Officer Defendants employed a variety of coercive interrogation tactics to obtain false statements implicating Plaintiff in the Gochanaur murder. These tactics included threatening, pressuring, cajoling, badgering, and harassing Wyatt in an effort to get him to falsely state that Plaintiff had something to do with the crime, *id.* ¶40; using guilt-presumptive questioning, *id.* ¶41; depriving Wyatt of an attorney even after one was requested and arrived at the police station, *id.* ¶¶41, 57; and making false promises of leniency that also operated as coercive threats, *id.* ¶¶42, 44. The Police Officer Defendants deliberately used these tactics because they knew they would be effective in obtaining false statements implicating Plaintiff. *Id.* ¶¶38, 43, 45. The Police Officer Defendants then fabricated evidence, including written reports, about their interrogations of Wyatt. *Id.* ¶46. And they failed to document or disclose exculpatory and impeaching evidence relating to their interactions with Wyatt. *Id.* ¶¶96–97.

With Wyatt's false statements in hand, the Police Officer Defendants turned to their interrogation of Plaintiff, employing tactics similar to those that had proven effective against Wyatt. *Id.* ¶48. The Police Officer Defendants ignored Plaintiff's invocation of the right to silence, *id.* ¶¶52–53, and harassed him throughout the night in an effort to deprive him of sleep and make him more compliant during his interrogations, *id.* ¶¶54, 57, 60, 63–64. Even after it became clear that Plaintiff had no knowledge of the crime and was innocent, the Police Officer Defendants persisted in their coercive strategy. *Id.* ¶¶65, 68. They used aggressive confrontation, false evidence ploys, and minimization themes, such as convincing Plaintiff to adopt a story that Gochanaur was the initial aggressor in order to minimize the severity of this crime. *Id.* ¶65. The Police Officer Defendants also fed

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 4
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Plaintiff details about the crime as part of their effort to fabricate a false statement, coaching Plaintiff to repeat certain information. *Id.* ¶¶68–69.

Plaintiff was particularly vulnerable to the Police Officer Defendants' coercive tactics, and Defendants knew as much. *Id.* ¶66. The Police Officer Defendants understood that Plaintiff's judgment was impaired, that he was exhausted, and that he was a juvenile, all of which facilitated their strategy to obtain a false confession. *Id.* ¶¶62–63. Eventually, the Police Officer Defendants succeeded in overbearing Plaintiff's will and coercing him into repeated the inculpatory statement they had manufactured. *Id.* ¶69. They deliberately waited until that point to begin recording their questioning of Plaintiff, thereby creating false evidence that would be used to detain, prosecute, and convict him. *Id.* ¶¶70, 86, 89.

## B.    Defendants' Fabricated "Informant" Testimony

This coerced statement was not the end of Defendants' misconduct. The confession that the Police Officer Defendants ascribed to Plaintiff was riddled with flaws that suggested it was false. *Id.* ¶¶90–93. To shore up these flaws, the Police Officer Defendants conspired to convince a man named Kevin Olsen to testify to a false story that Plaintiff confessed to the murder at the King County Jail. *Id.* ¶94. Defendant Hopkins then memorialized this fabricated evidence in a police report designed to explain away the mistakes in the false confession. *Id.* ¶95.

## C.    Plaintiff's Trial and Conviction

Defendants' coercion, fabrication, and suppression had their intended effect. *Id.* ¶99. Plaintiff was charged with Gochanaur's murder and tried based solely on fabricated evidence. *Id.* ¶100. As a direct result of Defendants' misconduct, Plaintiff was sentenced to nearly 50 years in prison. *Id.* At no point during the criminal investigation or trial was there probable cause to believe that Plaintiff was guilty, as the sum total of the evidence amassed against him was the result of coercion and fabrication. *Id.* ¶98.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 5
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

**D.      Plaintiff's Exoneration and Release**

Plaintiff served almost 23 years in prison as an innocent man, suffering incalculable physical, mental, emotional, and economic harm. *Id.* ¶¶111, 114–120. In 2018, he filed a motion to vacate his conviction based in part on the results of newly performed DNA testing on the murder weapon and the victim's fingernail clippings. *Id.* ¶112. The DNA test results conclusively proved his innocence. *Id.* The King County Prosecutor's office joined the motion to vacate the conviction, which was vacated in 2019, and the charges against Plaintiff were dismissed. *Id.* ¶113.

**Legal Standard**

A party moving for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) must show that the "complaint's factual allegations, together with all reasonable inferences," fail to "state a plausible claim for relief." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 & n.4 (9th Cir. 2011) (noting that the standard for Rule 12(b)(6) motions applies to Rule 12(c)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard of notice pleading under the Federal Rules does not require a plaintiff to "plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019)

Importantly, a Rule 12 motion cannot be used to raise or resolve factual disputes. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."); *see also Peterson v. Gannett Co. Inc.*, No. CV-20-00106-PHX-MTL, 2020 WL 1935520, at *3 (D. Ariz. Apr. 22, 2020); *Fed. Trade Comm'n v. Am. Home Servicing Ctr.*, LLC, No. 8:18-cv-00597-JLS-KES, 2018 WL 5880247, at *1 (C.D. Cal. Sept. 12, 2018). In *Lee*, for example, the Ninth Circuit reversed the district court's order of dismissal, holding

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 6
2:21 CV 100

Loevy & Loevy
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

that the court had improperly "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs." *Lee*, 250 F.3d at 688.

Courts deciding motions under Rule 12(c) must do so based on the facts alleged in the pleadings. *Mercury Cas. Co. v. Brasscraft Mfg. Co.*, No. 2:19-cv-10034-RGK-GJS, 2020 WL 3230289, at *2 (C.D. Cal. Mar. 2, 2020) ("A motion under Rule 12(c) . . . is decided on the face of the Plaintiff's complaint.") (citing *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012)). A court may consider extrinsic evidence only if it falls within two specific categories: "material which is properly submitted as part of the complaint" or "matters of public record" subject to judicial notice. *Id.* at 688–89. But judicial notice *cannot* be used to inject factual challenges into a Rule 12 motion, because a court "may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee*, 250 F.3d at 680 (citing Fed. R. Evid. 201(b)). Put another way, although a party can request the Court take judicial notice of a public record, such as the fact that a certain document exists, the party cannot "ask[] the Court to rely on the judicially noticed materials to resolve a disputed fact." *Conroy v. Clark*, No. 3:20-CV-366-SB, 2020 WL 7406542, at *3 (D. Or. Dec. 17, 2020). "[A] high degree of indisputability is the essential prerequisite to taking judicial notice of adjudicative facts . . . ." *McAllister v. Adecco Group N.A.*, No. CV 16-00447 JMS-KJM, 2017 WL 11151053, at *2 (D. Haw. Nov. 9, 2017) (quoting *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005)) (quotation marks omitted). As the parties requesting that the Court take judicial notice, Defendants bear the burden of showing that these stringent criteria are satisfied for the numerous documents on which they rely. *McAllister*, 2017 WL 11151053, at *2.

## Argument

Ignoring the legal standards that govern motions under Rule 12(c), Defendants' motions run roughshod over Plaintiff's allegations and dispute his factual contentions in an

OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 7
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

effort to prematurely win summary judgment, even before having made their initial disclosures or producing a single document to Plaintiff. Defendants misconstrue Plaintiff's claims, disregard any allegations that contradict their legal arguments, and seek to introduce factual questions with no basis in the pleadings. And by filing nearly 900 pages of documents under the guise of "judicial notice," Dkt. 30, Defendants have asked the Court to delve into disputed issues of fact and resolve those issues in their favor. This strategy has no place in a motion for judgment on the pleadings, and it should be rejected out of hand.

Even if Defendants' arguments did not suffer from fatal procedural flaws, they still fail on their merits. First, the contention that Plaintiff should be estopped from pursuing his claims is simply incorrect under both federal and Washington state law. His conviction and sentence have been vacated, meaning there is no longer an extant judgment on which to base an argument for issue preclusion. Moreover, as alleged in Plaintiff's complaint, the criminal proceedings against him were infected by the Defendants' fraudulent conduct, including the fabrication and suppression of evidence, that preclude the application of issue preclusion. No case has held that a Plaintiff's claims are barred under similar circumstances. And the fact that Plaintiff may have raised different (but entirely consistent) allegations during his post-conviction proceedings in no way implicates the doctrine of judicial estoppel.

Second, Plaintiff's claims are not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because the only conviction he is challenging has been vacated and the charges against Plaintiff have been dismissed. Defendants attempt to manufacture a *Heck* problem by arguing—without reference to *anything* in Plaintiff's complaint—that Plaintiff is also attacking his convictions for crimes totally unrelated to the murder for which he was wrongly convicted. But Defendants may not falsely define Plaintiff's claims in a way they find convenient in order to generate non-existent procedural problems. Neither *Heck* nor any subsequent case nor any remotely fair reading of Plaintiff's allegations supports Defendants' argument.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 8
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Third, Plaintiff's claims are timely. Because the statute of limitations is an affirmative defense, dismissal on that basis is rarely warranted on the pleadings alone. Defendants cannot show that Plaintiff has pleaded all the facts necessary to establish the defense on the face of the Complaint. And to the extent Defendants seek dismissal of one aspect of one of Plaintiff's federal claims they believe is time-barred—a narrow time period for which Plaintiff is not seeking to recover in any event—Rule 12 does not permit the piecemeal dismissal of parts of claims or legal theories.

Fourth, Plaintiff has standing to pursue every claim in the Complaint. In contesting Plaintiff's standing, Defendants argue that Plaintiff is attempting to vindicate the constitutional violations suffered by Jon Wyatt, another individual who was interrogated during the Gochanauer homicide investigation. But Plaintiff is not bringing any claims on Wyatt's behalf; no such claim appears in the Complaint, which seeks to remedy only Plaintiff's federal constitutional and state-law injuries. As with their argument based on *Heck*, Defendants have deliberately misconstrued Plaintiff's claims in order to attempt to manufacture an unwarranted basis for dismissal.

Fifth, Plaintiff has more than plausibly alleged that each and every one of the Defendants is liable for the misconduct detailed in the Complaint. In contesting the sufficiency of these allegations, Defendants are attempting to impose pleading requirements contrary to the Federal Rules of Civil Procedure. But Plaintiff's complaint easy satisfies Rule 8's notice pleading standard. This includes Plaintiff's *Monell* allegations, which properly and specifically allege municipal liability.

Sixth, the Individual King County Defendants' assertion of qualified immunity on the face of the pleadings is entirely meritless. The misconduct alleged—namely, deliberate coercion of a juvenile in an interrogation, the fabrication of false inculpatory statements, and the suppression of exculpatory evidence—violated Plaintiff's constitutional rights in a manner that was clearly established long before the Gochanaur homicide investigation in 1995. Nothing on the face of the pleadings supports Defendants' contention that the law did

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

not clearly prohibit their willful coercion, fabrication, and suppression of evidence in an effort to frame Plaintiff for murder.

Plaintiff is entitled to pursue his claims that the Defendants caused his wrongful prosecution and conviction for murder. He therefore respectfully requests that the Court deny Defendants' Rule 12(c) motions.

## A.    Defendants' Motions Should Be Denied as Procedurally Improper

Motions under Rule 12 are not vehicles to litigate factual disputes and weigh evidence extrinsic to the pleadings. *Lee*, 250 F.3d at 688. But that is precisely what Defendants have asked this Court to do. Rather than accepting Plaintiff's well-pleaded allegations as true and drawing reasonable inferences in Plaintiff's favor, Defendants have attempted to re-write Plaintiff's Complaint by incorporating extrinsic documents and using them to dispute his allegations. The Ninth Circuit has recently warned that

> [t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Despite to the Ninth Circuit's warning, this is precisely what Defendants have done, submitting almost 900 pages of transcripts, briefs, court orders, and other documents—all under the guise of "judicial notice." *See* Dkt. 30. And throughout their motions, Defendants repeatedly rely on these documents to provide what they contend is "background," even when the underlying facts they assert are disputed in the very documents they cite. Then, Defendants repeatedly suggest that these documents should be used to resolve hotly disputed facts in their favor. This is a paradigmatic case of the "unscrupulous use of extrinsic documents" that the Ninth Circuit has prohibited. *Khoja*, 899 F.3d at 998. Courts routinely reject such thinly veiled attempts to inject factual disputes and extrinsic evidence into proceedings under Rule 12. *See, e.g.*, *Johnson v. Napa Valley Wine Train, Inc.*, No. 15-

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

CV-04515-TEH, 2016 WL 493229, at *6 (N.D. Cal. Feb. 9, 2016); *Garcia v. California Supreme Ct.*, No. CV 12-4504-DWM, 2014 WL 309000, at *2 (N.D. Cal. Jan. 21, 2014); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *5 (N.D. Cal. Jan. 15, 2014).

Beyond being legally improper, Defendants' strategy of submitting hundreds of pages of documents in support of their motions is highly prejudicial. None of these documents has been produced in this litigation, and Plaintiff has not been given the opportunity to conduct discovery into any of the facts contained therein. And Defendants have not identified which facts in particular they believe should be subject to judicial notice, forcing Plaintiff and the Court to sift through them to evaluate whether each specific fact contained therein is properly judicially noticed. *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 763–64 (N.D. Cal. 2020) (noting that in *Khoja* the Ninth Circuit required that "if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document").

Under these circumstances, the Court would be within its discretion to summarily reject any of Defendants' arguments that cite the nearly one thousand pages of documents they have put before the Court. *See Riley v. Chopra*, No. CV 18-3371 FMO (SKX), 2020 WL 5217154, at *3 (C.D. Cal. June 19, 2020) (declining to consider voluminous extrinsic documents in light of *Khoja* and noting that "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it" (quoting WRIGHT & MILLER, 5C Fed. Prac. & Proc. Civ. § 1366)).

Because Defendants have flouted the standards governing motions for judgment on the pleadings and abused the doctrine of judicial notice, their motions should be denied as procedurally improper.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 11
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

**B.    Collateral Estoppel Does Not Apply to Plaintiff's Claims, Which Allege Fraudulent Conduct and Evidence Fabrication That Were Not and Could Not Have Been Fully and Fairly Adjudicated in His Criminal Case**

Defendants first contend that Plaintiff should be collaterally estopped from bringing claims relating to the Defendants' misconduct because of rulings made in his criminal case.

Defendants skip past the threshold question about whether estoppel can even possibly apply: the existence of state-court judgment to which to give preclusive effect. If the answer to that question is no, as it is here, federal law controls. And as a matter of federal law, vacated state-court judgments cannot preclude subsequent federal Section 1983 actions. Preclusion applies only when "issues were conclusively determined in a prior action," which among other things requires that a prior judgment *exist* and be "final on the merits." *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010); RESTATEMENT (2D) JUDGMENTS §27 (1983) (preclusion requires a "valid and final judgment" on an "issue of fact or law actually litigated"). The Supreme Court has held that Section 1983 did not alter these common-law rules of preclusion. *Allen v. McCurry*, 449 U.S. 90, 96–98 (1980) (noting the Full Faith and Credit Act, 28 U.S.C. §1738 requires "federal courts to give preclusive effect to state-court *judgments*") (emphasis added); *accord Migra v. Warren City School District*, 465 U.S. 75, 80–81 (1984).

Far from the extant and final state-court judgment that preclusion requires, Simmers' murder conviction was vacated and is *no judgment at all*. As a consequence, the Ninth Circuit has held, in no uncertain terms, that, as a matter of federal law, such a vacated criminal judgment "cannot serve as the basis for a disposition on the grounds of res judicata or collateral estoppel." *Mills v. Covina*, 921 F.3d 1161, 1170 n.2 (9th Cir. 2019); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 762 (9th Cir. 1991) ("Once [the plaintiff's] conviction was reversed, there could have been no collateral estoppel effect of any kind on his civil rights claims."); *Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980) ("A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel."); *see also* 18A WRIGHT & MILLER., FEDERAL PRAC. &

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

PROC. §4427 ("Judicial actions much achieve basic minimum quality to become eligible for res judicata effects. First, there must be a judgment."); *id.* §4432 ("Once . . . the judgment is vacated, preclusion is of course defeated[.]"); *id.* §4433 ("A second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed.").

Federal courts across the country agree that it is black-letter, "hornbook law" that a vacated judgment lacks preclusive force. *Jackson v. Coalter*, 337 F.3d 74, 85 (1st Cir. 2003); *see also Langely v. Prince*, 926 F.3d 145, 164 (5th Cir. 2019) (once a judgement "is reversed on appeal, it's obviously no longer 'valid' and retains *zero* preclusive effect"); *United Bhd. v. Operative Plasterers*, 721 F.3d 678, 691 (D.C. Cir. 2013) ("A judgment vacated either by the trail court or on appeal has no estoppel effect in a subsequent proceeding"); *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 881 (7th Cir. 2004) ("[O]nce a judgment is reversed it ceases to have collateral estoppel effect."); *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1332 (Fed. Cir. 2003) ("[A] vacated judgment 'has no preclusive force either as a matter of collateral or direct estoppel.'"); *Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619, 624 (11th Cir. 1998) ("A judgment that has been vacated . . . is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1469 (10th Cir. 1994) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."); *U.S. v. Lawson*, 736 F.2d 835, 837 (2d Cir. 1984) ("It has long been established . . . that when a judgment has been reversed . . . the effect is to nullify the judgment entirely and place the parties in the position of no trial having taken place.").

Indeed, federal courts have rejected Defendants' precise argument—that a denied motion to suppress during state criminal proceedings leading to a wrongful conviction has preclusive effect in subsequent §1983 litigation even if the conviction has been vacated—

OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 13
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

calling it "an absurd argument." *Evans v. Katalinic*, 445 F.3d 953, 955–56 (7th Cir. 2006); *see also Peterson v. Heymes*, 931 F.3d 546, 554-55 (6th Cir. 2019) ("Here, the criminal judgment has been vacated. Therefore, the [criminal] trial court's interlocutory rulings . . . have merged with the final judgment, which means those interlocutory rulings have been vacated too."); *O'Connell v. Alejo*, No. 18-cv-1359-RBJ, 2020 WL 1244852, at *4 (D. Colo. Mar. 16, 2020) ("[A] vacated judgment, even if not vacated as a result of evidence exonerating the defendant, should not be given preclusive effect."); *Dukes v. City of Albany*, 289 F. Supp. 3d 387, 393 (N.D.N.Y. 2018) ("Defendants' interpretation of collateral estoppel seems plainly wrong—a vacated criminal conviction cannot have preclusive effect").  Under these authorities, Defendants motion should be denied.

Where there *is* an extant judgment, federal courts considering the preclusive effect of a prior state-court judgment in Section 1983 cases look to that state's preclusion law to see what preclusive effect, if any, should attach to the prior ruling. *See Lockett v. Ericson*, 656 F.3d. 892, 897 (9th Cir. 2011). Under Washington law, "[i]ssue preclusion applies only if (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of issue preclusion does not work an injustice on the party against whom it is applied." *Scholz v. Washington State Patrol*, 416 P.3d 1261, 1267 (Wash. Ct. App. 2018).

Even then, state rules of collateral estoppel do not mechanically apply in actions under Section 1983. The Supreme Court has held that "[i]n federal actions, including § 1983 actions, a state-court judgment will not be given collateral estoppel effect . . . where 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.'" *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 462 U.S. 90, 101 (1980)). Furthermore, "additional exceptions to collateral estoppel may be warranted in § 1983 actions in light of

OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 14
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

the understanding of § 1983 that the federal courts could step in where the state courts were unable or unwilling to protect federal rights." *Id.* (quotation marks omitted).

In this case, there are five independent reasons, even under Washington law, that collateral estoppel cannot bar Plaintiff's claims.

### 1. *Plaintiff's vacated conviction is not a final judgment for purposes of collateral estoppel*

Washington follows the rule described in federal law above: Plaintiff's criminal case cannot be a basis for collateral estoppel because his conviction has been vacated, depriving his criminal case of any preclusive effect. As a matter of Washington law, once a conviction and sentence are reversed, the criminal adjudication no longer ends in a "final judgment on the merits," meaning that it can no longer apply for collateral estoppel purposes. In *Washington v. Harrison*, 61 P.3d 1104 (Wash. 2003) (en banc), the Washington Supreme Court held that rulings in a criminal case could not be given collateral estoppel effect after the criminal defendant's "entire sentence was reversed—the finality of the judgment is destroyed. Accordingly, [the defendant's] prior sentence ceased to be a final judgment on the merits, and collateral estoppel does not apply." *Id.* at 1110. This is because a final judgment in a criminal case depends on a valid sentence: "When a court reverses a sentence it effectively vacates the judgment because the '[f]inal judgment in a criminal case means sentence.'" *In re Skylstad*, 162 P.3d 413, 418 (Wash. 2007) (en banc) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)); *see also Washington v. Delbosque*, 456 P3d 806, 817 (Wash. 2020). Because his conviction and sentence were reversed, collateral estoppel cannot apply to the rulings in Plaintiff's criminal case.

### 2. *The issues presented this case differ from those decided in Plaintiff's criminal case*

The issues presented in this case are not at all identical to the issues decided during Plaintiff's criminal case because Defendants' deliberate fabrication and suppression of exculpatory evidence were never presented to the state court. Moreover, the DNA evidence that exonerated Plaintiff, and showed that his purported (and fabricated) confession to the

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 15
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

murder was false as a matter of fact, was unknown during the criminal case. Compl., Dkt. 1 ¶¶111–113.

Plaintiff alleges misconduct that extends significantly beyond any argument or evidence presented to the judge before Plaintiff was convicted. Although the state court made a finding of probable cause, it did so on a different factual basis and without the benefit of evidence and argument regarding the full extent of the law enforcement misconduct that occurred. Indeed, a central premise of Plaintiff's Complaint is that the Defendants hid evidence of their wrongdoing from the criminal court by fabricating evidence and suppressing exculpatory evidence that would have proven Plaintiff's innocence. *Id*. 1 ¶¶4–5; 71–72; 83–89; 96–100. The same is true of Defendants' fabricated "informant" testimony; the only issue ever litigated in the criminal case regarding that testimony was the *prosecutors'* undisclosed benefit provided to the informant, and the fact that his statements implicating Plaintiff were invented by the *police* out of whole cloth was never put before the criminal court. Given these essential differences with the issues presented during the criminal case, collateral estoppel cannot apply. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) ("[C]ollateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials."); *Haupt v. Dillard*, 17 F.3d 285, 290 n.5 (9th Cir. 1994) (noting that a probable cause determination would not preclude Section 1983 liability if state actors suppress evidence negating probable cause); *Wheeler v. Broggi*, No. C19-1410-JCC, 2020 WL 2111249, at *3 (W.D. Wash. May 4, 2020) (rejecting an argument from collateral estoppel where the criminal court judge's finding of probable cause "relied on evidence that was materially different from the evidence known to Defendants"); *accord Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 964 (9th Cir. 2020).

Defendants' arguments concerning the identity of the issues fail to reckon with Plaintiff's allegations of thoroughgoing misconduct that was concealed during Plaintiff's

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 16
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

criminal proceedings. Their cursory contention that the issues are the same is meritless and should be rejected.

### 3. Plaintiff did not have a full and fair opportunity to litigate any of the issues raised in this civil case during his criminal proceedings

Collateral estoppel can apply to Plaintiff's Section 1983 claims only if he had a full and fair opportunity to litigate the issues in the prior case. *Haring*, 462 U.S. at 313. During his wrongful criminal prosecution, Plaintiff was clearly denied that opportunity. As noted above, Plaintiff alleges that Defendants concealed their wrongdoing, including the extent of their coercion and fabrication of evidence, while failing to disclose exculpatory evidence that would have exonerated Plaintiff. Compl., Dkt. 1 ¶¶4–5; 71–72; 83–89; 96–100. Moreover, Plaintiff was not armed with the DNA evidence that illustrated the confession wrung from him by the Police Officer Defendants was false; powerfully corroborating his contentions it was involuntary. These well-pleaded allegations foreclose the application of collateral estoppel under *Awabdy* and *Haupt*, which Defendants themselves cite. *See* Dkt. 29 at 8; Dkt. 31 at 17.

### 4. Applying collateral estoppel under these circumstances would be manifestly unjust and incentivize police officers to conceal their misconduct

Even if the other elements were met—which they are not—collateral estoppel would still not automatically apply; it is an equitable doctrine. *See Hadley v. Maxwell*, 144 Wash. 2d 306, 315 (2001) ("Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice."); *cf. Afoa v. Port of Seattle,* 191 Wash. 2d 110, 132, (2018) (refusing to apply collateral estoppel because it would work an injustice against the party sought to be estopped). Washington law prohibits the application of collateral estoppel if precluding relitigation of an issue would "work an injustice on the party against whom collateral estoppel is to be applied." *Clark v. Baines*, 84 P.3d 245, 249 (Wa. 2004). This is such a case. Plaintiff's wrongful prosecution and conviction for murder

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 17
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

resulted from the Defendants' intentional manipulation of state court proceedings. Plaintiff was exonerated on the basis of new DNA testing that proved his innocence of the murder conviction challenged here, and that powerfully showed the confession obtained by the defendants as a result of the overnight interrogation of a child was false. It is hard to imagine a more inequitable application of collateral estoppel than a case such as this one, given Plaintiff's innocence and the importance of civil-rights litigation to both Simmers and others in the community. *Cf. Owen v. City of Indendence*, 445 U.S. 622, 651, (1980) (emphasizing "§ 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations"). To hold that the mere existence of those now-vacated proceedings now bars him from vindicating his rights and holding the responsible parties to account would be to reward the Defendants' misconduct twice over. It would also create perverse incentives for law enforcement officers in the future, who would have a motive to fraudulently procure judgments in criminal cases to insulate themselves from liability for prior misconduct. To apply collateral estoppel under these circumstances would be patently unjust, and Washington law does not permit it.

### 5. Hanson *provides no support for application of collateral estoppel here*

Finally, Defendants rest their collateral estoppel argument almost exclusively on a single case, *Hanson*, that does not limit the scope of Plaintiff's Section 1983 claims.

For one, consistent with *Awabdy* and *Haupt, Hanson* recognizes that collateral estoppel should not apply under the circumstances of this case. Where a "conviction was obtained through fraud, perjury or other corrupt practice," it does not bar a subsequent civil lawsuit challenging law enforcement misconduct that caused the conviction. *Hanson*, 852 P.2d at 301. Other Courts have acknowledged these rules as an exception to the applicability of *Hanson. See, e.g., Allen v. Wash. State Patrol*, No. C05-1665-JCC, 2007 WL 1140261, at *4 (W.D. Wash. Apr. 17, 2007) (declining to apply *Hanson* where the plaintiff had alleged facts that "properly attack probable cause via a showing of fraud,

perjury, or corruption"); *Fondren v. Klickitat County*, 905 P.2d 928, 932 (Wn. App. 1995) (similar).

Moreover, although Defendants characterize *Hanson* as a decision about collateral estoppel, in reality it is almost entirely a decision about the state-law tort of malicious prosecution. Specifically, the Washington Supreme Court held in *Hanson* that a criminal conviction can conclusively refute the "lack of probable cause" element of malicious prosecution in a subsequent tort action. *Hanson*, 852 P.2d at 556. This "conclusiveness rule," as the dissent dubbed it, is an evidentiary presumption of state tort law, not a matter of preclusion doctrine. *Id.* at 565 (Utter, J., dissenting). The court discussed collateral estoppel only to reach the narrow holding that the plaintiff could not establish an exception to the conclusiveness rule under the particular facts of his case. *Id.* at 564. Defendants fail to recognize that these are distinct holdings, instead lumping them all together under the banner of collateral estoppel. *See, e.g.*, Dkt. 29 at 9 ("The Washington Supreme Court affirmed dismissal of the malicious prosecution claims on collateral estoppel grounds on the basis that probable cause is a complete bar.").

Understood correctly, *Hanson* does not broadly hold that a criminal conviction or a determination of probable cause can defeat a Plaintiff's Section 1983 claims; rather, it is a case about presumptions in state-law malicious prosecution actions. This distinction is significant because Plaintiff's federal claims are distinct from any state-law tort claims. Contrary to the County's mischaracterization, Plaintiff has not brought "a § 1983 claim for malicious prosecution." Dkt. 29 at 8. A Section 1983 claim vindicates federal constitutional rights, not common-law or state-law tort claims. 42 U.S.C. § 1983; *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991) ("[S]ection 1983 only imposes liability for violations of rights protected by the Constitution or federal statute.") (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). Instead, Plaintiff's claims are based upon the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. The Washington Supreme Court in

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 19
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

1  *Hanson* did not, and necessarily could not, create a "conclusiveness rule" that would

2  contravene the federal law governing Section 1983 claims.

3      Finally, even if *Hanson* could apply here at all—which it should not—its reach is

4  limited to claims for which there is a question about probable cause, and no others. *See*

5  *Fondren,* 79 Wn. App. at 861 ("Hanson does not bar a claim for which the lack of probable

6  cause is not an element, or for which probable cause is not a complete defense.").

7      Applying the principles of collateral estoppel, rather than Defendants' misguided

8  reading of *Hanson*, Plaintiff should not be precluded from alleging that Defendants caused

9  him to be detained, charged, and prosecuted without probable cause through their deliberate

10  fabrication and suppression of evidence.

11  **C.    Judicial Estoppel Cannot Be Applied to Prevent Plaintiff from Alleging that
          Defendants Engaged in Wrongdoing**

12      Defendants next contend that Plaintiff's claims should be deemed barred under the

13  doctrine of judicial estoppel. Specifically, they argue that one of Plaintiff's arguments in

14  support of a motion filed during his 2019 post-conviction proceedings conflicts with the

15  allegations in the Complaint, and that all of his claims should therefore be dismissed.[1] Dkt.

16  29 at 12–15; Dkt. 31 at 19–20. This argument fails not only because it relies upon factual

17  assertions outside the complaint, but also, assuming those factual issues could be

18  considered, Defendants further mischaracterize Plaintiff's arguments during his post-

19  conviction case and posit a conflict where none exists.

---

[1] For the reasons explained below, judicial estoppel cannot be applied to bar any of Plaintiff's claims in this case. But even if the Court were to conclude that judicial estoppel might be applied, it would at the very most implicate only his claims alleging that Defendants coerced the confession; nothing about Plaintiff's arguments during his post-conviction case even remotely implicates his claims alleging the fabrication of evidence, including the substance of the confession, the Defendants' own police reports, and false informant testimony during the Gochanaur homicide investigation.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 20
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008).[2] Three factors guide the determination of whether judicial estoppel might apply: "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* (quotation marks omitted).

Defendants' judicial-estoppel argument relies on a motion filed by Plaintiff in February 2019 seeking relief from his judgment of conviction. *See* Dkt. 30 at 753–66. It is important to be clear about the nature and purpose of that motion. Under Washington Superior Court Criminal Rule 7.8, a criminal defendant may obtain relief from a judgment only for enumerated reasons, including "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5." Wash. St. Super. Ct. Crim. R. 7.8(b). As a matter of law, therefore, Plaintiff was required to cite newly discovered *evidence* that warranted vacating his conviction. To that end, Plaintiff cited the recent DNA testing excluding him from the mixture of the DNA on the murder weapon and from the finger-nail scrapings on the victim. Dkt. 30 at 766. Plaintiff also cited *scientific* research into adolescent brain development—which has worked a sea change in other areas of the law, as in ending mandatory life sentences for juveniles under *Miller v. Alabama*, 567 U.S. 460 (2012). *See* Dkt. 30 at 761–62. The scientific evidence also shows that juveniles are far more likely to provide false confessions than adults. *Id.* at 762–64. With the benefit of this corpus of scientific research, alongside the DNA evidence, Plaintiff's defense counsel asked that the conviction be vacated.

It is unclear why Defendants believe there is anything about this body of science— which was not presented at Plaintiff's original criminal hearings, and would be relevant to a

---

[2] As with collateral estoppel, Defendants hop-scotch the choice of law issue and then proceed to examine Washington law. Whether judicial estoppel can apply here is a question of federal, not state, law.

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

jury considering what weight, if any, to give to a custodial statement if it were not suppressed—that would be inconsistent with Plaintiff's allegations here that the Defendants violated his constitutional rights, particularly in how they interrogated him. As a matter of law, the Supreme Court has long mandated that juveniles be treated differently than adults when it comes to their treatment in interrogations. In 1948, the Supreme Court reversed a conviction based on an unconstitutional juvenile confession, holding that special care must be taken when interrogating juveniles. *Haley v. Ohio*, 332 U.S. 596, 599 (1948). In so holding, the Court explained that "[a]ge 15 is a tender and difficult age," and a child "cannot be judged by the more exacting standards of maturity" that applies to adults because what "would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens." *Id.* The Court reaffirmed these conclusions decades before Plaintiff was interrogated here. *See, e.g.*, *In re Gault*, 387 U.S. 1 (1967) (holding that, for juveniles, "the greatest care must be taken to assure that [any] admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair"); *Gallegos v. Colorado*, 370 U.S. 49, 54 (1962) (rejecting confession as unconstitutional because a "14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police" and rejecting the proposition that "the youth and immaturity of the petitioner . . . are irrelevant" because doing so would be "in callous disregard of this boy's constitutional rights").

The problem with Defendants' argument is that the two positions they claim are in conflict are perfectly consistent. During his post-conviction case, Plaintiff argued that advancements in the field of adolescent brain development and the scientific understanding of false confessions had advanced. Considering Plaintiff's recorded interrogation in light of developing scientific research showed that his confession was unreliable, and this scientific research constituted material new evidence that likely would have led to a new result in his criminal case. *Id.* at 9–10. In this civil lawsuit, Plaintiff's *legal* claims against the

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Defendants provide that the interrogation of Plaintiff was unlawful under established cases like *Haley*, *Gault*, and *Gallegos*. While it is certainly the case that the social science, coupled with the new DNA evidence, may bear upon the jury's evaluation of the evidence in this case, there is no inconsistency in arguing that the Defendants violated Plaintiff's constitutional rights during an unlawful overnight interrogation, leading to an involuntary inculpatory statement, while also maintaining that new social science sheds light on how someone might confess to a crime they did not commit.[3]

Moreover, Plaintiff's focus in this case is much broader than the focus of the post-conviction motion. Whereas the post-conviction motion focused on just one aspect of the interrogation (the recorded portion) that supported post-conviction relief in conjunction with new research, his allegations in this case place that aspect of his interrogation in the broader context of Defendants' misconduct, including the deliberate coercion and fabrication that occurred before the Defendants started recording the interrogation. These additional allegations were not part of Plaintiff's post-conviction motion because they did not constitute a basis for relief under the statute, but they in no way conflict with his allegations of deliberate misconduct in this case. Indeed, that is why both Plaintiff's Complaint and his post-conviction motion allege that the Police Officer Defendants used

---

[3] Indeed, in many cases like this one plaintiffs offer an expert on the phenomenon of false confessions utilizing the social science cited in the post-conviction motion exactly because the notion that someone might falsely confess to a serious crime (like murder) they did not commit absent something akin to torture is highly-counterintuitive. *Crowe v. San Diego*, 608 F.3d 406, 431-32 (9th Cir. 2010) (reversing grant of summary judgment in juvenile involuntary confession suit by pointing to evidence, among other things, of an expert in the field of false confessions); *Lumbers v. Hornbeak*, 605 F.3d 754, 760 (9th Cir. 2010) (Hawkins, J., concurring) (explaining it is "hard to image anything more difficult to explain to a lay jury" than the notion that someone would confess to a crime that they did not commit, making such testimony critical because the science shows that "it turns out that they sometimes do"); *United States v. Hall*, 93 F. 3d 1337 (7th Cir. 1996) (similar); *Caine v. Burge*, 2013 WL 1966381, at *2-*3 (N.D. Ill. May 10, 2013) (denying *Daubert* motion to false confessions experts because the testimony is reliable and because the phenomenon is highly counter-intuitive). In other words, in this very case Plaintiff will likely contend this same social science evidence is relevant while, simultaneously recognizing that the question of the Defendants legal liability will depend on the constitutional law. There is nothing inconsistent about these two things.

techniques (like "the Reid technique") that are known to produce false confessions when used against juveniles. Compl., Dkt. 1 ¶¶59–66 (alleging, inter alia, the use of "aggressive confrontation, false evidence ploys, and minimization themes"). If these allegations were in "direct conflict" as Defendants claim, they would not appear together in the Complaint.

Defendants, unable to coherently articulate any direct conflict between Plaintiff's actual arguments during his post-conviction case and the ones in his Complaint, resort to blatantly mischaracterizing the record. Defendant King County, for example, claims that "[i]n the criminal court [Plaintiff] painted a picture where police were well intentioned but he did not realize their tactics would tend to result in false confessions." Dkt. 29 at 14. This, of course, is fiction; Plaintiff's prior attorneys did not suggest (let alone affirmatively argue) that the police were well intentioned; they challenged the custodial statement as unlawful. For their part, the City of Bothell Defendants levy the baseless accusation that Plaintiff has engaged in "clear manipulation of the judiciary." Dkt. 31 at 19. This statement is absolutely unfounded and untrue. Plaintiff's post-conviction attorney alerted the court to new scientific evidence illustrating the murder conviction should be vacated because that evidence cast doubt on the evidence submitted at trial. Nothing in that motion ever claimed that what the police did was *lawful*.

Ultimately, Defendants' argument for judicial estoppel rests on their baseless and self-serving paraphrase of records they contend should be subject to judicial notice. Even if Defendants' description of Plaintiff's post-conviction motion were reasonable—which, for the reasons explained above, it is not—their judicial-estoppel argument cannot support dismissal because the post-conviction brief would be "subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Khoja*, 899 F.3d at 1000. Rule 12 and the principles of judicial notice do not permit dismissal on this basis.

**D.   *Heck* Does Not Bar Plaintiff's Claims Because The Complaint Does Mention, Let Alone Challenge, Not Any Extant Convictions**

Defendants next contend that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), arguing that Plaintiff is seeking to challenge convictions that have not

yet been vacated. Dkt. 29 at 15–16; Dkt. 31 at 19–20. But the Complaint does not attack those convictions, and nothing in the Complaint necessarily suggests their invalidity because they are not mentioned at all. Defendants' argument once again simply disregards the appropriate standard of review and mischaracterizes Plaintiff's claims.

To determine whether *Heck* bars some or all of the claims raised in a Section 1983 suit, courts ask whether the facts, as alleged in the complaint itself, necessarily imply the invalidity of an extant conviction. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 390-91 (2007); (considering the "theory of the complaint"); *Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997) (evaluating the allegations of the complaint to determine whether the due process claim therein fell within *Heck*); *Muhammad v. Close*, 540 U.S. 749, 752-53 (2004) (per curiam) (examining whether the plaintiff's complaint "challenge[d] his conviction"); *Giblin v. Bloomfield*, No. C19-5480 BHS-TLF, 2020 WL 4808654, at *3 (W.D. Wash. July 15, 2020) ("The factual allegations in the complaint indicate that plaintiff's claims are barred by the Heck Doctrine."). In this way, the Plaintiff is the "master of his ground" as to the scope of the challenges made in a suit. *Gilbert v. Cook*, 512 F.3d 899, 901-02 (7th Cir. 2008); *see also McCann v. Neilsen,* 466 F.3d 619, 622 (7th Cir. 2006) ("The question for us, then, is not whether [the plaintiff] could have drafted a complaint that steers clear of *Heck* (he could have), but whether he did."). *Heck* bars claims under Section 1983 only if the allegations in the complaint  would "'necessarily imply' or 'demonstrate' the invalidity of [an] earlier conviction or sentence." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (quoting *Heck*, 512 U.S. at 487). But where the plaintiff's action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487.

As with their argument for judicial estoppel, Defendants' argument contrives a conflict with no basis in Plaintiff's allegations. The Complaint does not allege Simmers was wrongfully convicted for any crime other the Gochanaur murder. The complaint does not even mention the convictions for the unrelated property crimes at all. Those claims are

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 25
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

simply not part of this case, and nothing about Plaintiff's challenge to the coerced confession to the Gochanaur murder necessarily implies that these other, separate convictions are somehow invalid.

Defendants' arguments roam very far afield from testing the sufficiency of the Complaint, and they should be rejected. But even if the "facts" Defendants seek to introduce to this case, like the fact that the property crime convictions resulted from guilty pleas, there would still be no *Heck* bar because the convictions at issue were attained through plea agreements. *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011) (holding that *Heck* did not apply to claims based upon nolo contendere plea); *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) (holding that verdicts resulting from pleas of guilty and nolo contendere did not implicate *Heck*).

At most, the relationship between the extent convictions and vacated murder conviction will be issues for damages discovery, and possibly a stipulation or jury instruction at trial. However, because the Complaint does not even mention the property-crime convictions, *Heck* does not bar Plaintiff's claims.

**E.    All of Plaintiff's Claims Are Timely**

Defendants contend that certain of Plaintiff's claims are barred by the statute of limitations. "Ordinarily[,] affirmative defenses may not be raised by motion to dismiss." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Granting a motion to dismiss based upon an affirmative defense is "rare because a plaintiff is not required to say anything about [the facts concerning affirmative defenses] in his complaint" *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007).

Even if this Court were to consider these arguments, Plaintiff's claims are timely and Defendants cannot meet their burden to show any of the claims are time-barred on the face of the pleadings. *See United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("A claim may be dismissed as untimely pursuant

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 26
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

1    to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the

2    face of the complaint.").

3        *1. The federal-law claims are timely*

4        Plaintiff's claims challenging his wrongful conviction for the Gochanaur murder

5    accrued when his conviction was vacated in 2019 and the charges against him were

6    dropped. *Heck*, 512 U.S. at 489–90; *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019). In

7    Section 1983 cases, the statute of limitations is determined with reference to the state

8    statute of limitations for personal-injury actions, *Butler v. Nat'l Comm. Renaissance of

9    Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014), which in this case is three years, *Deggs v.

10   Asbestos Corp.*, 354 P.3d 1, 3 (Wash. Ct. App. 2015). Federal courts in Section 1983 cases

11   also apply "the forum state's law regarding tolling, including equitable tolling, except to the

12   extent any of these laws is inconsistent with federal law." *Butler*, 766 F.3d at 1198.

13       Plaintiff timely filed this suit in January 2021, less than two years after his claims

14   accrued. Dkt. 1. Defendants do not dispute that Plaintiff's federal claims are timely in

15   general, although they argue that one aspect of one of his claims is time-barred.

16   Specifically, they contend that Plaintiff's Fourth Amendment claim is untimely "to the

17   extent it is based on an allegedly false arrest/imprisonment prior to criminal charges being

18   filed." Dkt. 29 at 17; Dkt. 31 at 21. But Plaintiff has not brought a Fourth Amendment

19   claim specifically challenging his detention before the onset of legal process. And a motion

20   for judgment on the pleadings does not authorize dismissal of a particular legal theory or a

21   portion of a cause of action. *See Huerta v. CSI Elec. Contractors, Inc.*, No. 18-CV-06761-

22   BLF, 2021 WL 735488, at *2 (N.D. Cal. Feb. 25, 2021). Plaintiff's Fourth Amendment

23   claims are timely in general, and the fact that he was also detained for a period of time

24   before the onset of legal process does not constitute a basis for dismissing any of Plaintiff's

25   claims.[4]

26

27   _____

[4] It is also contrary to the spirit of the meet-and-confer requirements for Defendants to have
made these arguments when, during that meeting, Plaintiff's counsel made clear that his

2. *Defendants cannot show that the state-law claims are untimely on the face of the pleadings*

Defendants also argue that Plaintiff's claims under Washington state law are untimely.[5] These arguments fail for two reasons. First, Washington has incorporated the *Heck* doctrine, under which Plaintiff's claims are undisputedly timely. Second, even if that were not the case, in order to obtain a statute-of-limitations dismissal Defendants are required to show that the Complaint itself establishes this affirmative defense; but factual disputes, including facts beyond those alleged in the Complaint, are necessary to determine when Plaintiff's state-law claims accrued and whether the limitations period was tolled. *Air Control Techs.*, 720 F.3d at 1178; *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (noting that parties are "not required to plead on the subject of an anticipated affirmative defense.").

First, Washington courts have imported the *Heck* doctrine into state law. For example, *Flynn v. Pierce County*, No. 53703-6-II, 2021 WL 870616, at *4 (Wash. Ct. App. Mar. 9, 2021), recently applied *Heck* to a civil suit alleging a wrongful conviction (due to poor legal counsel rather than police misconduct), and held the plaintiff "could not have brought this action until he obtained post-conviction relief from his sentence because he was not able to litigate the validity of his sentence in a civil tort claim" until after that sentence was overturned. *See id.* ("Flynn could not prove a claim for legal malpractice in a criminal case predicated on an allegation that his counsel failed to challenge an incorrect offender score calculation while still serving an ostensibly valid sentence based on that score." (citing *Heck*, 512 U.S. at 486–87).

Second, Washington embraces the discovery rule, "under which the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should

---

Fourth Amendment claim does not include the pre-process detention that is covered by *Wallace v. Kato*, 549 U.S. 384, 391 (2007), and not *Heck* and *McDonough*.

[5] Plaintiff has brought state-law claims for malicious prosecution, outrage, civil conspiracy, respondeat superior, negligence, and indemnification. Dkt. 1 ¶¶182–210.

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

discover, the elements of the cause of action." *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 428 (Wash. 2006) (en banc). The discovery rule generally applies if (1) "the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action"; or (2) "where the nature of the plaintiff's injury makes it extremely difficult, if not impossible, for the plaintiff to learn the factual elements of the cause of action within the specified limitation period." *Crisman v. Crisman*, 931 P.2d 163, 166 (Wash. Ct. App. 1997). Plaintiff alleges both that the Defendants fraudulently concealed their misconduct and that he was incarcerated for 23 years as a result, which support a reasonable inference that the discovery rule should apply. Conversely, Plaintiff's Complaint contains no allegations about when he discovered the extent of the Defendants' misconduct or reasonably should have discovered the elements of his causes of action. Nor was Plaintiff required to make such allegations in anticipation of a possible affirmative defense. *McGee*, 993 F.2d at 187.

Finally, Washington recognizes the doctrine of equitable tolling "when justice requires." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998) (en banc); *Gonzalez v. Dammeier*, No. C18-5895-RJB-TLF, 2019 WL 2176833, at *4 (Apr. 4, 2019) (report and recommendation of Fricke, M.J.). Assuming *arguendo* there were a question about timeliness, Plaintiff's claims might be equitably tolled, for example, because he alleges "deception" by the Defendants. *See In re Fowler*, 479 P.3d 1164, 1169 (Wash. 2021). For the purposes of Defendants' present motions, however, what matters is not whether Plaintiff has pleaded the timeliness of his claims (or his entitlement to equitable tolling), but whether the allegations in the Complaint establish that his claims *cannot* be timely (or equitably tolled). He has not done so, and dismissal is therefore inappropriate.

Defendants rely on *Gausvik v. Abbey*, 107 P.3d 98 (Wash. Ct. App. 2005), and *Rodriguez Hidalgo v. Ricardo Perez*, 128 F. App'x 577 (9th Cir. 2005), to argue that Plaintiff's claims are untimely under Washington law. Critically, however, both of these cases concerned appeals from the grant of summary judgment, meaning that the courts

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

1    could consider evidence beyond the face of the pleadings. The same is not true here.

2    Nothing in Plaintiff's Complaint establishes that his state-law claims are untimely given the

3    existence of the discovery rule and the doctrine of equitable tolling under Washington law,

4    and Defendants' statute of limitations argument is therefore premature.

### F. Defendants' Standing Arguments Are Irrelevant Because Plaintiff Is Not Bringing Claims for Violations of Anyone Else's Constitutional Rights

6        Defendants contend that Plaintiff lacks Article III standing to bring claims on behalf

7    of Jon Wyatt, the other juvenile with whom he was arrested. Dkt. 29 at 18–19; Dkt. 31 at

8    21–22. This argument is easily dispensed with: Plaintiff is not bringing any such claims.

9        The allegations concerning the Defendants' treatment of Wyatt, of course, are

10   relevant to Plaintiff's *own* claims in myriad ways. The Ninth Circuit has held that are at

11   least three ways to prove a fabrication claim: (1) directly, by pointing to straightforward

12   evidence of fabrication; (2) circumstantially, by pointing to evidence that the defendants

13   generated false evidence despite the fact they knew or should have known Plaintiff was

14   innocent; or (3) circumstantially, by pointing to the use of abusive or coercive techniques

15   officers knew or should have known would yield false information. *Spencer v. Peters*, 857

16   F.3d 789, 793 (9th Cir. 2017); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101,

17   1111 (9th Cir. 2010); *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en

18   banc)). Circumstantial or indirect evidence of fabrication relates primarily to third-party

19   evidence—for example, where a plaintiff contends that an eyewitness was pressured into

20   falsely identifying the plaintiff or, as in *Devereaux*, the police were questioning third parties

21   in a manner that would result in false accusations. *Devereaux*, 263 F.3d at 1077. Plaintiff's

22   allegations concerning Wyatt fall squarely within *Deveraux*, and it borders on frivolous to

23   suggest otherwise.

24       In addition to being a part of Plaintiff's fabrication claim, the Police Officer

25   Defendants' mistreatment of Wyatt illustrates their course of conduct during the Gochanaur

26   homicide investigation: provides necessary context for their coercive interrogation of

27   Plaintiff; shows that Defendants suppressed exculpatory evidence pertaining to their

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

interactions with Wyatt, which then affected Plaintiff's criminal case; constitutes an affirmative act in furtherance of the conspiracy to deprive Plaintiff of his constitutional rights; constitutes evidence that will impeach Defendants' anticipated testimony about the course of the criminal investigation; and demonstrates the lack of appropriate policies, procedures, discipline, supervision, and oversight within King County and the City of Bothell regarding the interrogation of juvenile suspects. The allegations relating to Wyatt are therefore directly relevant to Plaintiff's claims that are personal to him, Defendants' argument about Article III standing is meritless.

**G.    Plaintiff Has Stated Claims Under *Monell* Against King County and the City of Bothell**

Defendants contend that Plaintiff's allegations against King County and the City of Bothell are insufficient to state a claim for municipal liability. Dkt. 29 at 19–21, Dkt. 31 at 14–16. But Plaintiff has set forth detailed factual allegations concerning the Municipal Defendants' failure to train, supervise, or discipline their officers; their failure to enact appropriate policies governing, inter alia, the conduct of juvenile interrogations, despite the patently obvious necessity of such policies; and the ratification and acceptance of the Police Officer Defendants' misconduct by individuals with final policymaking authority. Compl., Dkt. 1 ¶¶12, 15–16, 20, 32, 101, 106–110, 166–181. These allegations more than plausibly state a claim for relief.

Under current law, municipalities cannot be liable under a *respondeat superior* theory, but they may be liable where employees are "acting pursuant to an expressly adopted official policy," or pursuant to a "longstanding practice or custom." *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). A "policy" is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). Policies, practices, and customs can involve either affirmative acts or a refusal to act, *i.e.*, inaction. A policy "of inaction or omission may be based on failure to implement procedural safeguards

to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).

In addition to failing to adopt adequate procedural safeguards, a policy of omission can involve failing to adequately train police officers, where the municipality has "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." *Tsao*, 698 F.3d at 1143. Municipalities are also liable where they ratify the unconstitutional actions of their employees or where an official policymaker has directed the constitutional violation. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 452 (1986) (policymaker's decisions can constitute policy for *Monell*); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) ("[A] local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." (internal quotation marks omitted)).

The Complaint in this case more than adequately pleads municipal liability. Allegations of *Monell* liability regarding a policy, practice, or custom are sufficient at the pleading stage if they: "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 802 (E.D. Cal. 2016); *see also Santor v. Harwell*, No. 1:19-CV-1593 AWI SKO, 2020 WL 5017616, at *9 (E.D. Cal. Aug. 25, 2020). For example, in *Bellinger v. Washington*, No. C16-1237-RAJ, 2017 WL 635785 (W.D. Wash. Feb. 16, 2017) (Jones, J.), the court denied the defendants' motion to dismiss a *Monell* claim by alleging a constitutional violation that resulted from a failure to enact policies on a subject where the need for training was "abundantly clear." *Id.* at *2.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 32
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Plaintiff's *Monell* allegations reach well beyond what is required to state a claim under Rule 12 and the law in the Ninth Circuit. First, he has identified particular policies, practices, and customs of the City of Bothell and King County, including the following:

- the failure to promulgate proper or adequate policies governing the conduct of interrogations; the interrogation of juvenile suspects in particular; the writing of police reports and taking of investigative notes; recording and documentation of confessions or other inculpatory statements; the disclosure of exculpatory information to prosecutors and defense attorneys; obtaining statements and testimony from witnesses; and the use of jailhouse informants and/or incentivized informants, Compl., Dkt. 1 ¶¶169, 171;

- the failure to adequately train, discipline, and supervise law enforcement officers who engaged in misconduct, *id.* ¶¶102, 170;

- notice of widespread customs and practices whereby law enforcement officers conducted abusive and coercive interrogations, failed to administer *Miranda* warnings, failed to record investigative information in police reports, did not maintain proper investigative files, did not disclose investigative materials to prosecutors and criminal defendants, falsified statements in testimony of witnesses (including jailhouse informants), fabricated evidence implicating innocent individuals, and conduct profoundly flawed investigations, *id.* ¶¶174–175.

Second, Plaintiff has further alleged that these policies, practices, and customs were allowed to flourish despite the fact that they created an obvious risk of causing constitutional violations and inflicting harm. *Id.* ¶¶171, 178. Third, he has alleged that these policies were the moving force behind his constitutional violations because they encouraged or failed to prevent the exact type of misconduct to which he was subjected during the Gochanaur homicide investigation. *Id.* ¶¶177, 180. And finally, he has alleged deliberate indifference on the part of King County and the City of Bothell on the basis that

the need to implement appropriate policies in these areas was obvious. *Id.* ¶¶103–110; 171; 177–178.

In addition to Plaintiff's allegations concerning the policies, customs, and practices of King County and the City of Bothell, he has alleged that policymakers for the municipalities ratified the misconduct of the Police Officer Defendants. When a municipal government, acting through its policymakers, ratifies the unconstitutional conduct of a law enforcement officer, the municipality becomes liable under *Monell*. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Plaintiff has alleged that final policymakers for the City of Bothell and King County (Defendants Ericks and Beard, respectively) were fully aware of the Police Officer Defendants' misconduct and affirmatively ratified it by consciously and affirmatively choosing to proceed with Plaintiff's wrongful detention, prosecution, and conviction. Compl., Dkt. 1 ¶¶12, 16, 168, 176. These policymakers, along with any supervisors with delegated policymaking authority, also reviewed, signed off on, and ultimately approved written reports of the Police Officer Defendants' obviously flawed investigative tactics. *Id.* ¶101. This ratification was the but-for and proximate cause of Plaintiff's wrongful conviction. *Id.* ¶¶176, 180.

Defendant City of Bothell posits only a half-hearted argument that Plaintiff's extensive *Monell* allegations are insufficient because the Complaint "does not state specific facts regarding what official custom, pattern or policy permitted deliberate indifference to, or violated, Simmers' constitutional rights." Dkt. 31 at 15–16. To the contrary, Plaintiff's allegations on that point are highly detailed. Compl., Dkt. 1 ¶¶169, 171, 174–175. By failing to adopt adequate policies that it knew were necessary to avoid constitutional violations, including, for example, policies regulating juvenile interrogations, the City directly caused Plaintiff to be coercively interrogated and wrongly convicted. Moreover, the City does not dispute Plaintiff's ratification allegations, which independently state a claim for municipal liability.

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 34
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

1    Defendant King County contends that Plaintiff has not alleged ratification because

2  Defendant Beard was not a policymaker for the County. Dkt. 29 at 20. This is a factual

3  disagreement with Plaintiff's allegations that cannot be considered in a Rule 12 motion.

4  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 986–87 (9th Cir. 2002)

5  (overturning the district court's grant of summary judgment where the question of whether

6  any of the defendants "had been delegated final policymaking authority over the decisions

7  at issue or whether those decisions were ratified by officials with final policymaking

8  authority . . . may turn on questions of fact."). Thus, even if the County were entitled to

9  make an extrinsic allegation that Defendant Beard was not a final policymaker in its Rule

10  12 motion, which it is not, a factual dispute about whether Beard acted with delegated

11  policymaking authority precludes dismissal at this stage. Finally, the County's cursory

12  argument that the *Monell* claims lack adequate factual content, Dkt. 29 at 20–21, is plainly

13  incorrect in light of Plaintiff's detailed allegations discussed above.

14    Plaintiff's detailed *Monell* allegations state a plausible claim against the Municipal

15  Defendants, and the motions to dismiss those claims should be denied.

16  **H.    Plaintiff Has Stated Claims Against Defendants Hopkins, Miner, Ericks, and Schlaegel**

17    The Individual Bothell Defendants—that is, Defendants Hopkins, Miner, Ericks,

18  and Schlaegel—contend that the allegations against them are insufficient to state a claim for

19  relief. But Plaintiff has alleged specific factual content that supports a reasonable inference

20  that each of these Defendants is liable for the misconduct alleged, satisfying Rule 8 and

21  Rule 12.

22    The Federal Rules permit notice pleading and require only "a short and plain

23  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

24  The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556

25  U.S. 662, 678 (2009). Instead, the question at this stage is whether the complaint

26  "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is

27  plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) (internal

OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 35
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

quotation marks omitted). To the extent Defendants assert that Plaintiff has failed to allege what particular misconduct each individual Defendant committed, their premise is incorrect. Under Ninth Circuit law, the same allegation explicitly directed at a group of defendants is sufficient to plead personal involvement after *Iqbal*, even if each defendant comprising the group is not named individually in each separate paragraph. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (holding under Rule 9(b) that "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct"); *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681 (9th Cir. 2018) ("If a group pleading against similarly situated defendants can satisfy Rule 9(b), then it can also satisfy the lesser notice pleading standard of Rule 8.").

For that reason, numerous district courts have denied motions to dismiss asserting the same "group pleading" argument that Defendants advance here. *Tivoli LLC v. Sankey*, No. SA CV 14-1285-DOC, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015) ("Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them."); *see also Munning v. Gap, Inc.*, No. 16-cv-3804-TEH, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) (holding that because the defendants were all subsidiaries of the same parent corporation, who engaged jointly in a single course of alleged misconduct, and who were represented by the same counsel, "frustration of notice of the claims to each defendant is unlikely"); *DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-63845-JSW, 2018 WL 10247483, at *15 (N.D. Cal. Sept. 24, 2018) ("[S]o-called 'group pleading' is not fatal as long as the complaint gives defendants fair notice of the claims against them.").

### 1. *Claims against Hopkins*

Defendant Hopkins centrally participated in the deliberate coercion of Plaintiff, the fabrication of evidence against him, and the suppression of exculpatory evidence that would have proved his innocence of the Gochanaur murder. Hopkins, along with Defendant Rusk,

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 36
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

led the coercive interrogation and knowingly fabricated the false confession that Defendants attributed to Plaintiff. Compl., Dkt. 1 ¶¶61–99; 102. Hopkins' extensive misconduct included violating Plaintiff's *Miranda* rights, ignoring Plaintiff's invocation of his right to silence, coercing and pressuring a false statement despite knowing that Plaintiff was innocent, fabricating police reports regarding his conduct during the investigation, and failing to disclose exculpatory information, including facts that would have exonerated Plaintiff. *Id.*

Defendants do not attempt to argue that these allegations fail to state a claim against Hopkins, except to reference their arguments concerning other supposed barriers to Plaintiff's suit. Dkt. 31 at 14 (referring to collateral and judicial estoppel and the *Heck* bar). These legal arguments lack merit for the reasons previously explained, and Plaintiff's factual allegations against Hopkins easily state a claim for relief.

### 2.  Claims against Miner

Plaintiff alleges that Defendant Miner participated in the misconduct that produced his wrongful conviction. As an officer with the Bothell Police Department investigating the Gochanaur murder, Miner helped make the decision to pin the crime on Plaintiff rather than conduct a legitimate homicide investigation. Compl., Dkt 1 ¶¶22, 27, 29. She was aware of Plaintiff's unlawful interrogation and the steps taken to fabricate the confession that was attributed to him, but did nothing to intervene to stop the violations of Plaintiff's constitutional rights. *Id.* ¶¶48, 65.

Defendants argue that Miner's involvement was too remote, citing cases requiring a police officer's "integral participation" in the alleged misconduct. Dkt. 29 at 12. But far from excusing Miner from liability, the integral participation doctrine demonstrates that Plaintiff has sufficiently alleged that she is liable for all of the misconduct alleged. "[D]efendants can be liable for 'integral participation' even if the actions of each defendant do not rise to the level of a constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018). In *Keates*, the Ninth Circuit reversed the dismissal of claims against

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 37
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

defendants with only limited involvement in the alleged misconduct. *Id.* at 1242. The court held that those defendants were integral participants because they "participated in a meaningful way in a collective decision" to take an action that "was central to the alleged constitutional violation." *Id.* The allegations against Miner in this case are highly similar to those in *Keates*: she participated in the decision to frame Plaintiff for murder by conducting unlawful interrogations, and stood by while other Defendants carried out that plan. Dismissal of the claims against Defendant Miner is therefore unwarranted.

### 3. Claims against Ericks

Defendant Ericks, who was Chief of the Bothell Police Department during the Gochanaur homicide investigation, affirmatively ratified the misconduct of the other Police Officer Defendants in his capacity as a policymaker for the City of Bothell. Ericks was not only aware of the wrongdoing perpetrated by the Police Officer Defendants, but made an affirmative and conscious choice to ratify that wrongdoing by proceeding with Plaintiff's detention and prosecution and approving of the Defendants' reports, notes, actions, and investigative methods despite their obvious flaws. Compl., Dkt. 1 ¶¶12, 32, 101, 176.

The City does not dispute that Ericks was a final policymaker responsible for overseeing the Bothell Police Department, but contends that Plaintiff's allegations regarding his involvement in the violations of Plaintiff's constitutional rights are inadequate. At this stage, however, Plaintiff has alleged all the factual content that is that is necessary to state a claim against Ericks by alleging that he knew about the misconduct and made an affirmative, conscious choice to ratify it by approving of the Police Officer Defendants' investigative work (for instance, by signing off on their fabricated reports) and proceeding with Plaintiff's criminal case. These allegations support a reasonable inference that Ericks is liable for ratifying the misconduct of the Police Officer Defendants.

### 4. Claims against Schlaegel

Plaintiff alleges that Defendant Schlaegel directly participated in the unconstitutional misconduct that caused his wrongful conviction. For example, Schlaegel

knowing authored a false police report contending that Plaintiff was "sociopathic" and "claims gang membership" in order to prolong Plaintiff's incarceration. *Id.* ¶84. Schlaegel also actively conspired to fabricate false statements from an informant, then suppressed exculpatory evidence relating to that informant. *Id.* ¶94.

As with Defendant Hopkins, Defendants' arguments concerning the dismissal of the claims against Schlaegel simply ignore these allegations, focusing instead on other putative legal barriers to Plaintiffs' claims. Dkt. 31 at 13–14. These arguments are unavailing for the reasons previously explained, and the claims against Schlaegel should not be dismissed.

**I.      Plaintiff Has Stated Claims Against Defendants McSwain, Baxter, and Raftis**

The Individual King County Defendants argue that the allegations against them do not state a claim for relief.[6] Dkt. 32 at 2–4. As with the allegations against the Bothell Defendants, however, Plaintiff has alleged sufficient factual detail to withstand dismissal.

Plaintiff alleges that Defendants McSwain, Baxter, and Raftis, as Sheriff's Deputies employed by King County, were directly involved in the Gochanaur homicide investigation and conspired to frame Plaintiff for the crime. *Id.* ¶31. As with the claims against Defendant Miner, Plaintiff has alleged that these Defendants were integral participants in the violations of Plaintiff's constitutional rights because they participated in the decision to fabricate a false confession. *Id.*; *see also Keates*, 883 F.3d at 1242. At this stage of the case, these factual allegations to support a reasonable inference that the Individual King County Defendants are liable for violation Plaintiff's rights.

**J.      The Individual King County Defendants Are Not Entitled to Qualified Immunity**

Finally, Defendants McSwain, Baxter, and Raftis venture an underdeveloped argument that they are entitled to qualified immunity. At this very early stage of the case, to prevail on this contention, Defendants must demonstrate that qualified immunity applies

---

[6] Defendant Beards and Rusk, who was were employed by the King County Sheriff's Office at the relevant time, are deceased. Plaintiff's motion to substitute their estates as Defendants in this action remains pending. *See* Dkt. 25.

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

"based on the complaint itself." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016); see *also Moore v. Gerstein*, 107 F.3d 16 (9th Cir. 1996) ("[L]ike any affirmative defense, qualified immunity may be upheld on a 12(b)(6) motion only when it is established on the face of the complaint.").

Qualified immunity analysis proceeds in two steps: the Court must first determine whether Plaintiff has alleged that Defendants violated his constitutional rights, then assess whether those rights were clearly established at the time of the violation. *See Costanich v. Dep't of Social & Health Servs.*, 627 F.3d 1101, 1109 (9th Cir. 2010). For the reasons explained above in sections H and I, Plaintiff has alleged that Defendants violated his constitutional rights. In their qualified immunity argument, Defendants attempt to contest only the second element: whether the alleged misconduct violated rights that were clearly established at the time.

Strikingly, Defendants do not cite any case law concerning coerced confessions, fabrication of evidence, or suppression of exculpatory evidence. Nor do they respond to any of Plaintiff's allegations that they engaged in those activities during the Gochanaur homicide investigation. Compl., Dkt. 1 ¶¶38–98. It was clearly established long before the 1995 Gochanaur homicide investigation that Defendants' coercion, fabrication, and suppression violated the U.S. Constitution. *See In re Gault*, 387 U.S. 1, 55 (1967) ("We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults."); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."); *Cooper v. Dupnik*, 963 F.2d 1220, 1251 (9th Cir. 1992) ("It is clearly established law that the Fifth and Fourteenth Amendments forbid the use of compulsion and coercion by law enforcement in pursuit of a confession."), abrogated on other grounds by *Chavez v. Martinez*, 538 U.S. 760 (2003).

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 40
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Rather than dealing with any of this, Defendants instead rest their qualified immunity argument on a single detail of Plaintiff's post-conviction proceedings. Specifically, they cite Plaintiff's contention that, in 1995, standard psychological interrogation tactics were not widely understood to produce false confessions in juveniles. Dkt. 32 at 5–6. According to Defendants, this contention, standing alone, shows that clearly established law did not render their actions unconstitutional.

This argument fails for at least three independent reasons. First, at a purely procedural level, "judicial notice" does not allow Defendants to cite a prior court record as evidence of the truth of an assertion therein. *Lee*, 250 F.3d at 680; *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015). Defendants rely on this extrinsic evidence to show not only that a particular argument was made but that a factual contention underlying that argument is empirically true. The doctrine of judicial notice does not allow that, and Defendants' citation of this extrinsic evidence is improper in a Rule 12 motion.

Second, Plaintiff's allegations in this case describe willful misconduct, including coercion, fabrication, and suppression, that is additional to the arguments presented in Plaintiff's post-conviction case. As explained above in section C, Plaintiff's allegations of wrongdoing in this case are in no way inconsistent with the contentions made during his post-conviction case, but they allege further, deliberate misconduct that was not understood to be acceptable at the time of the Gochanaur homicide investigation.

Third, the fact that a particular practice was commonplace in a given police department does not mean that it did not violate clearly established law. Otherwise, if every police department in the country adopted an unconstitutional practice, the officers would nonetheless be immune for violating the constitution; hat is simply not the case. The qualified immunity analysis does not depend on whether the Defendants' conduct was consistent with a police department's policies (which themselves may be unlawful), for example, but instead turns on the "objective legal reasonableness" of the official's acts,

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 41
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

"assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017). For the reasons noted above, using coercive tactics against a juvenile suspect during an interrogation, fabricating evidence, and suppressing exculpatory evidence violated law that was clearly established under Supreme Court and Ninth Circuit precedent for many years before the Gochanaur homicide investigation. Defendants' reliance on Plaintiff's post-conviction brief thus carries no weight, and they are not entitled to qualified immunity.

### Conclusion

Plaintiff's Complaint set forth detailed factual allegations that put the Defendants on notice of his claims against them and plausibly allege liability. Defendants attempt to contradict or mischaracterize these allegations, ignoring the evidentiary standards that govern their motions under Rule 12(c). The Court reject these invitations to resolve disputed facts at the pleading stage, and Plaintiff respectfully requests that the Court deny the motions in their entirety.

DATED:  April 12, 2021                Respectfully submitted,


**IAN SIMMERS**

By: */s/ John Hazinski*

David B. Owens, WSBA #53856
LOEVY & LOEVY
100 S. King Street, Suite 100
Seattle, WA 98104
Phone:  312-243-5900
Email:  david@loevy.com

John Hazinski*
LOEVY & LOEVY
311 N. Aberdeen St., 3FL
Chicago, IL 60607
Email: hazinski@loevy.com
* *Admitted Pro Hac Vice*

OMINBUS RESPONSE IN OPPOSITION TO MOTIONS
FOR JUDGMENT ON THE PLEADINGS - 42
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900