1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11
12
13
14
15

IAN SIMMERS,

             Plaintiff,

    v.

KING COUNTY *et al.*,

             Defendants.

CASE NO. 2:21-cv-00100-RAJ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: **July 30, 2021**

16
17
18
19
20

     This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b)(1)(A)–(B) and Local Magistrate Judge Rules 1, 3, and 4. Dkt. 26. Before the Court are motions for judgment on the pleadings filed by defendants King County (Dkt. 29); City of Bothell, Edward J. Hopkins, Rebecca Miner, and David Schlaegel (Dkt. 31); and Ken Baxter, John McSwain, and Pat Raftus. Dkt. 32.

21
22
23
24

     In 1995, when he was 16 years old, plaintiff was arrested and later convicted of committing first-degree murder and vehicle prowling. The State secured plaintiff's conviction

1    by relying on evidence including plaintiff's confession and a jailhouse informant's testimony that

2    plaintiff had admitted his guilt to the informant.

3         Nearly 23 years later, upon motions from plaintiff discussing newly discovered evidence

4    demonstrating the unreliability of juvenile confessions and from the State, plaintiff was released

5    from prison and the charges against him were dismissed.  Although the murder charge was

6    vacated, plaintiff had also pled guilty to vehicle prowling and arson charges, which were not

7    vacated.

8         Plaintiff then commenced this civil rights action against the municipalities and individual

9    officers who investigated the murder.  He alleges that the police officer defendants conspired to

10   frame him for the murder despite knowing that he was innocent and, operating under a joint plan,

11   coerced his confession and worked with the jailhouse informant to fabricate the informant's

12   testimony.

13        All defendants who have appeared in this case[1] now seek dismissal of plaintiff's claims.

14   Many of plaintiff's federal claims are barred pursuant to *Heck v. Humphrey*, 512 U.S. 477

15   (1994), because they implicate the validity of plaintiff's arson and vehicle prowling convictions,

16   which have never been vacated or dismissed.  Also, most of plaintiff's state law claims are

17   barred by the Washington State statute of limitations because the causes of action accrued during

18   the time of the events leading to plaintiff's conviction.  And the statute of limitations on those

19   claims began to run at least 24 years before plaintiff filed suit.  Plaintiff's state law claim of

20   malicious prosecution remains because the statute of limitations on that claim did not begin to

21

22

23        [1] Defendants Jackson Beard and Clement Rusk are now deceased.  This Court has denied
     a motion to substitute related to those defendants without prejudice. Dkt. 47.  Presently, the
24   estates of those defendants are not represented and have not appeared in this action.

1   run until the criminal proceedings were terminated in plaintiff's favor in 2019.  However, the

2   balance of defendants' arguments are unpersuasive.

3        The District Court should therefore grant the City and County's motions (Dkts. 29, 31) in

4   part and deny them in part and should deny the individual County officers' motion for judgment

5   on the pleadings.  Dkt. 32.  Claims one and two in plaintiff's complaint (claims under the Fifth

6   and Fourteenth Amendments) and any other claims for damages under federal law seeking

7   damages on the basis that plaintiff's confession was unlawfully procured should be dismissed

8   without prejudice.  All of plaintiff's state law claims except his malicious prosecution claims

9   (and his *respondeat superior* and indemnification claims, to the extent that those claims are

10  based on malicious prosecution) should be dismissed with prejudice, as time barred.

11       If this report and recommendation is adopted, the remaining claims will be claims three

12  through eight in the complaint, except to the extent that plaintiff bases those claims on

13  allegations under federal law for damages on the basis of his confession being wrongfully

14  procured, and with the exception that state law claims of *respondeat superior* and

15  indemnification under state law survive to the extent those claims are based on malicious

16  prosecution.

17                                    **BACKGROUND**

18       According to plaintiff, on March 11, 1995, hikers discovered the body of 35-year-old

19  Rodney Gochanaur near a trail in Bothell, Washington.  Dkt. 1, at 5.  Investigating officers

20  allegedly uncovered multiple suspects but focused on plaintiff, who was then sixteen years old.

21  Police arrested plaintiff and another juvenile a few days later for unrelated property crimes.  Dkt.

22  1, at 1, 5–6.  Plaintiff claims that police decided plaintiff would "take the fall" for the murder

23  (Dkt. 1, at 6), and coerced his confession following a lengthy, uncounseled, and unrecorded

24

1    overnight interrogation.  Dkt. 1, at 8–10.  Based on this confession and other evidence that police

2    allegedly fabricated, including the jailhouse informant's confession, a jury convicted plaintiff of

3    first-degree murder and a court sentenced him to 46 years in prison.  Dkt. 1, at 14.  Plaintiff

4    pleaded guilty to and was convicted of arson and vehicle prowling as well, in separate criminal

5    proceedings.[2]

6          In 2019, plaintiff's first-degree murder conviction, but not his arson and vehicle prowl

7    convictions, was vacated by the trial court.  Dkt. 1, at 2.  Plaintiff was then nearly 40 years old

8    and had spent the prior 23 years of his life incarcerated.  *See* Dkt. 1, at 2.

9          Plaintiff brought suit in this Court in January 2021 for civil rights violations based on the

10   investigation into the Gochanaur murder and plaintiff's arrest and prosecution.  Dkt. 1, at 14.  He

11   names as defendants King County ("the County"); the City of Bothell ("the City"); City police

12   officers or police officials Edward J. Hopkins, David Schlaegel, Rebecca Miner, and Mark

13   Ericks; County police officers John McSwain, Pat Raftus, and Ken Baxter; and various other

14   named and unnamed defendants who have not appeared or joined in the pending motions in this

15   matter.  All defendants other than the County and the City are hereinafter referred to as "police

16   officer defendants."

17         According to plaintiff, the City officers (defendants Schlaegel, Hopkins, Miner, and

18   Ericks) who responded to the scene of the murder subsequently failed to follow up on various

19   leads and evidence and instead, with the County officers, focused on securing plaintiff's

20   prosecution.  *See* Dkt. 1, at 5–6.  Defendants Ericks and Beard allegedly approved of this work.

---

[2] The Court takes judicial notice of plaintiff's guilty plea and convictions related to these crimes, as set forth in greater detail below.

1   Dkt. 1, at 6.

2        Plaintiff alleges that the City and County jointly conducted the investigation.  Dkt. 1, at 6.

3   Defendants Miner, Schlaegel, Hopkins, McSwain, Raftus, Baxter, and Clement Rusk "decided

4   that Plaintiff was going to take the fall for the Gochanaur homicide" and allegedly formed an

5   agreement to obtain plaintiff's conviction.  Dkt. 1, at 6.  First, defendants Hopkins, Schlaegel,

6   Miner, Rusk, and McSwain interrogated Wyatt and plaintiff, coercing Wyatt to falsely implicate

7   plaintiff.  *See* Dkt. 1, at 7.  Then, defendants Hopkins, Schlaegel, Miner, Rusk, and McSwain

8   agreed that they would interrogate plaintiff coercively to obtain a false confession.  Dkt. 1, at 8.

9        In addition, plaintiff alleges that defendants Hopkins, Schlaegel, Miner, Rusk, Baxter,

10   and McSwain fabricated their notes and reports regarding the interrogation (Dkt. 1, at 12; *see*

11   Dkt. 1, at 3, 6) and conspired to convince a jailhouse informant to testify to a false story that

12   plaintiff had confessed the crime to the informant while they were incarcerated together.  Dkt. 1,

13   at 13.  Plaintiff also alleges that "the Defendants" suppressed evidence related to Wyatt's

14   interrogation and coerced confession.  Dkt. 1, at 14.  He claims that supervising officers

15   approved defendants Hopkins, Schlaegel, Miner, Rusk, Baxter, and McSwain's reports, notes,

16   actions, and investigative methods despite their obvious flaws.  Dkt. 1, at 14.

17        As noted, plaintiff's conviction for murder was subsequently vacated and the charges

18   were dismissed after plaintiff and the State both moved for the conviction to be vacated.  *See*

19   Dkt. 1, at 2, 16.  However, plaintiff did not seek to have his vehicle prowling and arson charges

20   vacated, although, as set forth in greater detail below, the trial court relied on facts included in

21   the allegedly coerced confession as a basis for plaintiff's guilty plea to vehicle prowling and

22

23

24

arson.  *See infra*, part II.

Plaintiff brings six general categories of claims:

(1)  Federal claims that individual defendants coerced his confession in violation of the Fifth and Fourteenth Amendments (specifically, his rights to be free from self-incrimination, to counsel, and to due process).  Dkt. 1, at 17–18 (counts 1, 2).

(2)  Federal claims that individual defendants fabricated evidence and withheld exculpatory evidence in violation of the Sixth and Fourteenth Amendments (specifically, his rights to due process and a fair trial).  Dkt. 1, at 19 (count 3).

(3)  State and federal claims that individual defendants caused prosecution and imprisonment of plaintiff without probable cause in violation of the Fourth Amendment and maliciously prosecuted plaintiff under state law.  Dkt. 1, at 20, 25 (counts 4, 8).  In his response to the motions addressed herein, plaintiff clarifies that the Fourth Amendment claim solely pertains to the time plaintiff spent detained after the onset of legal process.  Dkt. 40, at 27.

(4)  Federal claims that individual defendants generally failed to intervene and conspired to deprive him of his constitutional rights.  Dkt. 1, at 21–22 (counts 5–6).

(5)  Federal and state law claims that the County and City are liable under *Monell* and on theories of *respondeat superior* and indemnification.  Dkt 1, at 22–25, 27–28 (counts 7, 11, 13).

(6)  State claims that various defendants' actions constituted the torts of outrage, civil conspiracy, and negligence.  Dkt. 1, at 26–27 (counts 9, 10, 12).

As noted above, the City, the County, and the County Officers have filed motions for judgment on the pleadings under Fed. R. Civ. P. 12(c).  Dkts. 29, 31, 32.  Plaintiff has filed a consolidated response (Dkt. 40), and defendants have filed their replies.  Dkt. 42–44.  The County has also filed approximately 900 pages of documents related to plaintiff's criminal cases.

1   Dkt. 30.

2        The undersigned heard oral argument on the parties' motions on June 3, 2021.  Dkt. 49.

3   The undersigned has also reviewed plaintiff's statement of supplemental authority filed June 4,

4   2021.  Dkt. 50.

5                                **DISCUSSION**

6   **I. Legal Principles**

7        A Rule 12(c) motion for judgment on the pleadings may be granted when "taking all

8   allegations in the pleading as true, the moving party is entitled to judgment as a matter of

9   law."  *McGann v. Ernst & Young*, 102 F. 3d 390, 392 (9th Cir. 1996).  "Analysis

10  under Rule 12(c) is substantially identical to analysis under a Rule 12(b)(6)" motion to

11  dismiss.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotes omitted).

12       Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

13  true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

14  (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if

15  the plaintiff alleges enough facts to draw a reasonable inference that the defendant is

16  liable.  *Iqbal*, 556 U.S. at 678.  A plaintiff need not provide detailed factual allegations but must

17  provide more than mere legal conclusions.  *See Twombly*, 550 U.S. at 555.  However,

18  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

19  statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  When ruling on a Rule 12(b)(6) motion, the

20  Court must accept well-pleaded factual allegations in the complaint as true and construe them in

21  the light most favorable to the non-moving party.  *See Autotel v. Nev. Bell. Tel. Co.*, 697 F.3d

22

23

24

1   846, 850 (9th Cir. 2012).

2       **II. *Heck*-Bar**

3       The County argues that *Heck v. Humphrey* bars claims that plaintiff's "confession was

4   coerced" or that his *Miranda* rights were violated.  *See* Dkt. 29, at 12 (emphasis removed).  The

5   City argues that "[a]ny claim in the Complaint based on or arising out of Simmers' confession to

6   police should be barred[.]"  Dkt. 31, at 20.  The Court agrees.

7       Sweeping language in *Heck v. Humphrey* requires a district court faced with a § 1983 suit

8   to assess "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of

9   his conviction or sentence[.]"  512 U.S. at 487.  If so, "the complaint must be dismissed unless

10  the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.*

11      Related to the parties' arguments about *Heck*, the Court takes judicial notice of various

12  matters pertaining to the validity of plaintiff's underlying convictions.   In general, a court may

13  consider matters that are subject to judicial notice when ruling on a motion to dismiss.  *E.g.*,

14  *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  For instance, the

15  Court may take judicial notice of pleadings and orders filed in related state court cases.

16  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may

17  take judicial notice of court filings and other matters of public record"); *see also Khazali v.*

18  *Berns*, Case No. C16-1022-JLR, 2016 WL 4479915, at *1 n.3 (W.D. Wash. Aug. 24, 2016)

19  (collecting cases).  Nonetheless, it is not appropriate to take judicial notice of disputed facts

20  contained with public records.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir.

21  2018).  "Just because the document itself is susceptible to judicial notice does not mean that

22  every assertion of fact within that document is judicially noticeable for its truth."  *Id.*  Contrary

23  to plaintiff's arguments, there is nothing improper about referring to matters of which the Court

24

has taken judicial notice on a motion to dismiss, so long as the Court confines itself to matters

for which judicial notice is proper.   Nor is the Court persuaded by plaintiff's claim that taking

judicial notice of such matters is "highly prejudicial" at this early stage, where plaintiff was a

party in the criminal matter from which these documents derive.  *See* Dkt. 40, at 11.

Bearing these principles in mind, the Court takes judicial notice that in 1995, plaintiff

entered his *Alford*[3] plea (meaning that he maintained his innocence despite pleading guilty) to

arson and vehicle prowl.  His *Alford* plea referred to a probable cause statement, which itself

referred to plaintiff's confession, to form the factual basis for his plea.  *See* Dkt. 30, at 839

(statement on plea of guilty), 844 (plaintiff's handwritten reference to the probable cause

certification stating that "[t]he Court can review the probable cause certification to find a factual

basis for my plea"), 852–55 (probable cause certification referring to plaintiff's confession after

arrest).

In taking judicial notice of these matters, the Court does not take as true any disputed

facts.  For instance, the Court understands that plaintiff disputed that he committed the arsons,

vehicle prowls, or murder or that he validly confessed to those crimes, and the Court does not

take judicial notice of such contested facts as whether plaintiff did, in fact, commit any crimes or

voluntarily confessed to them.  But there is no reasonable dispute that the factual basis for the

entry of the *Alford* plea included plaintiff's confession.  Washington State law required the trial

court to find a factual basis to enter the *Alford* plea.  *E.g.*, *State v. D.T.M.*, 78 Wn. App. 216, 220

(1995) ("Because the defendant [entering an *Alford* plea] professes innocence, the court must be

particularly careful to establish a factual basis for the plea.  Ordinarily, when a defendant pleads

guilty, the factual basis for the offense is provided at least in part by the defendant's own

---

[3] *North Carolina v. Alford*, 400 U.S. 25 (1970).

1  admissions.  With an *Alford* plea, however, the court must establish an entirely independent

2  factual basis for the guilty plea, a basis which substitutes for an admission of guilt.").

3       The trial court found "a factual basis for the plea" (Dkt. 30, at 845) based on the probable

4  cause statement, which plaintiff directed the court to as the factual basis for his plea.  Dkt. 30, at

5  844.  The probable cause statement, in turn, referred to plaintiff's confession.  Dkt. 30, at 852;

6  *see, e.g.*, Dkt. 30, at 853 ("The defendant confessed to shooting flares off and to starting the fire

7  in the restroom.").  Again, the Court is not taking judicial notice that plaintiff in fact started fires

8  or committed any other crimes—rather the Court is taking notice that the probable cause

9  statement claimed that plaintiff had confessed to these crimes and that the *Alford* plea relied on

10  as much for the factual basis for the convictions.  *Accord Moore v. Houston Police Dep't*, No.

11  CV H-17-2505, 2018 WL 4443140 (S.D. Tex. Aug. 15, 2018) (in a § 1983, taking judicial notice

12  of a plea, even though plaintiff maintained his innocence, as part of analyzing an argument that

13  *Heck* barred a claim in the § 1983), *report and recommendation adopted*, No. CV H-17-2505,

14  2018 WL 4440537 (S.D. Tex. Sept. 17, 2018).

15       At oral argument, plaintiff strongly resisted the Court's taking judicial notice of matters

16  outside the pleadings as a basis to dismiss his claims.   *E.g.*, Recording of June 3, 2021, Oral

17  Argument at 32:33, on file with the Court.  But there is nothing unusual about taking judicial

18  notice of prior convictions on a motion to dismiss. This Court and others regularly look to the

19  facts of other convictions as the basis to analyze whether to dismiss § 1983 claims. *E.g.*, *Tran v.*

20  *Kuehl*, No. 3:16-CV-00707-AC, 2019 WL 1877977, at *4–*5 (D. Or. Jan. 22, 2019) (taking

21  judicial notice of state court opinions affirming certain convictions in order to rule on a motion to

22  dismiss), *report and recommendation adopted as modified*, No. 3:16-CV-00707-AC, 2019 WL

23  1877961 (D. Or. Apr. 26, 2019); *Stoddard-Nunez v. City of Hayward*, No. 13-CV-04490-KAW,

24

1    2015 WL 6954963, at *5 (N.D. Cal. Nov. 10, 2015) (taking judicial notice of state court

2    documents including a no contest plea to involuntary manslaughter when analyzing a *Heck*

3    claim).

4            Therefore, where plaintiff's convictions for vehicle prowling and arsons derive from his

5    *Alford* plea, for which the factual basis derived from his confession, a finding in plaintiff's favor

6    on his first claim (that the coerced confession violated his rights against self-incrimination and to

7    counsel) or his second claim (that this misconduct violated due process) would necessarily imply

8    the invalidity of his arson and vehicle prowl convictions.  Those claims should be dismissed

9    without prejudice.  *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995) (per

10   curiam) (dismissals under *Heck* are without prejudice).  Certain of plaintiff's other federal claims

11   appear to be founded on his allegations that his confession was unconstitutional, in addition to

12   other allegations of misconduct.  To the extent that plaintiff seeks damages for allegations that

13   his confession was unconstitutional, plaintiff should be barred from making such arguments.

14   *Heck* does not, however, bar any of plaintiff's state law claims, as the County conceded at oral

15   argument.  *See* Oral Argument Recording at 18:15.

16           Plaintiff also briefly argues that *Heck* does not apply where "the convictions at issue were

17   attained through plea agreements," citing *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011)

18   and *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001).  Dkt. 40, at 26.  This argument is not

19   persuasive.  In both cited cases, the plaintiffs had entered guilty or "no contest" pleas and the

20   issues that they raised in their civil cases did not implicate the validity of their convictions in the

21   way that the confession here underpins the arson and vehicle prowl convictions.  In *Ove*, the

22   Ninth Circuit held that the plaintiffs' convictions derived from their guilty or nolo contendere

23   pleas, not from verdicts obtained from supposedly illegal evidence.  264 F.3d at 823.  Similarly,

24

REPORT AND RECOMMENDATION - 11

1    in *Lockett*, 656 F.3d at 896–97, the § 1983 plaintiff had pled nolo contendere and his arguments

2    that police illegally searched his home did not "in any way" implicate the validity of his

3    conviction.

4         Subsequent case law clarifies that *Lockett* and *Ove* do not hold that *Heck* is inapplicable

5    to any conviction obtained by a guilty plea, such as a no-contest plea.   Multiple district courts

6    have concluded that where the conviction implicated by § 1983 arguments was obtained by way

7    of a no contest plea, whether *Heck* applies turns on the nature of the allegations in the civil

8    action, the factual basis for the criminal conviction, and whether success on the civil action

9    would undermine the validity of the criminal conviction.   *E.g.*, *Chavez v. City of Cal.*, No.

10   119CV00646DADJLT, 2020 WL 1234503, at *7 (E.D. Cal. Mar. 13, 2020) (citing authorities);

11   *Farrow v. Lipetzky*, No. 12-CV-06495-JCS, 2017 WL 1540637, at *9 (N.D. Cal. Apr. 28,

12   2017), *aff'd sub nom. Farrow v. Contra Costa Cty.*, 799 F. App'x 520 (9th Cir. 2020).   A notable

13   example is *Chavez*, where plaintiff's Fourth Amendment arguments would implicate his no

14   contest plea in his criminal case by calling into question the account of events in a police report.

15   Plaintiff's plea agreement specifically referred to that police report as providing a factual basis

16   for his plea.   2020 WL 1234503, at *8.   Thus, the District Court ruled that *Heck* barred the

17   Fourth Amendment arguments.   *Id.* at *9.

18        Indeed, even the Ninth Circuit has indicated that *Heck* can apply to a "no contest" plea:

19   in *Taylor v. County of Pima*, the Ninth Circuit stated that *Heck* applied where a plaintiff sought

20   damages that would call into question a conviction resulting from a no-contest plea.   *See* 913

21   F.3d 930, 935 (9th Cir. 2019), *cert. denied* 140 S. Ct. 2508 (2020); *see also Smith v. City of*

22   *Hemet*, 394 F.3d 689, 698 (9th Cir. 2005) (looking to the factual basis for a nolo contendere plea

23   to determine whether a § 1983 claim was *Heck* barred).   There is no reason not to apply this

24

1    same analysis to an *Alford* plea where, as here, an allegedly unlawful confession was part of the

2    factual basis for the plea.

3         Plaintiff's first and second claims should be dismissed without prejudice, as should any

4    portion of his remaining federal claims that rely on allegations that his confession was

5    unconstitutional as a basis for damages.

6    **III.  Statutes of Limitations**

7         **A.  State Law Claims**

8         Defendants argue that all of plaintiff's state law claims are time-barred.  Dkt. 29, at 16;

9    Dkt. 31, at 20.  The Court agrees in part and recommends dismissal of all state-law claims other

10   than those founded on malicious prosecution.

11        Plaintiff's state law claims are for malicious prosecution, outrage, conspiracy, negligence,

12   *respondeat superior*, and indemnification.  Dkt. 1, at 25–28.  The substantive claims have a

13   three-year statute of limitations under state law.  RCW 4.16.080(2).  Plaintiff does not contest

14   defendants' assertion that his indemnification and *respondeat superior* claims are theories of

15   liability and recovery and not claims with separate statutes of limitations.  *See* Dkt. 31, at 4 n.7.

16        In Washington, a cause of action accrues "when the factual basis for the cause of action

17   becomes known to the party bringing the action."  *Gausvik v. Abbey*, 126 Wn. App. 868, 880

18   (2005).  However, the statute of limitations is tolled during the period that one is imprisoned

19   before sentencing or while one is underage.  *Id.* (citing RCW 4.16.190 (tolling for pre-sentencing

20   imprisonment)).  Here, the allegations of plaintiff's complaint establish that he turned 18 in or

21   around 1997 and was convicted in or around 1996—so that the state statute of limitations had run

22   well before he filed this lawsuit in 2021, applying this rule.  *See* Dkt. 1, at 3, 6 (alleging that

23

24

1     plaintiff was 16 years old in 1995 and spent 23 years in prison before his 2019 release).

2         Plaintiff argues that his claim did not accrue until 2019 because, taking his allegations in

3 the light most favorable to him, defendants fraudulently concealed their misconduct from him for

4 23 years.  Dkt. 40, at 29.  In *Gausvik*, Division Two of the Washington State Court of Appeals

5 held that the statute of limitations began to run at sentencing (not when a criminal conviction was

6 later dismissed) on various similar state tort claims.  *See* 126 Wn. App. at 872, 878–79 (noting

7 that the "trial court found that the statute of limitations barred Gausvik's state law claims" and

8 finding Gausvik's arguments to the contrary meritless).  The court explained that the factual

9 basis for his claim arose when plaintiff lost his freedom.  *Id.* at 880; *see also id.* at 881 ("[The

10 plaintiff] knew [at the time of sentencing] that the techniques used by those involved in the

11 investigation of sexual abuse allegations may have led to children alleging abuse that never

12 occurred.").[4]  Similarly, in *Gausvik v. Perez*, the Ninth Circuit applied Washington law and held

13 that the claims for false imprisonment, negligent training and supervision, and intentional and

14 negligent infliction of emotional distress were time-barred since they had accrued when plaintiff

15 was arrested.  392 F.3d 1006, 1009 (9th Cir. 2004).  Based on this authority, the Court disagrees

16 with plaintiff's argument that the statute of limitations did not accrue until 2019.  *See also* 1A

17 Stuart M. Speiser, *et al.*, *The American Law of Torts* § 5:34, at 359 (1983) (related to a civil

18 conspiracy claim, "[t]he crucial time for accrual purposes is when the plaintiff becomes aware

19 that he is suffering from a wrong for which damages may be recovered in a civil action."), *cited*

20 *in Collier v. Momah*, 145 Wn. App. 1027, 2008 WL 2581864, at *6 (June 30, 2008).  Plaintiff

21 was aware of the alleged wrong that he suffered when he was arrested.  He was allegedly later

22

23       [4] The parties also cite *Rodriguez Hidalgo v. Ricardo Perez*, 128 F. App'x 577 (9th Cir.
2005), but this Court cannot rely on unpublished Ninth Circuit dispositions predating 2007.  *See*
24 Ninth Circuit Rule 36-3.

1    wrongfully convicted of first-degree murder based on evidence that he presumably already knew

2    was fabricated, such as his confession and his statement to a jailhouse informant.

3         Plaintiff argues that he discovered the factual basis for his claims when his conviction

4    was vacated.  Relevant to this argument, the Court takes judicial notice of plaintiff's arguments

5    in his Washington State Criminal Rule ("CrR") 7.8 motion that he filed in his state court criminal

6    proceeding in February 2019.  Specifically, the Court takes notice that plaintiff argued that his

7    conviction should be vacated and he was entitled to a new trial on the basis of new scientific

8    studies about the viability of juvenile confessions that called his confession into question and

9    DNA testing that excluded plaintiff as a contributor of DNA found on certain evidence.  *See* Dkt.

10   30, at 753–66.  The Court may take judicial notice of arguments in pleadings filed in state court.

11   *E.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 660, n.11 (9th Cir. 2012).  Of course, the Court may not

12   take judicial notice of the truth of disputed factual matters in those pleadings.  *See Lee v. City of*

13   *L.A.*, 250 F.3d 668, 690 (9th Cir. 2001).  But there is no reasonable dispute that plaintiff made

14   such arguments even if the parties dispute whether plaintiff's confession was, in fact, invalid and

15   the DNA evidence did, in fact, exonerate him.

16        Relevant to plaintiff's arguments that he discovered the factual basis for his claims in

17   2019, the Court observes that plaintiff's motion to vacate the judgment argued that (1) his

18   confession was unreliable and (2) DNA testing confirmed that his DNA was not present at the

19   scene.  But this does not change that the factual basis relevant to plaintiff's claims would already

20   have been known to him—plaintiff would have already known that he lied during his confession

21   and that he was not present at the murder scene.

22        Notwithstanding this analysis, however, the Court does recognize that plaintiff has cited

23   valid authority that where a state law tort claim requires proof that a conviction has been

24

1   overturned as an element, the statute of limitation is tolled until that conviction is overturned.

2   *See Flynn v. Pierce Cty.*, 16 Wn. App. 2d 721 (Wash. Ct. App. 2021).  In *Flynn*, a sentencing

3   court used an incorrect offender score to calculate a criminal defendant's sentence.  The

4   defendant obtained collateral relief years later, when the state supreme court remanded the matter

5   for resentencing.  *Id.* at 725.  After the resentencing, plaintiff filed a civil suit for legal

6   malpractice, which the Court of Appeals held was not time-barred.  *Id.* at 727.  This was because

7   a necessary element of the legal malpractice claim was showing that the person bringing the

8   claim had obtained postconviction relief.  *Id.* at 729 (explaining that the criminal defendant

9   "could not have applied to a court for relief until his sentence had been invalidated because post-

10  conviction relief is a prerequisite to establishing proximate cause for a legal malpractice claim in

11  a criminal case").

12          Although *Flynn* involves legal malpractice, notably, an element of malicious prosecution

13  is also "that the proceedings terminated on the merits in favor of the plaintiff or were

14  abandoned[.]"  *Clark v. Baines*, 150 Wn.2d 905, 911 (2004) (internal citation and quotation

15  marks omitted).  The same logic applies here.  Plaintiff could not prevail on his malicious

16  prosecution claim under state law until 2019, when his conviction was vacated.  This claim is not

17  time-barred.  The analysis regarding the statute of limitations in Division Two's *Flynn* opinion

18  controls over any language to the contrary in Division Two's *Gausvik v. Abbey* opinion.

19          However, neither outrage, negligence, nor civil conspiracy require showing that plaintiff

20  prevailed on post-conviction relief or that the criminal charges against him otherwise terminated

21  in his favor.  *See Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) ("The tort of outrage requires

22  the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless

23  infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.");

24

1   *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (1996) (the elements of negligence are

2   "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate

3   cause."); *Wilson v. State*, 84 Wn. App. 332, 350–51 (1996) (elements of civil conspiracy are that

4   (1) two or more people combined to accomplish an unlawful purpose, or combined to

5   accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an

6   agreement to accomplish the conspiracy.).

7         Plaintiff further argues that the statute of limitations should be tolled because "justice so

8   requires." Dkt. 40, at 29.  The cases he cites applied equitable tolling in different situations (*see*

9   *Millay v. Cam*, 135 Wn.2d 193, 206 (1998) (a "redemptioner in possession submits a grossly

10  exaggerated statement of the sum required to redeem and the redemptioner cannot with due

11  diligence ascertain the sum required to redeem within the time remaining."); *Matter of Fowler*,

12  197 Wn.2d 46, 55 (2021) (applying equitable tolling based on petitioner's attorney's egregious

13  misconduct handling petitioner's personal restraint petition)) or not at all.  *See Gonzalez v.*

14  *Dammeier*, No. C18-5895-RJB-TLF, 2019 WL 2176833, at *4 (W.D. Wash. Apr. 4,

15  2019), *report and recommendation adopted*, No. C18-5895RJB, 2019 WL 2172886 (W.D.

16  Wash. May 20, 2019).  They are not persuasive here.

17         In short, all of plaintiff's state law claims except his malicious prosecution claims (and

18  his *respondeat superior* and indemnification claims, to the extent that those claims are based on

19  malicious prosecution) should be dismissed as time-barred.

20                          **B.  Federal Claim (Fourth Amendment)**

21         Defendants also briefly argue that the Fourth Amendment claim is time-barred "to the

22  extent it is based on an allegedly false arrest/imprisonment prior to criminal charges being filed."

23  Dkt. 29, at 17; Dkt. 31, at 21.  In response, plaintiff asserts that he is not "specifically

24

1   challenging his detention before the onset of legal process." Dkt. 40, at 27. Therefore, the Court

2   should decline to dismiss the Fourth Amendment claim on the basis that it is time-barred.

3   **IV.  Collateral Estoppel and the "Conclusiveness" Rule from *Hanson***

4   As noted, plaintiff's remaining claims are for malicious prosecution and under federal

5   law, to the extent that plaintiff raises federal claims not seeking damages for his allegedly

6   unlawful confession. The City defendants and the County request that the Court dismiss

7   plaintiff's remaining federal law claims on the basis of collateral estoppel. *See* Dkt. 29, at 7;

8   Dkt. 31, at 16. The Court begins by addressing collateral estoppel, then turns to the issue of

9   whether plaintiff's malicious prosecution or Fourth Amendment claims[5] are barred by his

10  criminal conviction, which was later vacated.

11  **A.  Collateral Estoppel (Remaining Federal Claims other than Fourth**

12  **Amendment Claims)**

13  "State law . . . governs the application of collateral estoppel to a state court judgment in a

14  federal civil rights action." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019), *cert.*

15  *denied*, 140 S. Ct. 388 (2019). Thus, the Court looks to the elements of state law when

16  determining whether collateral estoppel bars any of plaintiff's federal claims.

17  As articulated in *Hanson v. City of Snohomish*—

18      The doctrine of collateral estoppel prevents relitigation of an issue after the
        party estopped has had a full and fair opportunity to present its case. The purpose

19      of the doctrine is to promote the policy of ending disputes, to promote judicial
        economy and to prevent harassment of and inconvenience to litigants. The doctrine

20      may be applied in a civil action in which a party seeks to retry issues resolved
        against a defendant in a previous criminal case, as well as in a civil rights action in

21

22      [5] The County characterizes plaintiff's § 1983 claims as all being for "malicious
    prosecution" or "false imprisonment" (Dkt. 29, at 8 n.5, n.6), but the Court understands plaintiff

23  to be bringing claims under § 1983 that various constitutional rights were violated, including one
    claim that his detention after legal process began violated the Fourth Amendment. *See* Dkt. 40,

24  at 19.

which issues raised are the same as those determined in a criminal case. The requirements which must be met when applying the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice.

121 Wn.2d 552, 561–62 (1993). "[C]ollateral estoppel extends only to 'ultimate facts,' *i.e.,* those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim." *McDaniels v. Carlson*, 108 Wn.2d 299, 305 (1987) (internal citation omitted).

The Court focuses on the first requirement, as articulated in *Hanson*—the identity of issues. Related to this issue, the Court takes judicial notice of plaintiff's arguments made in support of his CrR 7.8 motion in the state trial court that he filed in 1997, shortly after his conviction. *See* Dkt. 30, at 680–87, 716. Namely, the Court takes judicial notice that plaintiff's counsel argued that the jailhouse informant had given perjured testimony at plaintiff's criminal trial (*see* Dkt. 30, at 681) when he stated that he had not received a reward or payment from the state in return for coming forward. Plaintiff's counsel at the CrR 7.8 hearing also argued that the prosecutor knew or should have known about payments to the informant for his testimony. *See* Dkt. 30, at 684. And counsel argued that the prosecutor should have known that the informant was facing pending charges of which the defense was unaware. Dkt. 30, at 687; *see also* Dkt. 30, at 717–20. The Court also takes judicial notice that the trial court found that the State did not provide police reports of pending charges when the informant was arrested, that there was no evidence of a special benefit to the informant for his testimony, and that there was no evidence that the State should have known about a payment to the informant for information. *See* Dkt. 30, at 738. As noted above, the Court does not take judicial notice of the truth of such disputed

1   matters (for instance, whether the State should have known about payment) but merely the facts

2   of the existence of the trial court's findings and the arguments made by plaintiff's counsel.

3          Plaintiff's arguments and the trial court's findings in 1997 focused on whether the

4   prosecutor should have known about an alleged payment to the informant, not on whether

5   officers worked with the informant to fabricate his testimony and to support their case against

6   plaintiff.

7          The ultimate facts raised and litigated at the 1997 CrR 7.8 hearing are not materially

8   identical to those related to the informant's testimony in this matter.  Plaintiff now argues that

9   various defendants "conspired to convince a man named Kevin Olsen to testify to a false story

10   that [plaintiff] confessed to the crime while he and [plaintiff] were in custody at the King County

11   Jail.  Olsen's story was obviously false—it has been incentivized and created by the Police

12   Officer Defendants."  Dkt. 1, at 13.

13          Because the first requirement of collateral estoppel is not met, the Court ends the analysis

14   here and does not reach the parties' arguments related to whether the criminal conviction is

15   "final" or the remaining collateral estoppel elements.  The Court also does not address whether

16   plaintiff's claim that his confession was coerced is collaterally estopped by his CrR 3.5 hearing

17   arguments because, as noted above, the coerced confession claims are subject to dismissal for

18   other reasons.

19          **B.  Conclusiveness Rule (Malicious Prosecution and Fourth Amendment**

20   **claims)**

21          The *Hanson* opinion primarily addressed another issue related to collateral estoppel and

22   relevant to plaintiff's malicious prosecution and Fourth Amendment claims:  the viability of

23   claims of malicious prosecution where there is an underlying criminal conviction.  *See*

24

1   Wn.2d at 556.

2       The majority in *Hanson* held that "[t]he conviction of an accused conclusively establishes

3   the existence of probable cause, thus defeating an action for malicious prosecution, unless the

4   conviction was obtained by fraud, perjury or other corrupt means." *Id.* *Hanson* held that this is

5   so even where the conviction is later reversed. *Id.* at 560.

6       In actions under § 1983, a federal court will apply state law to determine whether

7   probable cause existed. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)

8   (action for malicious prosecution under § 1983). Regarding a Fourth Amendment claim under §

9   1983, the Ninth Circuit has held that the probable cause determination must look to state law:

10  "[t]he lawfulness of a state arrest by state police is to be determined by state law so long as the

11  state law is not inconsistent with the federal Constitution." *Bergstralh v. Lowe*, 504 F.2d 1276,

12  1277 (9th Cir. 1974). By its own terms, the holding from *Hanson* allows an action for malicious

13  prosecution if the "conviction was obtained by fraud, perjury or other corrupt means." 121

14  Wn.2d at 556. That is precisely what plaintiff argues here.

15      In *Hanson*, the plaintiff made similar arguments that his conviction was obtained by fraud

16  because police had used improper identification procedures—an argument that had been litigated

17  and resolved in the State's favor at plaintiff's criminal trial. *See* 121 Wn.2d at 554. Defendants

18  argue that this case presents a similar situation.   But the Court does not agree that identical

19  issues were litigated in the criminal matter as those presented in plaintiff's remaining claims in

20  this civil matter.[6] Defendants' chief argument is that plaintiff's arguments in support of his 1997

21  CrR 7.8 motion presented an identical issue to his claim in this matter that police worked with

22

23  [6] As noted above, the Court finds that the claims related to plaintiff's confession should be
    dismissed for other reasons and does not address the parties' arguments related to that claim in
24  this analysis.

the jailhouse informant to fabricate that informant's testimony.  Dkt. 29, at 10–11.  Although the

trial court found no evidence of any special benefit to the informant for his benefit, as discussed

above, the relevant issues raised and litigated at the 1997 CrR 7.8 hearing pertained to whether

there was an agreement between the State and Olsen to testify in plaintiff's criminal case and

whether the State was aware that Olsen had received money from "Crime Stoppers" or some

other source for his testimony.  Dkt. 30, at 737.  As plaintiff argues, these findings focused on

the State's obligation to disclose exculpatory evidence and not whether there was an overarching

conspiracy by police officers to frame plaintiff for murder by fabricating evidence.  Again,

collateral estoppel does not apply simply because issues might overlap or because they are

similar—the issues must be "identical."  *Hanson*, 121 Wn.2d at 563.  That is not the case here.

Thus, unlike in *Hanson*, plaintiff's arguments that perjury, fraud, or other corrupt means

led to his conviction are not in all material respects identical to his arguments in his criminal

case.  Therefore, the rule from *Hanson* that a prior conviction is conclusive evidence of probable

cause does not apply.  The Fourth Amendment and malicious prosecution claims should not be

dismissed.

### V.  Judicial Estoppel

Judicial estoppel is an equitable doctrine that may be invoked to protect the integrity of

the judicial process, where a party takes contrary positions before the court.  *New Hampshire v.*

*Maine*, 532 U.S. 742, 749 (2001).  Judicial estoppel prevents a party from "prevailing in one

phase of a case on an argument and then relying on a contradictory argument to prevail in

another phase."  *Id.* (internal citation and quotation marks omitted).  Defendants argue that

judicial estoppel also bars plaintiff's claims.  Dkt. 29, at 12; Dkt. 31, at 18.

Federal, not state, judicial estoppel principles apply to these arguments.

1 *Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 603 (9th Cir. 1996) (holding that "[f]ederal law

2 governs the application of judicial estoppel in federal court" and applying federal law regarding

3 judicial estoppel to supplemental, state law claims). The Supreme Court has explained that three

4 factors typically inform the decision whether to apply judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier
> position. [Citations omitted.] Second, courts regularly inquire whether the party
> has succeeded in persuading a court to accept that party's earlier position, so that
> judicial acceptance of an inconsistent position in a later proceeding would create
> "the perception that either the first or the second court was misled[.]" [Citation
> omitted.] Absent success in a prior proceeding, a party's later inconsistent position
> introduces no "risk of inconsistent court determinations," [citation omitted], and
> thus poses little threat to judicial integrity. [Citations omitted.] A third
> consideration is whether the party seeking to assert an inconsistent position would
> derive an unfair advantage or impose an unfair detriment on the opposing party if
> not estopped. [Citations omitted.]

11 *New Hampshire*, 532 U.S. at 750–51.

12   The Court focuses on the second consideration, as the Court does not find that it is clear

13 plaintiff succeeded in persuading the trial court to accept an inconsistent position in 2019. As

14 noted above, plaintiff raised arguments related to the reliability of his confession and certain

15 DNA evidence in support of his 2019 CrR 7.8 motion. The Court also takes judicial notice that

16 the State moved to vacate the conviction. Dkt. 30, at 827. The State did not agree that plaintiff

17 was innocent or wrongly convicted. Instead, the State asserted that it believed plaintiff's request

18 for a new trial would likely be granted and that because of the difficulty retrying the case

19 decades later, plaintiff's youth at the time, and plaintiff's spending 23 years in confinement, "a

20 new trial would not be in the interests of justice." Dkt 30, at 827–28. And the Court takes

21 judicial notice that the trial court granted the State's and plaintiff's motions and directed

22 plaintiff's release. Dkt. 30, at 836. The trial court did not state why it granted the motions,

23 instead simply referring to "review of the motions by the State and Simmers, and statements by

24

1   counsel for the State . . . and . . . Simmers[.]"  Dkt. 30, at 836.

2          As noted, the second judicial estoppel consideration is whether plaintiff succeeded in

3   persuading the state court to accept his position, so that judicial acceptance of an inconsistent

4   position in this proceeding would create "the perception that either the first or the second court

5   was misled." *New Hampshire*, 532 U.S. at 750.  The trial court's one-page order granting both

6   parties' motions does not set forth findings related to the basis for the court's conclusion.  The

7   order could reasonably be interpreted as concluding that the State was conceding the merit of a

8   motion for a new trial (*see* Dkt. 30, at 827 ("the State has concluded that a defense motion for a

9   new trial would likely be granted")) but that the State no longer sought to press charges. *See* Dkt.

10   30, at 831 ("this would be an extremely difficult case to retry. . .").  Thus, the trial court did not

11   necessarily need to have accepted that police acted in good faith when they interrogated

12   plaintiff—the trial court could well have simply accepted the State's position that it no longer

13   sought to litigate the issues in light of the apparent merit of plaintiff's motion.

14          Because there is no danger that plaintiff's arguments in this matter would create a

15   perception that either court has been misled, the Court should not dismiss any of plaintiff's

16   claims on the basis of judicial estoppel.

17   **VI.  Claims related to Wyatt**

18          The County, the City, and the City officers argue that plaintiff cannot bring claims on

19   behalf of Wyatt, another juvenile whom police allegedly interrogated unlawfully and who

20   implicated plaintiff.  Dkt. 29, at 18; Dkt. 31, at 21.  Plaintiff responds that he is not bringing any

21   such claims.  Dkt. 40, at 30.  Plaintiff asserts that instead, his allegations are circumstantial

22   evidence that support his other claims.  *See* Dkt. 40, at 30.  Therefore, none of plaintiff's claims

23

24

1  should be dismissed on the basis of lack of standing.

2  **VII.  *Monell*-based Claims**

3  The County and the City argue that the claims against them under *Monell v. New York*

4  *City Department of Social Services*, 436 U.S. 658 (1978), must be dismissed because plaintiff

5  has failed to plausibly allege a theory of liability against them.  The Court disagrees.

6  "In order to establish liability for governmental entities under *Monell*, a plaintiff must

7  prove '(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the

8  municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

9  constitutional right; and, (4) that the policy is the moving force behind the constitutional

10  violation.'"  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v.*

11  *Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (brackets omitted)).

12  Plaintiff's claim is cognizable where there are plausible allegations that—

13  . . ."the individual who committed the constitutional tort was an official with final
policy-making authority" or such an official "ratified a subordinate's
14  unconstitutional decision or action and the basis for it.". . .  "If the authorized
policymakers approve a subordinate's decision and the basis for it, their ratification
15  would be chargeable to the municipality because their decision is final.". . .  "There
must, however, be evidence of a conscious, affirmative choice" on the part of the
16  authorized policymaker. . . .  A local government can be held liable under § 1983
"only where 'a deliberate choice to follow a course of action is made from among
17  various alternatives by the official or officials responsible for establishing final
policy with respect to the subject matter in question.'". . .

18

19  *Clouthier v. Cty. of Contra Costa,* 591 F.3d 1232, 1249–50 (9th Cir. 2010) (internal citations

20  omitted), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016).

21  Here, plaintiff alleges a ratification theory as one alternative for holding the City and County

22  liable.  *See* Dkt. 1, at 23–25.

23

24

1    The County argues that plaintiff has failed to plausibly allege that a person with final

2   policy-making authority ratified any individual officers' actions.  Dkt. 29, at 20; *see City of St.*

3   *Louis v. Prapotnik*, 485 U.S. 112, 124 (1988) (explaining that whether an official has final policy

4   making authority is a question of state law).

5    Plaintiff alleges that defendant Jackson Beard was a "supervisor in the King County

6   Sheriff's Department" who was "responsible for overseeing the . . . investigation and in that

7   capacity directed, reviewed, approved, and ratified decisions of the County Officers."  Dkt. 1, at

8   3; *see also* Dkt. 1, at 6.  Plaintiff also alleges that defendant Mark Ericks was the City police

9   chief and was both a person who responded to the scene of the murder and, along with Beard,

10   one who approved of the work of other individual defendants during the investigation and

11   decision to prosecute plaintiff.  Dkt. 1, at 5–6.

12    The County argues that a Washington State Supreme Court case and King County

13   Ordinance show that Beard was not a final policymaking official.  *See* Dkt. 29, at 20 n.19.  The

14   case simply states that the County Executive "is ultimately responsible for police conduct,"

15   although it recognizes that the Executive has delegation powers.  *Carrick v. Locke*, 125 Wn.2d

16   129, 143 (1994).  The ordinance states that in 1996, the King County charter was amended to

17   create the elected office of county sheriff.  *See* King County Ordinance No. 12301 (May 7,

18   1996), https://aqua.kingcounty.gov/council/clerk/OldOrdsMotions/Ordinance%2012301.pdf.

19   Neither source establishes that the sheriff or the executive is the only person with final

20   policymaking authority in the County.

21    Alternatively, the County argues that even if Beard were a final policy maker, plaintiff

22   fails to allege any action by Beard that could have ratified the officers' actions "where he fails to

23   allege that anyone filed any complaint regarding the officers' actions that caused official

24

1   approval of the interrogation tactics." Dkt. 43, at 18 n.17.  But ratification does not require that

2   an official approve of tactics in response to a complaint.  It would be adequate for plaintiff to

3   prove, for instance, that Beard was a final policy making official who knew of the alleged

4   constitutional violations and made a conscious, affirmative choice.  *Gillette v. Delmore*, 979 F.2d

5   1342, 1347 (9th Cir. 1992).  Here, plaintiff claims that Beard was a major in the King County

6   Police, who was responsible for overseeing the investigation, including directing and reviewing

7   the actions at issue, and that the alleged policymakers "knew about the violations of Plaintiff's

8   constitutional rights and made a conscious, affirmative choice to ratify those constitutional

9   violations by proceedings with Plaintiff's wrongful detention, prosecution, and conviction." Dkt.

10  1, at 24.  Whether or not plaintiff can ultimately provide evidence to support or prove these

11  allegations is another matter; on a motion for judgment on the pleadings, these allegations are

12  adequate to state a plausible theory of ratification.

13         The City argues that the allegations against it are insufficiently specific to plausibly

14  allege a *Monell* claim. Dkt. 31, at 15.  But to the contrary, the complaint plausibly alleges that

15  Ericks was a final policy making official who participated in the investigation and supervised

16  and approved of individual defendants' actions.

17         Plaintiff also alleges that municipal policies and practices caused the constitutional

18  deprivations.  *See* Dkt. 1, at 23–25.  The Court does not address the viability of this alternative

19  theory of liability under *Monell* in light of the analysis above.  The requests to dismiss the

20  *Monell* claims should be denied.

21  **VIII.  Individual Defendants**

22         Several individual defendants also argue that the allegations against them are too bare to

23  create a cognizable claim.  *See* Dkt. 31, at 13–14.  As noted above, the Court finds that plaintiff's

24

1    claims that his confession was unlawfully coerced and most of his state law claims should be

2    dismissed.  With this in mind, the Court focuses on whether the allegations against these

3    individual defendants are sufficient to state a cognizable claim.

4            Related to the Bothell police officer defendants, specifically defendants Schlaegel and

5    Hopkins, plaintiff alleges that Schlaegel and Hopkins, together with defendant Miner, were part

6    of the investigation from the time they responded to the scene of the murder.  Dkt. 1, at 5.

7    Plaintiff alleges that these three defendants formed an agreement with other individual

8    defendants to prosecute plaintiff for the murder, including "deciding that Plaintiff was going to

9    take the fall."  *See* Dkt. 1, at 5–6, 8 (referring to the "Bothell PD Officers," including defendants

10   Schlaegel, Miner, and Hopkins).  Even excluding plaintiff's allegations related to his confession,

11   plaintiff asserts that Schlaegel wrote a falsified statement objecting to plaintiff's release as part

12   of the plan to implicate plaintiff (Dkt. 1, at 12)   and that Schlaegel and Hopkins took the lead on

13   concocting the false jailhouse informant story.  Dkt. 1, at 13.   These allegations are adequate to

14   establish that Hopkins and Schlaegel participated in the unconstitutional scheme alleged by

15   plaintiff.

16           Plaintiff relies on *Keates v. Koile*, 883 F.3d 1228, 1232 (9th Cir. 2018), as demonstrating

17   that defendants Miner, McSwain, Baxter, and Raftus were "integral participants" in the actions at

18   issue.  *See* Dkt. 40, at 37–39.  In *Keates*, a mother sued CPS workers for allegedly wrongfully

19   removing a child from the mother's custody, with her allegations primarily centering on the

20   issuance of a temporary custody notice by a CPS worker.  883 F.3d at 1232.  The CPS worker

21   had allegedly collaborated with two colleagues, and another CPS worker later wrote a letter

22   explaining the basis for CPS taking custody of the child.  *Id.* at 1233.  The Ninth Circuit

23   concluded that the allegations that the colleagues collaborated in the issuance of the custody

24

notice after speaking to a hospital employee were sufficient to show knowledge of the situation

and participation in the allegedly unconstitutional action in a meaningful way. *Id.* at 1242.

However, allegations that other workers were aware of the investigation but did not collaborate

in the issuance of the custody notice (for instance, by sending the letter months later) were

inadequate. *Id.*

Applying *Keates*, the Court agrees that plaintiff has plausibly alleged that Miner,

McSwain, Baxter, and Raftus were integral participants.  Plaintiff has alleged that these

defendants were aware of his innocence and were part of the plan to frame him.  *Keates* teaches

that plaintiff must also allege some meaningful act of participation in the allegedly unlawful

actions.  Here, plaintiff has done so:  he alleges that each of the "Police Officer Defendants," for

instance, coerced another juvenile to implicate plaintiff in the murder.  Dkt. 1, at 7; *see* Dkt. 1, at

3, 6 (explaining that the term "Police Officer Defendants" is a shorthand for defendants Hopkins,

Schlaegel, Miner, Rusk, McSwain, Raftus, and Baxter); *see also Reynaga Hernandez v. Skinner*,

969 F.3d 930, 941 (9th Cir. 2020) (even if the integral participant's own actions are not

separately actionable, they may form the basis of liability for "integral participation").  Even

setting aside claims about the allegedly coerced confession obtained from plaintiff, he also

alleges that individual police officers fabricated a drawing of the murder weapon supposedly by

plaintiff (Dkt. 1, at 12), and suppressed evidence that any defendant had conspired with the

informant or fabricated reports related to the confessions.  Dkt. 1, at 14.

The Court also observes that although defendants argue that the claims related to the

jailhouse informant's testimony appear to be against only the Bothell police officer defendants

(*see* Dkt. 29, at 10 n.10), plaintiff clearly brings the relevant claims against all individual

1    defendants, including the County officers.  *See* Dkt. 1, at 19–28,

2           Turning to the allegations against defendant Ericks, as noted above, plaintiff claims that

3    Ericks, as the Bothell police chief, was responsible for overseeing the investigation (and

4    approving the decisions of defendants Schlaegel, Miner, and Hopkins).  Dkt. 1, at 3.  He alleges

5    that Ericks was one of the defendants who "decided that Plaintiff was going to take the fall" for

6    the murder, including agreeing with the other individual defendants to seek plaintiff's conviction.

7    Dkt. 1, at 6.  Stating that Ericks was aware of and approved the decisions of the investigating

8    officers is adequate to state a claim under § 1983.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

9    Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the

10   supervisor participated in or directed the violations, or *knew of the violations and failed to act to*

11   *prevent them*." (Emphasis added.)).  The Court should decline to dismiss the claims against

12   Ericks on the basis of his personal participation in events at issue.

13          Alternatively, various defendants argue that qualified immunity shields them from

14   liability because plaintiff "represented to the Superior Court [in support of his CrR 7.8 motion]

15   that, at the time of his interrogation, 'few if any police officers contemplated that standard

16   psychological interrogation tactics, especially when used on youthful suspects, could produce

17   false confessions.'"  Dkt. 32, at 5 (internal citation omitted).  However, defendants cannot rely

18   on judicial notice for the truth of a fact found within a pleading of which the court has taken

19   judicial notice.  And as set forth above, the Court should not find that judicial estoppel applies

20   based on plaintiff's prior arguments in support of his second CrR 7.8 motion.  Therefore, these

21

22

23

24

1    arguments lack merit.

2

3                                    **CONCLUSION**

4           For the reasons set forth above, the Court recommends granting the County and City

5    motions for judgment on the pleadings in part and denying them in part (Dkts. 29, 31) and

6    denying defendants Baxter, McSwain, and Raftus' motion for judgment on the pleadings.  Dkt.

7    32.  Claims one and two in plaintiff's complaint and any other claims for damages under federal

8    law seeking damages on the basis that plaintiff's confession was unlawfully procured should be

9    dismissed without prejudice.  All of plaintiff's state law claims except his malicious prosecution

10   claims (and his *respondeat superior* and indemnification claims, to the extent that those claims

11   are based on malicious prosecution) should be dismissed with prejudice, as time barred.

12          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

13   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

14   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

15   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

16   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

17   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

18   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 30, 2021,**

19   as noted in the caption.

20          Dated this 12th day of July, 2021.

21

22

23                                                    J. Richard Creatura
                                                      Chief United States Magistrate Judge

24