Hon. Richard A. Jones, District Judge
Hon. J. Richard Creatura, Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Ian Simmers, | Case No. 2:21 CV 100 |
| Plaintiff, | Note on motion calendar: |
| v. | August 13, 2021 |
| King County, the City of Bothell, Det. Edward J. Hopkins, Sgt. Clement Rusk, Det. Rebecca Miner, Det. John McSwain Det. Pat Raftus, Det. Ken Baxter, Chief Mark Ericks, Det. Sgt. David Schlaegel, Maj. Jackson Beard, Unknown Officers of the City of Bothell Police Department, and Unknown Sheriff's Deputies of King County, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO RULE 72 OBJECTIONS
FILED BY THE CITY OF BOTHELL DEFENDANTS**

Plaintiff Ian Simmers, through his undersigned attorneys, submits the following response to the Rule 72 Objections filed by the City of Bothell Defendants (Dkt. 56), stating as follows:

**Introduction**

Plaintiff Ian Simmers was wrongfully convicted of a murder he did not commit, and he served 23 years in prison before his conviction was overturned and the charges were dropped in light of exculpatory DNA testing. He now brings this suit pursuant to 42 U.S.C. § 1983 seeking vindication of the violations of his constitutional rights by the law

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 1
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

enforcement officers, and their municipal employers, who were responsible for his injuries. Despite Defendants' attempts to portray this case as simply a re-hash of the criminal proceedings, the Complaint alleges intentional misconduct by Defendants in violation of Plaintiff's constitutional rights.

The Magistrate Judge properly concluded that the bulk of Defendants' arguments for dismissal fail. Indeed, in their Rule 72 objections, the City of Bothell Defendants misapply the governing law and misconstrue the Complaint's factual allegations. Defendants' objections do not meaningfully respond to either Plaintiff's arguments or to the Magistrate Judge's ruling. Because the Defendants' objections flout the proper standard of review at the Rule 12 stage and fail to identify a legal basis to dismiss the Complaint, they should be overruled.

Because the objections filed by the City Defendants (Dkt. 56) and those filed by Defendant King County (Dkt. 57) raise nearly all the same arguments, Plaintiff has addressed each argument just once across two responsive filings to avoid redundancy. This brief addresses the arguments concerning judicial estoppel and Plaintiff's Article III standing. Defendants' arguments relating to collateral estoppel and the statute of limitations for Plaintiff's state-law malicious prosecution claim are discussed in Plaintiff's response to the City Defendants' objections. In addition, this brief discusses the City Defendants' arguments concerning the sufficiency of Plaintiff's allegations under Rule 12(b)(6).

**Background**

The following factual summary is drawn from the allegations in Plaintiff's Complaint. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.").

Plaintiff brought this suit to vindicate the violations of his federal constitutional rights that caused him to be wrongly convicted and imprisoned for 23 years before DNA evidence finally proved his innocence. Compl., Dkt. 1 ¶¶1, 6–7. Plaintiff's wrongful conviction was

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 2
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

the direct result of deliberate misconduct on the part of law enforcement officers employed by Defendants King County and the City of Bothell, who fabricated evidence and suppressed exculpatory evidence in an effort to secure his detention and conviction for a crime they knew he did not commit. *Id.* ¶¶2–5. But his wrongful conviction also resulted from the policies, practices, and customs of King County and the City of Bothell, as well as the actions of those entities' official policymakers. *Id.* ¶¶167–180.

### A.   The Gochanaur Murder & Defendants' Unlawful Interrogations

The crime for which Plaintiff was wrongly convicted was the 1995 murder of Rodney Gochanaur. *Id.* ¶1. Officers from the Bothell Police Department, including Defendants Hopkins, Schlaegel, Miner, and Rusk, participated in the initial investigation and uncovered potential suspects with motives for the murder. *Id.* ¶¶22, 27–28. But rather than conducting adequate follow-up on these leads to identify the real killer, these Defendants (working in conjunction with Defendants McSwain, Raftis, Baxter, and Rusk from the King County Police) decided to pin the crime on Plaintiff. *Id.* ¶¶29–31. Defendants Ericks and Beard, acting in their capacities as supervisors and policymakers within the Bothell Police Department and King County Police, respectively, condoned these actions. *Id.* ¶32.

At the time of the Gochanaur murder, Plaintiff was just 16 years old. *Id.* ¶1. He was arrested several days after the murder on completely unrelated charges alongside another juvenile named Jon Wyatt. *Id.* ¶¶34–35. The Police Officer Defendants (i.e., Schlaegel, Hopkins, Miner, McSwain, Raftis, Baxter, and Rusk) began interrogating Wyatt without his parents present. *Id.* ¶37. The Police Officer Defendants employed a variety of coercive interrogation tactics to obtain false statements implicating Plaintiff in the Gochanaur murder. These tactics included threatening, pressuring, cajoling, badgering, and harassing Wyatt in an effort to get him to falsely state that Plaintiff had something to do with the crime, *id.* ¶40; using guilt-presumptive questioning, *id.* ¶41; depriving Wyatt of an attorney even after one was requested and arrived at the police station, *id.* ¶¶41, 57; and making false promises of leniency that also operated as coercive threats, *id.* ¶¶42, 44. The Police Officer Defendants

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 3
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

deliberately used these tactics because they knew they would be effective in obtaining false statements implicating Plaintiff. *Id.* ¶¶38, 43, 45. The Police Officer Defendants then fabricated evidence, including written reports, about their interrogations of Wyatt. *Id.* ¶46. And they failed to document or disclose exculpatory and impeaching evidence relating to their interactions with Wyatt. *Id.* ¶¶96–97.

With Wyatt's fabricated statements in hand, the Police Officer Defendants turned to their interrogation of Plaintiff, employing tactics similar to those that had proven effective against Wyatt. *Id.* ¶48. The Police Officer Defendants ignored Plaintiff's invocation of the right to silence, *id.* ¶¶52–53, and harassed him throughout the night in an effort to deprive him of sleep and make him more compliant during his interrogations, *id.* ¶¶54, 57, 60, 63–64. Even after it became clear that Plaintiff had no knowledge of the crime and was innocent, the Police Officer Defendants persisted in their coercive strategy. *Id.* ¶¶65, 68. They used aggressive confrontation, false evidence ploys, and minimization themes, such as convincing Plaintiff to adopt a story that Gochanaur was the initial aggressor in order to minimize the severity of this crime. *Id.* ¶65. The Police Officer Defendants also fed Plaintiff details about the crime as part of their effort to fabricate a false statement, coaching Plaintiff to repeat certain information. *Id.* ¶¶68–69.[1]

Plaintiff was particularly vulnerable to the Police Officer Defendants' coercive tactics, and Defendants knew as much. *Id.* ¶66. The Police Officer Defendants understood that Plaintiff's judgment was impaired, that he was exhausted, and that he was a juvenile, all of which facilitated their strategy to obtain a false confession. *Id.* ¶¶62–63. Eventually, the Police Officer Defendants succeeded in overbearing Plaintiff's will and coercing him into repeated the inculpatory statement they had manufactured. *Id.* ¶69. They deliberately waited until that point to begin recording their questioning of Plaintiff, thereby creating false evidence that would be used to detain, prosecute, and convict him. *Id.* ¶¶70, 86, 89.

---

[1] The City Defendants offer self-serving, unsupported, "factual" recitation that flatly contradicts the allegations in the Complaint. *See, e.g.*, Dkt. 56 at 2:11-14.

| PLAINTIFF'S RESPONSE TO BOTHELL DEFENDANTS' RULE 72 OBJECTIONS - 4<br>2:21 CV 100 | LOEVY & LOEVY<br>100 S. King St., Ste. 100<br>Seattle, WA 94104<br>(312) 243-5900 |
|---|---|

**B.     Defendants' Fabricated "Informant" Testimony**

This fabricated statement was not the end of Defendants' misconduct. The confession that the Police Officer Defendants ascribed to Plaintiff was riddled with flaws suggesting it was false. *Id.* ¶¶90–93. To shore up these flaws, the Police Officer Defendants conspired to convince a man named Kevin Olsen to testify to a false story that Plaintiff confessed to the murder while in jail. *Id.* ¶94. Defendant Hopkins then memorialized this fabricated evidence in a police report designed to explain away the mistakes in the false confession. *Id.* ¶95.

**C.     Plaintiff's Trial, Conviction, and Eventual Exoneration**

Defendants' coercion, fabrication, and suppression had their intended effect. *Id.* ¶99. Plaintiff was charged with Gochanaur's murder and tried based solely on fabricated evidence. *Id.* ¶100. As a direct result of Defendants' misconduct, Plaintiff was sentenced to nearly 50 years in prison. *Id.* At no point during the criminal investigation or trial was there probable cause to believe that Plaintiff was guilty, as the sum total of the evidence amassed against him was the result of coercion and fabrication. *Id.* ¶98.

Plaintiff served almost 23 years in prison as an innocent man, suffering incalculable physical, mental, emotional, and economic harm. *Id.* ¶¶111, 114–120. In 2018, he filed a motion to vacate his conviction based in part on the results of newly performed DNA testing on the murder weapon and the victim's fingernail clippings. *Id.* ¶112. The DNA test results conclusively proved his innocence. *Id.* The King County Prosecutor's office joined the motion to vacate the conviction, which was vacated in 2019, and the charges against Plaintiff were dismissed. *Id.* ¶113.

**D.     Defendants' Rule 12 Motions**

Plaintiff filed suit on January 27, 2021. Dkt. 1. The Defendants moved for judgment on the pleadings under Rule 12(c), and on July 12, 2021, the Magistrate Judge issued a report and recommendation to deny the motions except as to two sets of claims: those based on the coerced confession and the state-law claims other than malicious prosecution. Dkt. 53 at 1-3. Defendants filed objections to the report and recommendation pursuant to Rule 72. Dkt.

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 5
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

56 (City Defendants' objections); Dkt. 57 (County's objections); Dkt. 58 (Individual County Defendants' objections). For the reasons explained below, these objections should be overruled.

### Argument

**A.     Judicial estoppel does not apply**

Defendants contend that Plaintiff's claims should be deemed barred under the doctrine of judicial estoppel. Specifically, they argue one of Plaintiff's arguments in support of a motion filed during his 2019 post-conviction proceedings conflicts with the allegations in the Complaint, and that his claims regarding his coerced confession should therefore be dismissed. *See* Dkt. 56 at 8-9; Dkt. 57 at 9-10. This argument fails because it raises factual disputes about materials outside the Complaint, but even assuming those factual issues could be considered, Defendants mischaracterize Plaintiff's arguments during his postconviction case and posit a conflict where none exists.

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008). Three factors guide the determination of whether judicial estoppel might apply: "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* (quotation marks omitted).

Defendants' judicial-estoppel argument relies on a motion filed by defense attorneys on Simmers's behalf in February 2019 seeking relief from his judgment of conviction. *See* Dkt. 30 at 753–66. A criminal defendant may obtain relief from a judgment only for enumerated reasons, including "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5." CrR. 7.8(b). As a matter of law, therefore, defense counsel was required to cite newly discovered evidence that warranted vacating his conviction. Plaintiff cited the recent DNA testing excluding him from

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 6
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

the mixture of the DNA on the murder weapon and from the fingernail scrapings of the victim. Dkt. 30 at 766. Plaintiff also cited scientific research into adolescent brain development, which has worked a sea change in other areas of the law, as in ending mandatory life sentences for juveniles under *Miller v. Alabama*, 567 U.S. 460 (2012). *See* Dkt. 30 at 761-62. Science also shows that juveniles are far more likely to provide false confessions than adults. *Id.* at 762-64. With the benefit of this corpus of research, alongside the DNA evidence, Plaintiff's defense counsel asked that the conviction be vacated.

Though this is a new body of science, the legal basis of Plaintiff's claims that Defendants' interrogation was unconstitutional is old and well-established. As a matter of law, the Supreme Court has long mandated that juveniles be treated differently than adults when it comes to their treatment in interrogations. *See Haley v. Ohio*, 332 U.S. 596, 599 (1948) (holding that special care must be taken when interrogating juveniles); *In re Gault*, 387 U.S. 1, 55 (1967) (holding that, for juveniles, "the greatest care must be taken to assure that [any] admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair"); *see also Gallegos v. Colorado*, 370 U.S. 49, 54 (1962).

The problem with Defendants' argument is that the two positions they claim are in conflict are perfectly consistent. During Plaintiff's post-conviction case, his counsel argued that the science of adolescent brain development and false confessions had advanced since his original trial in 1995. This evidence would be relevant to a jury considering what weight, if any, to give the confession, even if it were not suppressed. In this civil lawsuit, the *legal* claims against the Defendants allege that the interrogation of Plaintiff was unlawful under established cases like *Haley*, *Gault*, and *Gallegos*. While the scientific research, coupled with the new DNA evidence, may bear upon the jury's evaluation of the evidence in this case, there is no inconsistency in arguing that the Defendants violated Plaintiff's constitutional rights during an unlawful interrogation, leading to an involuntary inculpatory statement,

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 7
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

while also maintaining that new social science sheds light on how someone might confess to a crime they did not commit.[2]

As a result, the Complaint and the post-conviction pleading are consistent. The Complaint alleges deliberate misconduct (which was already unlawful at the time of the interrogation) beyond the scope of the post-conviction motion, and addresses the entirety of the lengthy questioning and other acts that culminated in a false recorded statement. By contrast, the post-conviction motion (1) focused on just one aspect of the interrogation (the recorded portion), and (2) presented new scientific evidence that would warrant a reevaluation of the trial evidence, regardless of whether the statement was lawful or not. The additional allegations in the Complaint were not part of the post-conviction motion because they did not constitute a basis for relief under the statute, and they in no way conflict with the allegations of deliberate misconduct in this case.[3]

The City Defendants incorrectly suggest that the post-conviction motion argued that the police officers who coerced the confession only ever used interrogation techniques that were considered standard and widely accepted at the time.[4] This, of course, is not what the motion argued at all. Instead, the motion cited scientific evidence for the general proposition that "standard psychological interrogation tactics, especially when used on youthful suspects, could produce false confessions." Dkt. 30 at 762. That general claim says nothing about the

---

[2] To be sure, as in other cases, Plaintiff will likely retain an expert to shed light on related scientific issues as it relates to the phenomenon of false confessions—which are counterintuitive to average jurors who may believe that someone could not falsely confess unless they were subject to extreme conduct like torture—as they assess the legal question of whether Defendants' actions were constitutional. *See, e.g.*, *Andersen v. City of Chicago*, No. 16 C 1963, 2020 WL 1848081, at *3 (N.D. Ill. Apr. 13, 2020) (admitting expert testimony concerning false confessions); *Caine v. Burge*, 2013 WL 1966381 (N.D. Ill. May 10, 2013) (same); *Livers v. Schenck*, 2013 WL 5676881, at *4 (D. Neb. Oct 18, 2013) (same); *Crowe v. San Diego*, 608 F.3d 406, 431-32 (9th Cir. 2010) (reviewing case where false confessions expert was admitted).

[3] Indeed, that is why both Plaintiff's Complaint and his post-conviction motion allege that the Police Officer Defendants used techniques (like "the Reid technique") that are known to produce false confessions when used against juveniles. Compl., Dkt. 1 ¶¶59–66 (alleging, inter alia, the use of "aggressive confrontation, false evidence ploys, and minimization themes"). If these allegations were in direct conflict as Defendants claim, they would not appear together in the Complaint.

[4] The City Defendants come close to misrepresenting the record when they repeatedly put "widely accepted" in quotation marks, implying that Plaintiff used that phrase in his post-conviction motion. *See* Dkt. 56 at 8. He did not. *See generally* Dkt. 30 at 753-67.

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 8
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

particular misconduct in Plaintiff's case, and it certainly does not contradict the proposition that the Defendants engaged in willful misconduct considered unconstitutional by the governing legal standards of the day.[5]

Finally, the Magistrate Judge correctly concluded that Defendants cannot show that the criminal court vacated the conviction because it found that the police acted in good faith. Dkt. 53 at 24. Beyond the fact that Plaintiff did not argue or contend that the police had in fact acted in good faith, other facts—such as the new DNA testing showing that Plaintiff's confession was false or the State's decision to concede the merits of the motion—supported vacatur.[6] *Id.*; *see also* Dkt. 30 at 766. As the Magistrate Judge recognized, the order vacating the conviction is devoid of any explanation, *see id.* at 836, and there is no basis to conclude that the order depends in any way on a finding that the Defendants' conduct was lawful. Indeed, because the State did not oppose the motion, there was no reason for the court to assess the underlying evidence; there was no controversy or dispute for the court to resolve. Judicial estoppel cannot possibly apply here.

**B.     Plaintiff has standing to assert all of his claims**

Defendants have chosen to revive an argument about Plaintiff's standing to bring claims that he has now repeatedly confirmed he is not bringing. The Magistrate Judge appropriately dispensed with this argument in summary fashion, explaining that Plaintiff's allegations concerning Jon Wyatt "are circumstantial evidence that support his other claims," and thus "none of plaintiff's claims should be dismissed on the basis of lack of standing."

---

[5] Under these circumstances, if the Court were to adopt Defendants' judicial estoppel argument, it would be the equivalent of holding that criminal defendants-turned-plaintiffs can raise only the arguments that were presented to the criminal court in post-conviction litigation, regardless of the completely different legal standards that govern those proceedings. And the Supreme Court has clearly held that section 1983 does not require plaintiffs to exhaust remedies in this way. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) ("In general, exhaustion of state remedies is not a prerequisite to an action under § 1983."); *see also Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (describing this as "the settled rule").

[6] The City Defendants contend that this DNA testing was not presented to the court as "newly discovered evidence" that could warrant vacating the conviction. Dkt. 56 at 8-9. This is a self-serving and narrow interpretation of the record, *see* Dkt. 30 at 766, that is improper at this stage, *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 9
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

Dkt. 53 at 24. This is because a plaintiff can prove a fabrication claim using circumstantial evidence, either by pointing to evidence that the defendants engaged in fabrication despite the fact they knew or should have known Plaintiff was innocent, or by showing that officers used abusive or coercive techniques they knew or should have known would yield false information. *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010); *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc)). Circumstantial or indirect evidence of fabrication relates primarily to third-party evidence—for example, as in *Devereaux*, where the police questioned third parties in a manner that would result in false accusations. *Devereaux*, 263 F.3d at 1077. Plaintiff's allegations concerning Wyatt fall squarely within *Deveraux*.

In addition to being a part of Plaintiff's fabrication claim, the allegations related to Wyatt illustrate the Defendants' course of conduct during the Gochanaur homicide investigation; provides necessary context for their coercive interrogation of Plaintiff; shows that Defendants suppressed exculpatory evidence pertaining to their interactions with Wyatt, which then affected Plaintiff's criminal case; constitutes an affirmative act in furtherance of the conspiracy to deprive Plaintiff of his constitutional rights; constitutes evidence that will impeach Defendants' anticipated testimony about the course of the criminal investigation; and demonstrates the lack of appropriate policies, procedures, discipline, supervision, and oversight within King County and the City of Bothell regarding the interrogation of juvenile suspects. The allegations relating to Wyatt are therefore directly relevant to Plaintiff's claims that are personal to him and present no issue of Article III standing.

**C.     Plaintiff has stated claims against each of the individual City of Bothell Defendants by alleging their misconduct with particularity**

Finally, the City Defendants contend that Plaintiff failed to meet the standard of Rule 12(b)(6) by engaging in supposed "group pleading."[7] Dkt. 56 at 11-12. This argument fails for two reasons. First, the same allegation explicitly directed at a group of defendants is

---

[7] In their objections, Defendants do not challenge the sufficiency of Plaintiff's *Monell* allegations, which easily meet the Rule 12 pleading standard. *See* Dkt. 53 at 25-27 (concluding that Plaintiff sufficiently pleaded ratification and policy-and-practice theories of *Monell* liability).

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 10
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

sufficient to plead personal involvement after *Iqbal*, even if each defendant comprising the group is not named individually in each separate paragraph. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (holding under Rule 9(b) that "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct"); *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681 (9th Cir. 2018) ("If a group pleading against similarly situated defendants can satisfy Rule 9(b), then it can also satisfy the lesser notice pleading standard of Rule 8."). District courts thus routinely reject such "group pleading" objections by defendants. *See Tivoli LLC v. Sankey*, No. SA CV 14-1285-DOC, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015); *Munning v. Gap, Inc.*, No. 16-cv-3804-TEH, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016); *DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-63845-JSW, 2018 WL 10247483, at *15 (N.D. Cal. Sept. 24, 2018).

Second, beyond his allegations that apply to the Police Officer Defendants as a whole, Plaintiff has alleged particular misconduct by each of the Individual City Defendants. Defendant Hopkins centrally participated in the deliberate coercion of Plaintiff, the fabrication of evidence against him, and the suppression of exculpatory evidence that would have proven his innocence of the Gochanaur murder. Hopkins, along with Defendant Rusk, led the coercive interrogation and knowingly fabricated the false confession that Defendants attributed to Plaintiff. Compl., Dkt. 1 ¶¶61–99; 102.

Defendant Miner participated in the misconduct that produced Plaintiff's wrongful conviction. As an officer with the Bothell Police Department investigating the Gochanaur murder, Miner helped make the decision to pin the crime on Plaintiff rather than conduct a legitimate investigation. *Id.* ¶¶ 22, 27, 29. Moreover, she was aware of Plaintiff's unlawful interrogation and the steps taken to fabricate the confession that was attributed to him, but did nothing to intervene to stop the violations of Plaintiff's constitutional rights. *Id.* ¶¶48, 65. In addition, as the Magistrate Judge found, Plaintiff has alleged that Miner was an "integral

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 11
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

participant" in the overall pattern of misconduct. *See* Dkt. 53 at 28–29; *see also Keates v. Koile*, 883 F.3d 1228, 1241–42 (9th Cir. 2018). Because Miner "participated in a meaningful way in a collective decision" to take an action that "was central to the alleged constitutional violation," *id.* at 1242, Plaintiff has alleged that she is liable as an integral participant.

Defendant Ericks, who was Chief of the Bothell Police Department during the Gochanaur homicide investigation affirmatively ratified the misconduct of the other Police Officer Defendants in his capacity as a policymaker for the City of Bothell. Ericks was not only aware of the wrongdoing perpetrated by the Police Officer Defendants, but made an affirmative and conscious choice to ratify that wrongdoing by proceeding with Plaintiff's detention and prosecution and by approving of the Defendants' reports, notes, actions, and investigative methods despite their obvious flaws. Compl., Dkt. 1 ¶¶12, 32, 101, 176.

With respect to Defendant Schlaegel, Plaintiff alleges that he directly participated in the unconstitutional misconduct that caused Plaintiff's wrongful conviction. For example, Schlaegel knowingly authored a false police report contending that Plaintiff was "sociopathic" and "claims gang membership in order to prolong Plaintiff's incarceration. *Id.* ¶84. Schlaegel also actively conspired to fabricate false statements from an informant, then suppressed exculpatory evidence relating to that informant. *Id.* ¶94.

The City Defendants do not address these particularized allegations in their Rule 72 Objections, and their argument that the Complaint is somehow deficient is so minimal and conclusory it should be deemed waived. *See* Dkt. 56 at 11–12 (failing to cite a single paragraph of the Complaint); *Edwards v. Venma Nutrition*, 835 F. App'x 174, 175 (9th Cir. 2020) (failure "to present a specific, cogent argument" amounts to waiver) (citing *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)).

## Conclusion

For the foregoing reasons and the reasons set forth in Plaintiff's response to the County's Rule 72 Objections, Plaintiff respectfully requests that the Court overrule the Rule 72 Objections by the City of Bothell Defendants (dkt. 56).

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 12
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900

August 12, 2021

Respectfully submitted,

**IAN SIMMERS**

By: */s/ John Hazinski*
    *One of Plaintiff's Attorneys*

David B. Owens, WSBA #53856
LOEVY & LOEVY
100 S. King Street, Suite 100
Seattle, WA 98104
Phone: 312-243-5900
Email: david@loevy.com

John Hazinski*
LOEVY & LOEVY
311 N. Aberdeen St., 3FL
Chicago, IL 60607
Email: hazinski@loevy.com
* *Admitted Pro Hac Vice*

PLAINTIFF'S RESPONSE TO BOTHELL
DEFENDANTS' RULE 72 OBJECTIONS - 13
2:21 CV 100

LOEVY & LOEVY
100 S. King St., Ste. 100
Seattle, WA 94104
(312) 243-5900