1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

IAN SIMMERS,

                              Plaintiff,

          v.

KING COUNTY et al.,

                              Defendants.

No.  2:21-cv-00100-BJR-JRC

ORDER ADOPTING REPORT AND
RECOMMENDATION IN PART

## I.      **INTRODUCTION**

This matter comes before the Court on a Report and Recommendation ("R&R," Dkt. 53)

by the Honorable J. Richard Creatura, U.S. Magistrate Judge, that recommends granting in part

the motions for judgment on the pleadings filed by defendants King County ("King Cty. Mot.,"

Dkt. 29); City of Bothell, Edward J. Hopkins, Rebecca Miner, and David Schlaegel (the "City

Defendants") ("City Def. Mot.," Dkt. 31); and Ken Baxter, John McSwain, and Pat Raftus (the

"King County Deputies," and together with King County and the City Defendants, "Defendants")

("King Cty. Dep. Mot.," Dkt. 32).  Having reviewed this matter in light of Plaintiff's and

Defendants' objections, this Court adopts the R&R in part, GRANTS in part the King County's

and the City Defendants' motions, and DENIES the King County Deputies' motion.  The reasons

for the Court's decision are set forth below.

ORDER - 1

## II.     <u>BACKGROUND</u>

### A.     Factual Background

The R&R provides a thorough background of the allegations in this case, which this Court briefly summarizes.  In 1995, Plaintiff Ian Simmers ("Plaintiff" or "Simmers"), then 16 years old, was arrested with his 14-year-old friend, Jonathan Wyatt, for "crimes like shooting flare guns by Lake Washington."  Complaint ("Compl.," Dkt. 1) ¶¶ 34-35.  Several days before their arrest, the City of Bothell police department and the King County Police had begun investigating the murder of Rodney Gochanaur.  *Id.* ¶¶ 21-22, 33.  Plaintiff alleges that, although the police had initially identified several murder suspects, they focused their investigation solely on Simmers while he was in their custody, and agreed he would "take the fall" for the murder.  *Id.* ¶¶ 27-31, 36.

Plaintiff alleges that Defendants used various unlawful tactics in their investigation and prosecution of Plaintiff for the Gochanaur murder.   Among other things, Defendants (1) aggressively interrogated Simmers throughout the evening, depriving him of sleep and his right to counsel, in order to coerce his confession to the murder (Compl. ¶¶ 48-70); (2) pressured Wyatt, through similar interrogation tactics, to falsely implicate Simmers in the murder (*id.* ¶¶ 37-47); (3) fabricated evidence that was used in conducting, and that reflected, Simmers's and Wyatt's interrogations (*id.* ¶¶ 71-89); and (4) convinced a jailhouse informant to falsely testify that Simmers had admitted his guilt while in custody (*id.* ¶¶ 94-95).  Simmers was subsequently tried and convicted as an adult for the murder, and was sentenced to 46 years in prison.  *Id.* ¶ 100.  In a separate juvenile criminal proceeding, Plaintiff pleaded guilty to, and was convicted of, arson and vehicle prowling.  Declaration of Samantha Kanner ("Kanner Decl.," Dkt. 30), Ex. N.[1]

---

[1] This Court takes judicial notice of the documents bearing on Plaintiff's guilty plea, as well as the other documents submitted with King County's motion that are cited in this Order, to the same extent and for the same reasons as is set out in the R&R.  *See* R&R at 8-11, 15, 19, 23.

ORDER - 2

In 2018, Plaintiff moved to vacate his murder conviction based in part on newly obtained DNA evidence exonerating him.   Compl. ¶ 112.   That motion, joined by the King County Prosecutor's office, was granted in 2019, thereby vacating Plaintiff's murder conviction. *Id.* ¶ 113.

**B.     Procedural Background**

Plaintiff filed this lawsuit on January 27, 2021.   The R&R summarizes the six general categories of claims Plaintiff asserts:

(1)     Federal claims that individual defendants coerced his confession in violation of the Fifth and Fourteenth Amendments (specifically, his rights to be free from self-incrimination, to counsel, and to due process).  Dkt. 1 at 17-18 (counts 1, 2).

(2)     Federal claims that individual defendants fabricated evidence and withheld exculpatory evidence in violation of the Sixth and Fourteenth Amendments (specifically, his rights to due process and a fair trial). Dkt. 1 at 19 (count 3).

(3)     State and federal claims that individual defendants caused prosecution and imprisonment of plaintiff without probable cause in violation of the Fourth Amendment and maliciously prosecuted plaintiff under state law.  Dkt. 1, at 20, 25 (counts 4, 8) …

(4)     Federal claims that individual defendants generally failed to intervene and conspired to deprive him of his constitutional rights.  Dkt. 1, at 21-22 (counts 5-6).

(5)     Federal and state law claims that the County and City are liable under *Monell* and on theories of *respondeat superior* and indemnification.  Dkt 1, at 22-25, 27-28 (counts 7, 11, 13).

(6)     State claims that various defendants' actions constituted the torts of outrage, civil conspiracy, and negligence.  Dkt. 1, at 26-27 (counts 9, 10, 12).

R&R at 6.

On March 25, 2021, King County, the City Defendants, and the King County Deputies filed separate motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Plaintiff opposed those motions through a single omnibus opposition ("Opp.," Dkt. 40), and the three sets of Defendants filed separate replies (Dkts. 42-44).

ORDER - 3

In the R&R, Judge Creatura recommends granting King County's and the City Defendants' motions in part, and denying the King County Deputies' motion.  Specifically, the R&R recommends dismissing only Plaintiff's (1) federal claims based on his allegedly coerced confession, as precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) state law claims, except his claim for malicious prosecution, as being time-barred.  Objections to the R&R were filed by the City Defendants ("City Def. Obj.," Dkt. 56), King County ("King Cty. Obj.," Dkt 57), the King County Deputies ("King Cty. Dep. Obj.," Dkt. 58), and Plaintiff ("Pl. Obj.," Dkt. 59). Each set of Defendants filed responses to Plaintiff's objections, and Plaintiff filed responses to each set of Defendants' objections.  Dkts. 61-66.

### III.   STANDARD OF REVIEW

The standard governing a motion for judgment on the pleadings under Rule 12(c) is "substantially identical" to the standard of Rule 12(b)(6).  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  Under both rules, a motion shall be granted when, "accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

### IV.   DISCUSSION

#### A.   Portions of the R&R to Which No Objection is Made

Defendants do not object to the R&R's finding that Plaintiff's Fourth Amendment claim was timely asserted.  *See* R&R at 17-18.  Defendants also do not object to the R&R's finding that Plaintiff adequately alleges a theory of liability against King County and the City of Bothell under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  *See* R&R at 25-27. The Court therefore reviews those portions of the R&R for clear error.  *See Johnsen v. Harlan*,

ORDER - 4

No. 19-cv-58, 2019 WL 6713372, at *3 (W.D. Wash. Dec. 10, 2019); 28 U.S.C. § 636 (a district court "shall make a *de novo* determination of those portions of the report or *specified* proposed findings or recommendations to which objection is made" (emphasis added)). Finding no clear error, the Court adopts those findings.

The parties object to all other portions of the R&R. As such, the Court reviews *de novo* each of those objected-to portions. *See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(3).

## B.     Whether Plaintiff's Claims Premised on his Unconstitutional Confession Are Barred by *Heck*

### 1.     The R&R's Finding and Plaintiff's New Arguments and Evidence

In their motions, Defendants argued that Plaintiff's Section 1983 claims premised on his allegedly coerced confession are precluded under *Heck*. There, the Supreme Court instructed that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487. According to Defendants, Plaintiff had been convicted for arson and vehicle prowling based on an *Alford* guilty plea[2] that relied upon, as its factual basis, the same confession as Plaintiff's murder confession. *See* King Cty. Mot. at 15-16; City Def. Mot. at 19-20. Given that Plaintiff's arson and vehicle prowling convictions were never vacated, Defendants argue, any claim that his confession was unconstitutionally procured is barred because it "would necessarily imply the invalidity" of those convictions. *Id.*

---

[2] In an *Alford* plea, the defendant "agrees to plead guilty despite his protestation of innocence to take advantage of plea bargaining." *State v. D.T.M.*, 78 Wash. App. 216, 220 (Wn. Ct. App. 1995). Given his claim of innocence, "the court must establish an entirely independent factual basis for the guilty plea ...." *Id.*

ORDER - 5

The R&R concludes that these claims are precluded under *Heck*.[3]  *See* R&R at 8-13.  In reaching that conclusion, Judge Creatura considered Plaintiff's *Alford* guilty plea statement to the arson and vehicle prowling charges (Kanner Decl., Ex. N at 839-45) and the probable cause certification underlying that plea (*id.*, Ex. N at 852-55).  In his guilty plea statement, Plaintiff directed the court to "the probable cause certificate to find a factual basis for my plea of guilty to each count."  *Id.*, Ex. N at 844.  The probable cause certification, in turn, cites Simmers's confession to various acts supporting the charges.  *Id.*, Ex. N at 852-55.  Based on the arguments presented by the parties, the R&R assumes that Simmers confessed to the murder charge and the arson and vehicle prowling charges during the same interrogation Plaintiff claims was unlawfully coerced.  *See, e.g.*, R&R at 11.  Given that assumption, the R&R agreed with Defendants that Plaintiff's coerced confession claims "would necessarily imply the invalidity of his conviction" for arson and vehicle prowl, and therefore recommends their dismissal.  *See* R&R at 10-13.

After the R&R was issued, Plaintiff argued for the first time in his objections that "the property crime charges did not rest on the coerced murder confession, but instead resulted from a completely separate document obtained almost nine hours before the murder confession."  Pl. Obj. at 5.  In support of that argument, he submits two exhibits: (1) a statement handwritten by Plaintiff, bearing a time stamp of 1:45 p.m. on March 15, 1995, confessing to starting fires and breaking into boats and cars ("1:45 Conf.," Dkt. 59, Ex. 1); and (2) a transcript of a recorded interview, bearing a time stamp of 10:40 p.m. on the same date, in which Plaintiff confesses to committing the murder ("10:40 Conf.," Dkt. 59, Ex. 2).[4]  This Court, in its discretion, will consider Plaintiff's

---

[3] Specifically, the R&R recommends dismissal of Plaintiff's first and second claims, and any portion of his remaining federal claims premised on his allegedly coerced confession.  *See supra* at 3.

[4] Defendants do not dispute that this Court can take judicial notice of the 10:40 Confession, which King County had submitted with its motion.  *See* Kanner Decl., Ex. K.  On the other hand, they argue that this Court cannot take judicial notice of the 1:45 Confession because it "lacks authentication."  City Def. Resp. at 3 n.2; *see* King County Resp. at 2 n.3.  Defendants do not, however, dispute the authenticity of that document, which appears to have been created and

ORDER - 6

newly submitted argument and exhibits.  *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) ("[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation.").  Having considered them, this Court will not adopt the R&R's recommendation for the reasons discussed below.

### 2.    Plaintiff's Claims Are Not Barred by *Heck*

As noted above, *Heck* requires the dismissal of Plaintiff's claims, premised on his allegedly unconstitutional murder confession, only if a favorable judgment on those claims "would necessarily imply the invalidity of his conviction or sentence" for arson and vehicle prowl.  *See Heck*, 512 U.S. 487.  As Plaintiff points out, his Complaint claims only that his murder confession was coerced through an unconstitutional interrogation.  *See* Pl. Obj. at 5-6.  He does not allege anything about the police's interrogation or his confessions as to arson and vehicle prowling, and indeed, the Complaint's only mention of those crimes is an allegation that Plaintiff had initially been arrested for "crimes like shooting flare guns by Lake Washington … completely unrelated to the Gochanaur murder."  Compl. ¶¶ 34-35.  Therefore, Plaintiff's Complaint does not, on its face, challenge the validity of his unvacated arson and vehicle prowling convictions.  *See Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002) (noting that plaintiff's claims are barred "if they are based on theories that 'necessarily imply the invalidity of his conviction[s] or sentence[s]'" (quoting *Heck*, 512 U.S. at 487)).

Nonetheless, Defendants contend that Plaintiff's guilty plea statement and the probable cause certification demonstrate that his claims are, in effect, challenging his arson and vehicle

---

produced by them. *See* 1:45 Conf. Moreover, the document was apparently proffered by the prosecution, and admitted into evidence, as part of Plaintiff's criminal trial. *See* Kanner Decl., Ex. A at 77, 103-04. As such, this Court finds that it can take judicial notice of the 1:45 Confession as a document that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b)(2). The Court does so not for the truth of Simmers's confessions, but for the fact that Plaintiff confessed to the indicated acts at the indicated time.

prowling convictions.  As noted above, Plaintiff, in his guilty plea statement, directed the trial court to the probable cause certification (Kanner Decl., Ex. N at 844), which in turn references several confessed-to acts (*see id.*, Ex. N at 852-55).  Specifically, the certification states that Simmers: (1) "confessed to breaking into the boat and to taking a flare gun from it"; (2) "confessed to shooting flares off and to starting the fire in the restroom"; (3) "led police to the marinas and … showed police several boats he entered and places he had set on fire"; (4) "confessed to stealing a boat."  *Id*.  In addition, the certification concludes by stating that Simmers "admitted to committing all of the above offenses."  *Id*.[5]  Defendants maintain that Plaintiff confessed to all of these acts as part of "a *single* confession to *multiple* crimes, including murder," such that "[a] successful attack on his confession necessarily would undermine the state court's acceptance of his guilty pleas."  King Cty. Resp. at 2 (emphasis in original); *see* City Def. Resp. at 7-8.

As discussed above, Plaintiff contends that his plea was not based on his allegedly coerced murder confession, "but instead resulted from a completely separate document obtained almost nine hours before the murder confession."  Pl. Resp. at 5, 8-9.  In support of his contention, he submits two exhibits reflecting factually and temporally distinct recorded confessions.  In the first, provided in the early afternoon on March 15, Plaintiff confesses to, among other things, breaking into boats and starting fires.  *See* 1:45 Conf.  He says nothing about murder or Rodney Gochanaur.  *See id*.  In the second, provided late in the evening that same day, Plaintiff confesses to murdering Gochanaur.  *See* 10:40 Conf.  In the course of that 23-minute confession (it began at 10:40 p.m. and ended at 11:03 p.m.), he says nothing about breaking into boats or starting fires beyond two

---

[5] The certification's introductory section also references that Plaintiff had been charged with and "confess[ed] to the murder" of Gochanaur.  Kanner Decl, Ex. N at 852.  The Court does not consider that confession to have supported Plaintiff's *Alford* plea because murder is not a prerequisite to, or element of, those crimes.

ORDER - 8

vague, passing remarks about events that seem to have been intended to help construct a timeline of the night of the confessed murder. *See id.*[6]

Plaintiff's assertion that the confessions supporting his *Alford* plea were grounded *entirely* in his earlier handwritten statement is incorrect. That statement certainly provides a good amount of detail concerning his commission of acts referenced in the probable cause certification. *See, e.g.*, 1:45 Conf. at 1 ("I followed him into the boat …. He found two flare guns and gave me one."), 2 ("I went into the bathroom and … shot the [] flare gun … then the garbage can caught on fire."). Nonetheless, as Defendants point out, the statement does not encompass all of the confessed-to acts identified in the probable cause certification. *See* City Def. Resp. at 4-5; King Cty. Resp. at 4-5. Most notably, the statement does not link Plaintiff's acts to any specific boat or victim, and does not reflect that Plaintiff had physically showed any police officer the "boats he entered and places he had set on fire." The connection between Plaintiff's acts and the boats he entered and vandalized – and certainly Plaintiff's physical identification to the police of those boats – appear to be based on a trip Plaintiff took with the police to the marina after he had given the handwritten confession.[7]

Nevertheless, the fact of Plaintiff's trip to the marina with the police does not mean, as Defendants contend, that Plaintiff's arson and vehicle prowling confessions "are inextricably intertwined with his confession for murder." King Cty. Resp. at 2. It is true that Plaintiff alleges that he endured "hours of police questioning" about the murder. *See, e.g.*, Compl. ¶ 69. However, the Complaint and documents this Court may appropriately consider do not indicate that Plaintiff's

---

[6] Specifically, Simmers stated that (1) he had "been thinking about hitting the boats" before murdering Gochanaur (10:40 Conf. at 6), and (2) the murder took place after "the boat fire" he had told police officers about earlier in the day (*id.* at 12-13).

[7] Indeed, Simmers states in his handwritten statement: "I can show somebody which boats I was on." 1:45 Conf. at 2.

ORDER - 9

trip to the marina, and his confessions about arson and vehicle prowling more generally, took place after the allegedly unconstitutional interrogation had begun.[8]   Particularly given Plaintiff's allegation that the murder interrogation took place late in the evening (*see, e.g.*, Compl. ¶ 54), and the 10:40 Confession indicating that Plaintiff then confessed to the murder (*see* 10:40 Conf.), it is at least plausible that Plaintiff had already made full confessions to arson and vehicle prowling before the police embarked on their alleged conspiracy to coerce his murder confession.  *See Musselman v. Meelhuysen*, 773 F. App'x 417, 418 (9th Cir. 2019) (holding that *Heck* did not preclude excessive force claim because there was a "temporal gap" between plaintiff's assault of a police officer and the alleged excessive force inflicted by a separate officer immediately after). This Court cannot conclude, at this juncture, that the confessions supporting Plaintiff's *Alford* plea were obtained through the same allegedly coercive interrogation that produced his murder confession.

Finally, Defendants argue that this type of "pars[ing] portions of the police investigation" has been "rejected in the Ninth Circuit."  City Def. Resp. at 5; *see* King Cty. Resp. at 4.  Defendants extensively discuss *Chavez v. City of California*, No. 19-cv-00646, 2020 WL 1234503 (E.D. Cal. Mar. 13, 2020), wherein the court found that *Heck* precluded a plaintiff's Fourth Amendment claim premised on an allegedly unlawful search of his truck.  Given that the truck search had provided the basis for a search warrant for the plaintiff's house, and the police report detailing that house search was then incorporated into the plaintiff's guilty plea, a judgment in the plaintiff's favor

---

[8] Defendants urge the Court to take judicial notice of certain testimony elicited during the trial court's CrR 3.5 hearing – specifically, that of Sergeant Rusk, who took Plaintiff's handwritten statement – in determining whether Plaintiff's arson and vehicle prowling confessions were temporally separate from the murder interrogation.  *See* City Def. Resp. at 3 n.3; King County Resp. at 3 n.4.  The Court declines to do so, as it would impermissibly be done for the truth of the facts he recites.  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

ORDER - 10

would "call into question the validity of his criminal conviction obtained by way of his [] plea." *Id.* at *7-10.

If the record in this case demonstrated such a concrete link between the allegedly unconstitutional police conduct and the plea facts, this Court may have followed *Chavez*. That, however, is not the case. In *Chavez*, a ruling that the truck search was illegal would have undermined the plaintiff's guilty plea because the evidence obtained in the house search (*i.e.*, upon which the plea was based) clearly depended on the legality of the truck search. *See Utah v. Strieff*, 579 U.S. 232, 237 (2016) (under the "exclusionary rule," "evidence obtained as a direct result of an illegal search or seizure …, the so-called fruit of the poisonous tree," must be suppressed (citation and quotation marks omitted)). Here, on the other hand, it is not apparent that the confessions supporting Plaintiff's *Alford* plea depend on the legality of the interrogation that produced Plaintiff's murder confession. Rather, as discussed above, given the time stamped documents presented by Plaintiff, it is plausible that the Plaintiff's arson and vehicle prowling confessions were provided before the police's murder interrogation began. As such, a finding that the interrogation was unlawful would not affect the validity of those confessions.

Accordingly, the Court does not find that a judgment in favor of Plaintiff's claims premised on the unconstitutionality of his murder confession would "necessarily imply the invalidity of his conviction or sentence" for arson and vehicle prowling. *See Heck*, 512 U.S. at 487. Therefore, those claims are not barred by *Heck*.

## C.    Whether Plaintiff's State Law Claims Are Time-Barred

As noted above, Plaintiff asserts state law claims for malicious prosecution, civil outrage, conspiracy, and negligence, premised on Defendants' alleged misconduct in connection with their interrogation and prosecution of Plaintiff for murder. *See* Compl. ¶¶ 182-198, 202-07. Defendants

argued, in their motions, that these claims are untimely under the applicable three-year statute of limitations. *See* RCW § 4.16.080(2); King Cty Mot. at 16-18; City Def. Mot. at 20-21.  The R&R found that Plaintiff's civil outrage, conspiracy, and negligence claims are time-barred because they accrued not when his murder conviction was vacated – as Plaintiff argued – but at the time of his prosecution, when he would have known the factual basis of his claims. *See* R&R at 13-17.  On the other hand, the R&R found that Plaintiff's malicious prosecution claim was timely asserted because, under Washington state law, that claim did not accrue until his conviction was vacated in 2019. *See id.* at 15-16.[9]  As discussed below, the Court adopts the R&R's findings as to Plaintiff's civil outrage, negligence, and malicious prosecution claims, but not his civil conspiracy claims.

With respect to Plaintiff's malicious prosecution claim, Defendants argue that the R&R erroneously declined to follow *Gausvik v. Abbey*, 126 Wash. App. 868 (Wn. Ct. App. 2005), wherein, according to Defendants, a Washington appellate court held that the statute of limitations for malicious prosecution claims begins to accrue when the plaintiff is convicted, and not when his conviction is invalidated. *See* King Cty. Obj. at 11-12; City Def. Obj. at 9-10.  It is true that *Gusavik* dismissed over a half dozen tort claims, including malicious prosecution, on that basis.  However, in its analysis, the *Gusavik* court grouped all of the plaintiff's tort claims together without specifically analyzing, or even mentioning, malicious prosecution. *See Gausvik*, 126 Wash. App. at 879-82.  It did so even though malicious prosecution, unlike the other claims reviewed, requires a plaintiff to establish – *i.e.*, as an element of the claim – "that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned." *Clark v. Baines*, 150 Wash. 2d 905, 911 (Wn. Ct. App. 2004).  Indeed, the *Gusavik* court reasoned that "the dismissal of [the

---

[9] Plaintiff also asserts state law claims for indemnification and *respondeat superior* (Compl. ¶¶ 199-201, 210), but as the R&R notes, Plaintiff does not dispute that those are theories of liability and recovery, and not claims having separate statutes of limitations. *See* R&R at 13 (citing City Def. Mot. at 4 n.7).

plaintiff's] criminal conviction had no effect on his state tort law cause[s] of action," *Gausvik*, 126 Wash. App. at 881, which was not the case for his malicious prosecution claim.

Rather than follow *Gusavik*, the R&R correctly followed the more recently issued decision in *Flynn v. Pierce Cty.*, 16 Wash. App. 2d 721 (Wn. Ct. App. 2021). *See* R&R at 15-16. There, the court found that the plaintiff's legal malpractice claim had accrued at the time his sentence was invalidated since, under Washington law, he "could not have applied to a court for relief until his sentence had been invalidated because post-conviction relief is a prerequisite" of that claim. *Flynn*, 16 Wash. App. 2d at 729 (citing *Piris v. Kitching*, 185 Wash. 2d 856, 862 (Wn. Sup. Ct. 2016)). While recognizing that *Flynn* involved only a legal malpractice claim, the R&R reasoned that its logic nonetheless applies to Plaintiff's malicious prosecution claim. Specifically, since Plaintiff could not assert a valid malicious prosecution claim absent post-conviction relief, *see Clark*, 150 Wash. 2d at 911, his claim did not accrue until his murder conviction was vacated in 2019. This Court agrees with the R&R's reasoning. As such, it adopts the R&R's finding that Plaintiff's malicious prosecution claim was timely asserted.

Plaintiff raises new and expanded arguments in objecting to the R&R's findings as to his civil outrage, conspiracy, and negligence claims. He primarily argues that these claims "did not accrue until [his murder] conviction was vacated … in 2019" because "Washington has adopted the *Heck* doctrine barring civil claims that attack outstanding criminal convictions." Pl. Obj. at 10-12. Plaintiff, here, is referencing *Heck*'s holding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. Plaintiff, however, is incorrect that this holding has been "adopted" into Washington law. In support of his assertion, Plaintiff cites to *Flynn*, wherein, as noted above, the court held that the plaintiff's legal malpractice claim accrued

ORDER - 13

upon the invalidation of his sentence because, under Washington law, "post-conviction relief is a prerequisite" of that claim. *Id.* at 729. The court, in relevant part, "appl[ied] the principles set forth in *Heck*" because the plaintiff was asserting a claim that, like Section 1983 claims challenging the lawfulness of a conviction, required him to prove – *i.e.*, as an element of the claim – that the conviction or sentence was invalidated. *Id.* at 727-29; *see Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). *Flynn* did not hold, as Plaintiff contends, that *any* claim challenging the basis for a conviction does not accrue until that conviction is invalidated. Indeed, Plaintiff's contention was specifically rejected in *Gausvik*. There, the court found that the plaintiff's tort claims had accrued when he was convicted, and not when his conviction was vacated, because – unlike for Section 1983 claims – "the dismissal of [the] criminal conviction had no effect on his state tort law cause[s] of action." *Gausvik*, 126 Wash. App. at 881; *see Gausvik v. Perez*, 392 F.3d 1006, 1009 (9th Cir. 2004) (plaintiff's "claims of false imprisonment, intentional or negligent infliction of emotional distress, and negligent training and supervision … accrued … when Gausvik was arrested and knew of the basis for his claims").[10]

The R&R correctly explained that, since neither civil outrage nor negligence require Plaintiff to demonstrate post-conviction relief (*see* R&R at 16-17), those claims accrued when Plaintiff became aware of the alleged police misconduct underlying them. *See Gausvik*, 392 F.3d at 1009. Plaintiff does not dispute the R&R's finding that he would have become so aware when he was prosecuted, as he would have already known that his confession was false and that he was

---

[10] Plaintiff urges the Court to depart from this law, arguing that "it would seem impossible to prove [his tort] claims while Plaintiff stood convicted as a murder[er]" since "he could not possibly illustrate" the merits of his claims. Pl. Obj. at 11. This Court, while sympathizing with the challenges Plaintiff would have faced in proving his case under such circumstances, nevertheless declines to depart from established precedent.

ORDER - 14

not present at the murder scene. *See* R&R at 15. As such, this Court adopts the R&R's finding that the statute of limitation on those claims ran long before he filed suit in 2021.

However, this Court does not adopt the R&R's finding that the same applies to Plaintiff's civil conspiracy claim. "To establish a civil conspiracy, [a plaintiff] must prove … that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350-51 (1996). "Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim." *Williams v. Geico Gen. Ins. Co*., 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020); *see Northwest Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc*., 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) ("In Washington, as elsewhere, a civil conspiracy claim must be premised on underlying 'actionable wrongs,' 'overt acts,' or a 'tort working damage to the plaintiffs.'" (citation omitted)).

Here, Plaintiff alleges that Defendants' conspiracy was intended to accomplish "the malicious prosecution of Plaintiff." Compl. ¶¶ 195-96. As such, the viability of Plaintiff's civil conspiracy claim "hinges on the existence of a cognizable and separately underlying claim" of malicious prosecution. *See Williams*, 497 F. Supp. 3d at 985. Therefore, consistent with the reasoning in *Flynn* and the R&R's correct finding that Plaintiff's malicious prosecution claim did not accrue until his murder conviction was vacated in 2019 (*see supra* at 13), this Court finds that Plaintiff's civil conspiracy claim also did not accrue until that time. Accordingly, Plaintiff's civil conspiracy claim was timely asserted.

ORDER - 15

**D.** **Defendants' Collateral Estoppel Arguments**

**1.** **Whether Plaintiff is Collaterally Estopped from Asserting His Federal Claims**

In their motions, Defendants argued that Plaintiff is barred from asserting his Section 1983 claims, premised on his allegations of malicious prosecution and false arrest and imprisonment, based on the "conclusiveness" rule set forth in *Hanson v. City of Snohomish*, 121 Wash. 2d 552 (1993). *See* King Cty. Mot. at 7-12; City Def. Mot. at 16-18. There, the Washington Supreme Court held that "a conviction, although laters reversed, is conclusive evidence of probable cause, unless that conviction was obtained by fraud, perjury or other corrupt means." *Id.* at 559-60 ("A conviction is strong evidence that there was enough of a case to persuade a jury of guilt beyond a reasonable doubt" and thus evidences "probable cause to prosecute."). Based on this "conclusiveness" rule, Defendants argued that Plaintiff is collaterally estopped from asserting these federal claims because they depend on Plaintiff's ability to establish that Defendants lacked probable cause to arrest and prosecute him. *See Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) ("State law . . . governs the application of collateral estoppel to a state court judgment in a federal civil rights action"). In opposing Defendants' motion, Plaintiff argued that the conclusiveness rule did not apply because his claims fit into rule's "fraud, perjury or other corrupt means" exception. *See* Opp. at 18-19. Specifically, Plaintiff alleges that Defendants had conspired, among other things, to convince a jailhouse informant "to testify to a false story that [Simmers] confessed to the [murder] while he and [Simmers] were in custody." Compl. ¶ 94; *see* Opp. at 16. In their motion replies, Defendants argued that Plaintiff was also collaterally estopped from raising this issue because it had previously been litigated in a post-conviction motion. *See* Dkt. 42 at 4; Dkt. 43 at 9.

ORDER - 16

The R&R found that, in light of Plaintiff's allegations that the police conspired to fabricate the jailhouse informant's testimony, Plaintiff's claims could fit into the "fraud, perjury or other corrupt means" exception to the conclusiveness rule. R&R at 20-22. The R&R further found that Plaintiff was not collaterally estopped from litigating that specific issue. In doing so, the R&R relied on the four requirements to invoke collateral estoppel set forth in *Hansen*:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice.

*Hanson*, 121 Wn.2d at 560-64 (finding that plaintiff was collaterally estopped from arguing that police had used improper tactics because that issue had been litigated at trial; "the doctrine may be applied … in a civil rights action in which issues raised are the same as those determined in a criminal case"). Specifically, Defendants failed to meet the first requirement. The R&R found, based on a review of the trial court's post-conviction hearing transcripts and findings of fact (*see* Kanner Decl., Exs. H-I), that Plaintiff had only litigated the issue of whether the jailhouse informant had received payments or other consideration in exchange for his testimony. *See* R&R at 19-20. As Plaintiff never raised or argued whether the police had simply worked with the informant to fabricate his testimony, the issue decided by the trial court was not "identical" to the specific issue Plaintiff raises here. *Id.*

Defendants contend that the R&R's finding was erroneous, asserting that the trial court had found, more broadly, that there was no evidence that the police had worked with the jailhouse informant to fabricate testimony. *See* City Def. Obj. at 7-8; King Cty. Obj. at 7-8. The trial court record, however, does not support Defendants' assertion. During the post-trial proceedings, Plaintiff's counsel had argued to the trial court that she wished to question the informant about his

ORDER - 17

"assertion that he received nothing for his testimony in this case."   Kanner Decl., Ex. H at 10.

Plaintiff's counsel then questioned the informant about whether he had "receive[d] any form of

compensation" or "any consideration on [his] jail sentences" in exchange for his testimony.  *Id.*,

Ex. H at 128-31.  In light of the informant's denial of any such compensation or other consideration

(*see id.*), the trial court found: "[the informant] did not receive special consideration or any kind

of benefit from the State in exchange for his testimony in the defendant's case.   There is no

evidence of any agreement between the State and [the informant] in exchange for testimony."  *Id.*,

Ex. I at 7.

Plaintiff's arguments and the trial court's finding clearly focused on whether the jailhouse

informant had received consideration in exchange for his testimony, not whether police officers

worked with him, irrespective of any consideration, to fabricate his testimony.   As such, this Court

agrees with the R&R that the issue Plaintiff currently raises – that the police convinced the

informant to offer false testimony – is not identical to a previously litigated issue.   Therefore,

Plaintiff is not collaterally estopped from raising it here, and his claims, as alleged, fit into the

"fraud, perjury or other corrupt means" exception to *Hanson*'s conclusiveness rule.  *See Hanson*,

121 Wn.2d at 559-60.   Accordingly, this Court adopts the R&R's finding that Plaintiff's claims,

premised on allegations of malicious prosecution and false arrest and imprisonment, are not barred

by collateral estoppel.

### 2.    Whether Plaintiff is Collaterally Estopped from Asserting Claims Premised on his Allegedly Coerced Confession

Defendants' motions also contended that Plaintiff's claims premised on his allegedly

coerced confession are barred by collateral estoppel because he had "asserted prior to his criminal

trial that his confession was involuntary," but "the trial court determined the confession was given

knowingly, intelligently, and voluntarily."  City Def. Mot. at 17; *see* King Cty. Obj. at 6-7.  Given

ORDER - 18

Judge Creatura's finding that these claims are already precluded by *Heck*, he did not reach Defendants' contention.  *See* R&R at 20.  Having concluded that Plaintiff's coerced confession claims are not precluded by *Heck* (*see supra* at 7-11), this Court will review the argument.

This Court finds that Plaintiff's coerced confession claims are not collaterally estopped by the trial court's finding that his confession was voluntary (*see* Kanner Decl., Ex. C at 353-362) because that finding is no longer part of a "final judgment on the merits" (*i.e.*, the second collateral estoppel requirement).  *See Hanson*, 121 Wn.2d at 562.  In Washington, as a general matter, "[a] judgment which has been vacated is of no force or effect and the rights of the parties are left as though no such judgment had ever been entered." *Sutton v. Hirvonen*, 113 Wash. 2d 1, 9 (Wn. Sup. Ct. 1989) (citation omitted).  Any such judgment "is thereby deprived of all conclusive effect." *State v. Baxter*, 94 Wash. App. 1021 (Wn. Ct. App. 1999).  Given that Plaintiff's judgment of conviction was vacated in 2019 (*see* Kanner Decl., Ex. M), the rulings upon which that judgment is based cannot, absent some exception, have any preclusive effect on his claims in this case.  *See State v. Harrison*, 148 Wash. 2d 550, 561 (2003) ("collateral estoppel does not apply because the original sentence no longer exists as a final judgment on the merits"); *see also Brisco v. Stinar*, No. 19-cv-7233, 2020 WL 7027719, at *8 (N.D. Ill. Nov. 30, 2020) (citing case law from "federal appellate courts around the country" recognizing that vacated judgments and associated factual findings are deprived of all conclusive effect).  While, for example, *Hansen*'s conclusiveness rule creates an exception to Washington's more general rule depriving vacated judgments of preclusive effect (*see supra* at 16), that rule does not apply to Plaintiff's coerced confession claims insofar as they are not premised on the lack of probable cause.  Accordingly, Plaintiff is not collaterally estopped from asserting claims premised on his allegedly coerced confession.

ORDER - 19

### E.      Whether Plaintiff is Judicially Estopped from Asserting His Claims

Defendants' motions argued that Plaintiff is barred from asserting all of his claims under the doctrine of judicial estoppel, which "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001); *see Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012) ("Federal law governs the application of judicial estoppel in federal courts.").   According to Defendants, Plaintiff had argued in his 2019 motion to vacate his conviction (*see* Kanner Decl., Ex. K) that new research into juvenile confessions called into question interrogation techniques that, although acceptable at the time, tended to result in false confessions.  *See* King Cty. Mot. at 12-15; City Def. Mot. at 18-19.  Defendants contend that Plaintiff's claim that the police deliberately used improper tactics to coerce a false confession conflicts with his 2019 motion argument, and he should therefore be estopped from asserting it.  *Id.*

The R&R rejects Defendants' argument based on the factors articulated by the Supreme Court for determining whether to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled ....   A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001) (citation and quotation marks omitted).  Without making any findings as to whether Plaintiff had taken inconsistent positions, the R&R concludes that judicial estoppel was not warranted based on the second factor. In particular, the R&R found that, since the trial court's one-page order vacating Plaintiff's

ORDER - 20

judgment did not set forth any findings supporting it (*see* Kanner Decl., Ex. M), it is not apparent that the trial court was "persuaded" by any representation that the police interrogated Plaintiff in good faith.  *See* R&R at 22-24.

In their objections, Defendants contend that the trial court's decision was necessarily based on that motion argument because it otherwise would have lacked jurisdiction to rule on the motion. *See* King Cty. Obj. at 8-10; City Def. Obj. 8-9.   In particular, under CrR 7.8(b) – the Superior Court rule pursuant to which Plaintiff made his motion – the trial court was permitted to vacate the judgment of conviction only upon a showing of "newly discovered evidence which by due diligence could not have been discovered" within one year of the conviction.  *See* WRC § 10.73.090.  According to Defendants, since Plaintiff's "newly discovered evidence" was the new research into juvenile confessions, the trial court's order implicitly accepted his representation that the police's interrogation techniques were, although faulty, appropriate at the time.  *See* King Cty. Obj. at 8-10; City Def. Obj. 8-9.

Defendants' assertion that newly presented research into juvenile confessions provided the sole jurisdictional basis for Plaintiff's CrR 7.8 motion is incorrect.  While Plaintiff indeed argued that such research undermines Plaintiff's confessions and warrants a new trial (*see* Kanner Decl., Ex. K at 9-13), Plaintiff had also argued that recent DNA testing not previously available presented "newly discovered evidence" that would exonerate him.  *See, e.g.*, *id.*, Ex. K at 14.[11]  The trial court's order vacating Plaintiff's conviction – three sentences in length – does not mention Plaintiff's confession, DNA testing, or any other facts supporting its jurisdiction over Plaintiff's

---

[11]  Specifically, Plaintiff explained to the trial court: "Within the last several weeks, the last of the advanced, sophisticated DNA testing results have come back .…  This new testing was conducted using newly developed, cutting edge technology … which allows for testing of complex and mixed DNA samples, which previously could not be tested accurately.  The results found that Mr. Simmers is excluded as being a possible donor of the mixture of DNA found on the knife and on the fingernail clippings of the victim."  Kanner Decl., Ex. K at 14.

ORDER - 21

1    motion or its decision to vacate his conviction.  *See id.*, Ex. M.  As such, even if Plaintiff had

2    represented that the police's interrogation was done in good faith, the trial court's order cannot

3    possibly be perceived as reflecting that Plaintiff "succeeded in persuading [it] to accept" that

4    representation.  *See Hamilton*., 270 F.3d at 782.  Accordingly, judicial estoppel is not warranted.

5        **F.    Plaintiff's Claims Concerning Jonathan Wyatt**

6        In their motion, Defendants argued that Plaintiff lacks Article III standing to assert "claims

7    based on alleged violations of Jonathan Wyatt's rights in the course of his interrogation."  King

8    Cty. Mot. at 18-19; City Def. Mot. at 21-22.  Based on Plaintiff's representation that he is not

9    asserting any such claims, and only alleges facts concerning Wyatt's interrogation as

10   circumstantial evidence to support his claims (*see* Opp. at 30), the R&R concludes that none of

11   Plaintiff's claims should be dismissed for lack of standing.  *See* R&R at 24-25.  Defendants, in

12   their objections, contend that the R&R overlooked that Plaintiff is actually seeking to "assert a

13   cause of action premised on allegations that Wyatt was unlawfully interrogated," thereby seeking

14   to "vindicate Wyatt's rights" despite lacking standing to do so.  City Def. Obj. at 10-11; *see* King

15   Cty. Obj. at 10-11.

16       This Court agrees with the R&R.  While the Complaint certainly contains many allegations

17   concerning the police's interrogation of Wyatt, none of the claims Plaintiff asserts seeks redress

18   for injuries suffered by Wyatt.  *See* Compl. ¶¶ 122-210.  This is particularly so in light of Plaintiff's

19   continued representation to the Court that his claims do not.  *See* Pl. Resp. at 9-10.  Rather, as

20   Plaintiff points out, his allegations concerning Wyatt can support his claims in a multitude of ways,

21   including, *inter alia*, providing circumstantial evidence that the police fabricated against him and

22   simply illustrating the police's course of conduct during their investigation.  *See Spencer v. Peters*,

23   857 F.3d 789, 793 (9th Cir. 2017) ("Deliberate fabrication can be established by circumstantial

ORDER - 22

evidence.")  That those allegations relate to Wyatt does not mean that Plaintiff seeks to "vindicate Wyatt's rights" through legal claims.  As such, this Court adopts the R&R's conclusion that none of Plaintiff's claims are subject to dismissal for lack of standing.

### G.   Whether Plaintiff Adequately Pleads Section 1983 Claims Against the Individual Defendants

Seven individual defendants moved to dismiss Plaintiff's Section 1983 claims against them on the ground that the Complaint lacks sufficient specificity as to those defendants' involvement in the allegedly unlawful conduct.  *See* City Def. Mot. at 10-14; King Cty. Dep. Mot. at 2-4.  Those defendants include the King County Deputies (Baxter, McSwain, and Raftus), several City of Bothell officers (Hopkins, Schlaegel, and Miner), and the City of Bothell Chief of Police, Ericks.  The R&R found that the Complaint, although grouping certain individuals together in alleging their involvement in the conduct at issue (*e.g.*, the "Bothell PD Officers"), contains sufficient allegations to state cognizable claims against each of them.  *See* R&R at 27-30.  Defendants contend in their objections that the R&R erroneously accepted Plaintiff's "generic group pleading" against these individual defendants.  King Cty Dep. Obj. at 1-4; City Def. Obj. at 11-12.  According to Defendants, such group pleading is inconsistent with the Supreme Court's instruction in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) that, in a Section 1983 lawsuit, "the plaintiff … must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."  *Id.* at 663.  Defendants also argue that such group pleading is insufficient under *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018), wherein the Ninth Circuit recognized that "defendants cannot be held liable" under Section 1983 "unless they were integral participants in the unlawful conduct."  *Id.* at 1241.

A complaint's allegations are not automatically insufficient under the pleading standards articulated in *Iqbal* simply because they collectively address a group of defendants.  *United States*

ORDER - 23

*ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681 (9th Cir. 2018) ("If a group pleading against similarly situated defendants can satisfy Rule 9(b), then it can also satisfy the lesser notice pleading standard of Rule 8.").  Rather, those allegations may be sufficient where they are directed at a group of "similarly situated defendants" such that the court can discern which individuals are alleged to have taken part in which conduct alleged in the complaint.  *See id.*; *Bassam v. Bank of Am.*, No. 15-cv-00587, 2015 WL 4127745, at *7 (C.D. Cal. July 8, 2015) ("Group pleading is not *per se* impermissible [] so long as [it] is limited to defendants who are similarly situated." (citation and quotation marks omitted)); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1059 (S.D. Cal. 2017) (noting that "some level of group pleading is permissible [] where … the Court is able to discern" specific groups and their actions).

This Court agrees with the R&R that the Complaint, notwithstanding its use of group pleading, adequately alleges the King County Deputies' and City of Bothell officers' individual involvement in the allegedly unlawful conduct.  Hopkins, Schlaegel, and Miner are among the City of Bothell officers who are alleged to have deliberately abandoned various leads in their investigation of the Gochanaur murder, and agreed (among themselves, and with the King County Police) to seek Plaintiff's prosecution.  *See* Compl. ¶¶ 29-31.  Moreover, Hopkins is alleged to have personally led Plaintiff's interrogation (*id.* ¶¶ 61-76), Schlaegel is alleged to have falsified evidence against Plaintiff (*see id.* ¶ 84), and both Hopkins and Schlaegel are alleged to have convinced the jailhouse informant to offer false testimony against Plaintiff (*see id.* ¶ 94).  Baxter, McSwain, and Raftus are among the King County Officers who are alleged to have, after joining the Gochanaur investigation, agreed "that Plaintiff was going to take the fall" for the murder (*see id.* ¶ 36) and to coerce a false confession from him (*see id.* ¶ 48).  Finally, these City of Bothell Officers and King County Officers are all among the "Police Officer Defendants" (*see id.* ¶ 18)

ORDER - 24

that the Complaint alleges were involved in Plaintiff's and Wyatt's interrogations. *See id.* ¶¶ 37-89. In sum, the Complaint contains sufficiently specific allegations of each of these defendants' participation in events at issue in this case, such that the Complaint adequately pleads that they were "integral participants in the unlawful conduct." *See Keates*, 883 F.3d at 1241.

This Court also adopts the R&R's finding that the Complaint states a cognizable claim against Ericks. *See* R&R at 30. While the Complaint does not allege that Ericks personally participated in any of the unlawful conduct alleged, a supervisor may be "liable for constitutional violations of his subordinates if the supervisor … knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Complaint alleges that Ericks, who was the City of Bothell Chief of Police during the events at issue, was involved in the Gochanaur investigation (Compl. ¶¶ 12, 22), was part of the agreement "to seek Plaintiff's conviction for" the murder (*id.* ¶ 36), and had "approved of the work done by the police officer defendants" (*id.* ¶ 32). As such, the Complaint pleads Section 1983 claims against Ericks.

The King County Deputies also contend that, even if Plaintiff had adequately alleged Section 1983 claims against them, they are entitled to invoke qualified immunity (*see* King Cty. Dep. Obj. at 4-5), which is a doctrine that shields officials from civil damages liability where their conduct did not violate a right that was "clearly established" at the time. *See Anderson v. Creighton*, 483 U.S. 635 (1987). Specifically, the King County Deputies argue that Plaintiff's representation in his 2019 motion to vacate, that his interrogation involved then "standard" techniques (*see supra* at 20), demonstrates that those defendants did not "knowingly violate[] any clearly established law in 1995." As the R&R found, however, the Court cannot take judicial

notice of that representation because the purpose of doing so would impermissibly be to ascertain the truth of that representation. *See Lee*, 250 F.3d at 690.[12]

Accordingly, this Court adopts the R&R's finding that Plaintiff has adequately pled Section 1983 claims against defendants Baxter, McSwain, Raftus, Hopkins, Schlaegel, Miner, and Ericks.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the R&R (Dkt. 53) is adopted in part. The Court GRANTS in part and DENIES in part King County's and the City Defendants' motions for judgment on the pleadings (Dkts. 29, 31), and DENIES the King County Deputies' motion for judgment on the pleadings (Dkt. 32). The Court dismisses with prejudice Plaintiff's state law claims for civil outrage and negligence, but declines to dismiss all other claims asserted in the Complaint.

The Clerk is directed to send copies of this Order to all counsel of record and to the Honorable J. Richard Creatura.

SO ORDERED.

Dated:  August 22, 2022

_Barbara J Rothstein_
_____
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[12] The King County Deputies contend that the Court may take judicial notice anyway because Plaintiff's 2019 motion representation was "an admission of a party opponent." King Cty. Dep. Obj. at 5. However, "the admissibility of party-opponent admissions as an exception to the hearsay rule is not an independent ground upon which a court may take judicial notice." *Nat. Res. Def. Council v. Kempthorne*, No. 1:05-cv-01207, 2009 WL 1119017, at *3 (E.D. Cal. Apr. 27, 2009).

ORDER - 26